## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08-cv-2748** |
| **v.** | ) | |
| | ) | **Judge: Rebecca R. Pallmeyer** |
| **CITY OF EAST CHICAGO,** | ) | **Magistrate Judge:** |
| **Defendant.** | ) | **Sidney I. Schenkier** |

### MOTION OF THE DEFENDANT, CITY OF EAST CHICAGO,
### TO STRIKE THE AFFIDAVIT OF MS. CLARE D'AGOSTINO

The Defendant, City of East Chicago, ("East Chicago"), by and through its attorneys,

Eichhorn & Eichhorn, LLP, requests that the Court enter an order which strikes the Affidavit of Ms.

Clare D'Agostino which is attached as Exhibit A to the Plaintiff's Memorandum in support of its

Motion To Remand, [DE 15, Exhibit A], for the reasons set forth in East Chicago's supporting Brief.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: s/Robert J. Feldt
    One of the attorneys for the Defendant,
    City of East Chicago

David C. Jensen, #18395
Robert J. Feldt, #14284
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46325
219-931-0560

**CERTIFICATE OF SERVICE**

I, Robert J. Feldt, hereby certify that on the __10th__ day of July, 2008, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

F. Thomas Hecht
Tina B. Solis
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, IL 60602
fthecht@uhlaw.com
tbsolis@uhlaw.com


 s/Robert J. Feldt_____
Robert J. Feldt

# EXHIBIT A TO THE JULY 10, 2008 MOTION TO STRIKE THE AFFIDAVIT OF MS. CLARE D'AGOSTINO OF THE DEFENDANT, CITY OF EAST CHICAGO

```
 1           IN THE DISTRICT COURT OF THE UNITED STATES
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION
 3
      MORGAN, LEWIS & BOCKIUS LLP,      )
 4                                      )
                    Plaintiff,          )
 5                                      )
                 -vs-                   ) No. 08 CV 2748
 6                                      )
      CITY OF EAST CHICAGO,             )
 7                                      )
                    Defendant.          )
 8
 9
10           Deposition of CLARE D'AGOSTINO via telephone, taken
11      before DONNA L. POLICICCHIO, C.S.R., and Notary Public,
12      pursuant to the Federal Rules of Civil Procedure for the
13      United States District Courts pertaining to the taking of
14      depositions, at 200 Russell Street, Eighth Floor,
15      Hammond, Indiana, commencing at 1:02 p.m., on the 3rd day
16      of July, 2008.
17
18
19
20
21
22
23
24
```

DEFENDANT'S
EXHIBIT
*A*

Blumberg No. 5114

Page 9

1    are marked 1 through 4 as well as a copy of the

2    notice and the subpoena?

3        A    I do.

4        Q    Okay.  I'm going to ask you for the time

5    being to set them aside because there are certain

6    things I'm going to ask you to try to find out

7    whether you know or don't know based upon not

8    referring to documents.  So can you do so, please?

9        A    Sure.

10       Q    Have you brought any documents with you other

11   than those four exhibits and the notice and the

12   subpoena?

13       A    I have not.

14       Q    Okay.  Go ahead then and tell me where you

15   work.

16       A    Where I work?

17       Q    Who do you work for?

18       A    I work for Morgan, Lewis & Bockius LLP.

19       Q    Okay.  And that's a limited liability

20   partnership?

21       A    It is.

22       Q    Is that a Pennsylvania limited liability

23   partnership?

24       A    It is.

Clare D'Agostino    July 3, 2008

Page 10

1    Q   And where is the location where you work for

2  Morgan, Lewis & Bockius?

3    A   In Philadelphia, Pennsylvania.

4    Q   Where do you live?

5    A   In Philadelphia, Pennsylvania.

6    Q   Are you a domicile of the State of

7  Pennsylvania?

8    A   I am.

9    Q   How long have you lived there?

10    A   I have lived in Pennsylvania for more than

11  20 years.

12    Q   Okay.  Do you have any intention of leaving

13  your current place of domicile?

14    A   I do not.

15    Q   How long have you worked for Morgan, Lewis &

16  Bockius?

17    A   23 years.

18    Q   Could you start at the beginning and give me

19  the inclusive dates of employment and the title, if

20  any, that you held over those 23 years?

21    A   I joined Morgan, Lewis & Bockius in

22  October 1985, and I was a general administrator based

23  in the Philadelphia office with certain firm-wide

24  responsibilities.  Relatively quickly I was promoted

Page 11

1    to the position of management analyst.  During the

2    time that I was attending law school, which I

3    attended law school while employed by Morgan, Lewis &

4    Bockius, I was promoted to the position of section

5    administrator for the business and finance practice

6    group, and then most recently in 1994 I was promoted

7    into what was the early beginnings of the position

8    that I have today, and that has developed into the

9    role of assistant counsel to the firm.

10      Q    Okay.  Let me start with the first position,

11   the general administrative position.

12           Could you describe for me the types of

13   things that you did in that job?

14      A    I was involved with various space expansion

15   plans working with architects and contractors as we

16   expanded space within the firm.  I worked with

17   various vendors buying different things for the firm,

18   services, goods that we needed.  I was also involved

19   with supervising the purchasing person at that point.

20      Q    Can you answer the same question then with

21   regard to your position as a management analyst?

22      A    When I was the management analyst, I was

23   asked to begin reviewing various processes that the

24   firm was involved in with the hope that we could make

Page 12

```
 1   things more efficient.  I was involved in the
 2   utilization of staff, particularly the legal staff,
 3   that is.  I analyzed various cost recovery programs
 4   that we had at that point, and I was also involved
 5   with various analyses of some benefit with regard to
 6   fee generation, accounts receivable, and those sorts
 7   of things.
 8           When I moved into the business and finance
 9   practice group as a section administrator, I worked
10   directly with the section leader and the deputy
11   leader.  Those positions have actually now been
12   changed to practice group leader, but at that point
13   we called them section leaders for the business and
14   finance practice group.  And I assisted the two
15   leaders in the management and organization of the
16   section for a variety of things, client relationship
17   issues, budgeting for them, assisting with
18   utilization, working very closely with lateral
19   partners before the lateral partners -- when they
20   were potential lateral partners, and then as they
21   joined the firm, helping them to integrate their
22   practices in a variety of ways.
23       Q   Okay.
24       A   Then when I first took the position that has
```

Page 13

1    become assistant counsel to the firm, it was actually

2    called assistant to the firm managing partner,

3    because at that point the person who led the firm,

4    the title was firm managing partner.  Today it

5    happens to be firm chair in the reorganization that

6    we undertook some ten years ago probably at this

7    point.  And I began assisting the firm managing

8    partner with a variety of issues affecting the firm,

9    legal type issues, but primarily my responsibilities

10   were in the area of risk management, particularly

11   with regards to new business intake, and I continued

12   my responsibilities working very closely with lateral

13   partners.

14           Over the years as the firm has grown and my

15   experience level has grown, I have undertaken more

16   responsibilities.  I assist with many contractual

17   issues where the firm is contracting to acquire goods

18   or services other than in the area of real estate

19   where our real estate specialists take care of that.

20   And I continue to be involved with risk management,

21   conflicts of interest issues, assisting our partners

22   in resolving those issues, sometimes working directly

23   with clients on those issues, and generally assisting

24   the partnership in the area of professional

Page 25

1   can go ahead.  I think the question has already been

2   asked and answered, but she's welcome to answer it

3   again.

4        A    You previously asked me to make a statement,

5   and I made an estimate of 450 being U.S. citizens.

6   BY MR. FELDT:

7        Q    Okay.  Does that mean then 436 of the 450 are

8   U.S. citizens who are domiciled within one of the 50

9   United States?

10       A    It does.

11       Q    Are there other people who serve in the same

12  position as you to the partnership?

13       A    There is not.

14       Q    Do you have one superior?

15       A    Yes.

16       Q    And that would be --

17       A    That would be the general counsel to the firm.

18       Q    And who is that?

19       A    The person's name is Michael, M-I-C-H-A-E-L,

20  Bloom, B-L-O-O-M.

21       Q    How does a person become a partner with

22  Morgan Lewis?

23       MS. SOLIS:  Objection.  I think that's a little

24  vague, but go ahead, Clare, if you know.

Clare D'Agostino    July 3, 2008

Page 31

1        A    Multiple, multiple times.

2        Q    When is the last time that you saw Mr. Lubar?

3        A    The last time I saw him in person was at a

4    farewell gathering in our London office for a

5    colleague who was leaving the firm, and it was

6    sometime late 2006 in the winter months.

7        Q    Did you speak to Mr. Lubar at that time?

8        A    I did.

9        Q    What did you talk about?

10       A    All sorts of different things.  It was a

11   social event.  It was the farewell of a long-standing

12   employee of the firm.  We talked about how long we

13   both had known this particular lady.  We talked about

14   him being in London and me happening to be in London

15   when this event was going on.  It was a social event.

16       Q    Prior to that time, when is the most recent

17   time that you saw Mr. Lubar?

18       A    I saw him before that probably in the

19   Philadelphia office, but I wouldn't like to hazard a

20   guess as to when it was compared to the party that I

21   saw him at.

22       Q    Is there any way you can pin it down to a

23   year?

24       A    Oh, it would have been the same year.

Clare D'Agostino    July 3, 2008

Page 32

1      Q    Do you remember what you discussed at that

2   point?

3      A    I do not.

4      Q    How about the most recent time before that

5   that you saw Mr. Lubar?

6      A    The most recent time -- no, I couldn't guess.

7      Q    Is there any particular time that you saw

8   Mr. Lubar that you can perhaps associate it with an

9   event as opposed to a year like this farewell

10   gathering that we haven't already talked about?

11      A    No, I don't think so.

12      Q    Have you been to Mr. Lubar's apartment in

13   London?

14      A    I have not.

15      Q    How about his apartment in New York?

16      A    I have not.

17      Q    Do you know if he owns any property besides

18   his apartment in London or his apartment in New York?

19      A    I do not know.

20      Q    Do you know if he's married?

21      A    I do.

22      Q    Is he married?

23      A    He is.

24      Q    What's his wife's name?

Clare D'Agostino     July 3, 2008

Page 33

```
 1     A    Dominique.

 2     Q    Have you met his wife?

 3     A    I have not.

 4     Q    Does he have children?

 5     A    He does.

 6     Q    How many and their names, if you know?

 7     A    I do not know.

 8     Q    Do you know where Dominique lives?

 9     A    I do not.

10     Q    Do you know where his children live?

11     A    I do not.

12     Q    Do you know relative to any other location

13   how much time Mr. Lubar over the past, say, two years

14   has been in London versus some other location?

15     MS. SOLIS:  Objection.  Vague.  You can go ahead

16   and answer, Clare.

17     A    It would be impossible for me to answer

18   whether Mr. Lubar is in London, some other European

19   country, some of the Asian countries, or in the

20   United States and to come up with a percentage of

21   where he is during any given period of time.

22   BY MR. FELDT:

23     Q    That's kind of what I was getting at.

24          In your role do you become familiar with or
```

Clare D'Agostino    July 3, 2008

Page 34

1    have access to his travel schedule?

2         A    I do not.

3         Q    Do you know how many times he's been in the

4    United States in the year 2008?

5         A    I do not.

6         Q    Do you know where he was on the day that City

7    of East Chicago filed its notice of removal May 12th,

8    2008?

9         A    I do not.

10        Q    Do you know anything about where he keeps his

11   bank accounts?

12        A    I have certain information from the various

13   documents that were produced and which were shared

14   with me showing where certain accounts are, so yes.

15        Q    In your normal activities in your job, would

16   you have reason to see those documents or is the only

17   reason you saw them because we asked for certain

18   discovery in this litigation?

19        A    That is correct, the latter.

20        Q    The latter?

21        A    The latter.

22        Q    Have you ever -- Well, let me back up just a

23   second.

24             Does Morgan Lewis have a mandatory

Clare D'Agostino     July 3, 2008

Page 37

1    relevance, it certainly goes to his intent of

2    maintaining a domicile if he's nearing retirement,

3    and obviously I'm not getting to ask him that

4    question because you've objected to producing him.  I

5    shouldn't have to explain the relevance because

6    relevance is not a basis for directing a witness not

7    to answer, and if it's confidential information, we

8    certainly can agree that the testimony is subject to

9    the confidentiality order that's already in place.

10       MS. SOLIS:  Well, I think there is an easier way

11   to get your answer.  Why don't you just ask Clare

12   that direct question.  I mean, if that's what you're

13   looking for is if he has an intent to move when he

14   retires, I don't know, maybe she knows that.  Why

15   don't you just ask the direct question.

16       MR. FELDT:  Well, I can, and I can ask the other

17   question as well, but I'll ask her that question if

18   you're telling me that you're going to stand on your

19   objections.

20       MS. SOLIS:  We're going to stand on our objection

21   on that one.

22       MR. FELDT:  All right.

23   BY MR. FELDT:

24       Q    All right.  To come back to Mr. Lubar,

Clare D'Agostino    July 3, 2008

Page 38

1    Ms. D'Agostino, do you know anything about where he

2    was born or grew up?

3        A    I do.

4        Q    Where?

5        A    He was born in Washington D.C.

6        Q    Did he grow up there as well?

7        A    I don't know that.

8        Q    Do you know if he has extended family

9    somewhere in the United States, brothers, sisters,

10    aunts, uncles?

11        A    I do not know.

12        Q    All right.  Do you know if his family has a

13    family home or estate or farm or anything like that

14    in the U.S.?

15        A    I do not know.

16        Q    Apart from his apartment in New York, do you

17    know if his family owns any other property in the

18    United States?

19        A    I do not.

20        Q    Have you ever discussed with Mr. Lubar what

21    he intends to do as far as retirement goes?

22        A    I have not.

23        Q    Have you ever discussed with Mr. Lubar where

24    he intended to live as of May 11th, 2008?

Clare D'Agostino    July 3, 2008

Page 39

1    A    Very recently thereafter, yes.

2    Q    Prior to May 12th, 2008, had you ever

3    discussed with Mr. Lubar where he intended to remain

4    living as a private residence for any particular

5    period of time?

6    MS. SOLIS:  Objection.  Go ahead, Clare.

7    A    I have discussed with Mr. Lubar and he had

8    shared with me his intent not to leave the United

9    Kingdom.

10    BY MR. FELDT:

11    Q    When was that discussion?

12    A    The most recent discussion was in preparation

13    for my declaration.

14    Q    Okay.  My question was, before May 12th,

15    2008, had you ever had such a discussion with

16    Mr. Lubar?

17    A    Yes.

18    Q    When was that discussion?

19    A    It was in preparation for another

20    declaration, and I cannot give you the specific

21    months and year off the top of my head.

22    Q    Was that for the Swiger matter?

23    A    It was.

24    Q    Apart from speaking to Mr. Lubar in preparing

Page 40

1    a declaration for litigation purposes, have you ever

2    talked with Mr. Lubar about where he intended to

3    live?

4        MS. SOLIS:   Objection.   Go ahead, Clare.

5        A    No.

6    BY MR. FELDT:

7        Q    Have you obtained any information about

8    Mr. Lubar's intent as to where he was going to live

9    other than in speaking to him in these two

10   conversations you've described?

11       MS. SOLIS:   Objection.   Form.   You can go ahead

12   and answer, Clare.   I'm just making my objections for

13   the record.

14   BY MR. FELDT:

15       Q    Let me restate it since there is a form

16   objection.

17           Other than these two occasions for preparing

18   these declarations, do you have information from any

19   other source about Mr. Lubar's intent about where he

20   wished to live as his private residence?

21       A    No.

22       Q    In your declaration you indicated that he is

23   both a citizen of the United States and the United

24   Kingdom, is that correct?

Clare D'Agostino    July 3, 2008

Page 43

1    A    He has not.

2    Q    All right.  I'm going to change subjects to

3    Ms. Yano now.

4         Do you know Lisa Yano?

5    A    I do.

6    Q    How do you know her?

7    A    I know her as a partner of Morgan Lewis &

8    Bockius.  I have spoken with her on the telephone.  I

9    have exchanged e-mails and I have met her on one

10   occasion.

11   Q    When was the one occasion?

12   A    That occasion was after she became a partner

13   of the firm last year, she was visiting the

14   Philadelphia office, and she stopped by my office to

15   introduce herself.

16   Q    Had you had some contact with her before

17   then?

18   A    I had.

19   Q    What would the circumstances have been?

20   A    Her arrival as a partner in our Tokyo office.

21   Q    Was that an in-person meeting in Tokyo or

22   some sort of phone discussion?

23   A    For me it was a phone discussion.

24   Q    Did you have any contact with her before she

Page 45

1     MR. FELDT:  Certainly, certainly.  That's why I

2     wanted to clarify.

3     MS. SOLIS:  Go ahead, Clare.  I'm sorry to

4     interrupt.

5     THE WITNESS:  We spoke in person or we shared

6     e-mails about various business issues with regards to

7     the firm.  I specifically recollect an interaction

8     with regard to continuing legal education.  We also

9     have spoken about licensing, the licensing of lawyers

10    within the firm, and we have talked generally about

11    particular client relationships.

12    BY MR. FELDT:

13    Q    When you say licensing, you mean law license?

14    A    Yes.

15    Q    All right.  Do you know where Ms. Yano's law

16    license is held, what state or what country?

17    A    I do.

18    Q    In what state or country is she licensed to

19    practice law?

20    A    She's licensed in New York, California, and

21    she has a special legal license in Japan, which I

22    would hate to hesitate to pronounce, but I'm sure we

23    can pick it up off of her biography.

24    Q    All right.  How about Mr. Lubar?

Clare D'Agostino    July 3, 2008

Page 46

1      A    Mr. Lubar is admitted in the State of

2   Maryland.  He is on an inactive status in the

3   District of Columbia.  The District of Columbia is

4   one jurisdiction where by paying a certain amount of

5   money you can keep your license in inactive status

6   and you can reactivate it by doing certain things.

7   He's also registered as a foreign lawyer in the

8   United Kingdom.

9      Q    Have either Ms. Yano or Mr. Lubar terminated

10  any law licenses?

11     MS. SOLIS:  Objection.  Form.  In terms of what

12  time?

13     MR. FELDT:  Any time ever.

14     MS. SOLIS:  Clare, you may go ahead and answer.

15     A    Mr. Lubar allowed his District of Columbia

16  license to go into inactive status.

17  BY MR. FELDT:

18     Q    I know.  My question was terminate.

19     A    I do not know the answer.

20     Q    In the various meeting or phone calls or

21  e-mails with Ms. Yano, have you ever discussed

22  anything about her personal life?

23     A    I have not.

24     Q    Do you know where she was born?

Clare D'Agostino     July 3, 2008

Page 47

```
 1      A    I know the state but not the city.

 2      Q    What is the state?

 3      A    New Jersey.

 4      Q    Do you know where she grew up?

 5      A    I do not.

 6      Q    Do you know where she went to school?

 7      A    I know where she went to law school.

 8      Q    Which was --

 9      A    Yale.

10      Q    Do you know if she has any brothers or

11   sisters?

12      A    I do not.

13      Q    Do you know if her parents are alive?

14      A    I do not.

15      Q    Do you know if her family owns any property

16   in the United States?

17      A    I do not.

18      Q    Is she married?

19      A    I believe she is, yes.  To the best of my

20   knowledge, the answer is yes.

21      Q    Is that based upon reviewing a document or

22   because you've discussed it with her?

23      A    It's based upon legal directories that are

24   maintained within the firm where she has a spouse
```

Clare D'Agostino    July 3, 2008

Page 48

1    listed.

2        Q    All right.  How about children, do you know

3    if she has any children?

4        A    I do.

5        Q    How many children?

6        A    I believe she has two.

7        Q    Ages and names, if you know?

8        A    I do not know.

9        Q    Do you know where her children live?

10       A    I do.

11       Q    Where?

12       A    They live with her in Tokyo.

13       Q    And her husband?

14       A    I do not know.

15       Q    Do you know if she or her husband own any

16   property outside of Tokyo?

17       A    I do not.

18       Q    The building where she lives in Tokyo, do you

19   know what kind of building it is?  Is it an apartment

20   building, a home, a condominium?  Do you know

21   anything about it?

22       A    I do not know.

23       Q    Do you know if she owns or rents?

24       A    I do not know.

Page 49

1    Q    Do you know how much time she spends in Japan

2    as opposed to traveling abroad?

3    A    I can't answer that question.

4    Q    As with Mr. Lubar, can I assume that you

5    don't have any purpose in your job in knowing her

6    travel itinerary?

7    A    That's correct.

8    Q    Would you know why on her tax return the home

9    address for Ms. Yano is listed as the Morgan, Lewis &

10   Bockius office in Tokyo?

11   A    I do not.

12   Q    Mr. Lubar's and Ms. Yano's business cards

13   have been produced to us.  Let me start with

14   Mr. Lubar's business card.  Does it have the address

15   for Morgan Lewis' London office on that business

16   card?

17   A    It does.

18   Q    Does it have any kind of a resident address

19   for Mr. Lubar?

20   A    It does not.

21   Q    If Mr. Lubar worked out of the London office

22   but lived in New York, would he still have Morgan

23   Lewis' London office listed on his business card?

24        MS. SOLIS:  Objection.  I think that calls for

Clare D'Agostino    July 3, 2008

Page 50

1    speculation, but, Clare, go ahead, if you can.

2        A    If any lawyer, Mr. Lubar as we're talking

3    about, is resident in a particular office of the

4    firm, Mr. Lubar for London, the person has business

5    cards with their resident office.

6    BY MR. FELDT:

7        Q    Okay.  You've used the term "resident office."

8    by that do you mean works out of that office?

9        A    I do.

10        Q    You don't mean physically living there?

11        A    No.

12        Q    So in Ms. Yano's case as well then, if she

13    lived in San Francisco but worked out of the Tokyo

14    office, she would still have the Tokyo office on her

15    business card?

16        A    She would.

17        Q    Do you know if Mr. Lubar pays real estate

18    taxes in the United Kingdom?

19        A    I do.

20        Q    Do you know if he pays real estate taxes in

21    the United States?

22        A    I do not.

23        Q    Do you know anything about Mr. Lubar's

24    apartment either in London or in New York, about his

Clare D'Agostino    July 3, 2008

Page 68

```
 1   Ms. Yano is living in Tokyo in the way that I live in
 2   Philadelphia, Pennsylvania.  I live here.  That's
 3   what I meant.
 4       Q   I'm just making a note to myself, so bear
 5   with me.
 6           Do you know how much time Mr. Lubar spends
 7   in London in his private residence on a monthly
 8   basis?
 9       A   I believe that we've already discussed that
10   in a slightly different way and we concluded that I
11   do not have access to either Mr. Lubar or, if you're
12   going there, Ms. Yano's travel arrangements, so I
13   cannot answer that question.
14       Q   Okay.  I appreciate that.  I'm asking the
15   question in a specific form, so bear with me.
16           I'm going to ask you the same question with
17   regard to Mr. Lubar's apartment in New York.  Do you
18   know how much time Mr. Lubar spends in his apartment
19   in New York on a monthly basis?
20       A   Personally, I do not.
21       Q   In Paragraph 3 then, when you say
22   "Specifically, Charles G. Lubar is a partner resident
23   in our London office," does that mean that you
24   think -- or do you use that term to mean that he
```

Page 69

1    works out of the London office?

2        A    That is correct.  It is a term that we use

3    here when we talk about where partners -- anyone is

4    working, I would say they are resident in, Mr. Lubar,

5    the London office.  If someone was speaking about me,

6    they would say I am resident in the Philadelphia

7    office.

8        Q    And when you say "here," you mean within

9    Morgan Lewis?

10       A    Yes, within Morgan Lewis.  That's how we talk

11   about people's office location.

12       Q    Now, you indicate in Paragraph 3 "Mr. Lubar

13   has no immediate plans to leave the United Kingdom

14   and to return to the U.S. to live on a permanent

15   basis."

16            What is that based upon?

17       A    That is based upon interaction with

18   Mr. Lubar, I believe it was via e-mail, asking him

19   about his intent.

20       Q    Okay.  And when was the e-mail?

21       A    Around the end of May or the beginning of

22   June.

23       Q    All right.  Did you initiate the e-mail?

24       MS. SOLIS:  I'm sorry.  You cut out a little bit,

Page 70

1    Rob.  Can we have that one again?

2    BY MR. FELDT:

3        Q    Did you initiate the e-mail?

4        A    I don't remember.

5        Q    Do you recall if he sent the e-mail in

6    response to a phone call from you?

7        A    I do not remember.

8        Q    Do you recall if he sent the e-mail in

9    response to some form of question from you regardless

10   of whether it took an electronic or a telephone form?

11       A    It would have been definitely in relation to

12   a question.  I do not recollect whether it was via

13   telephone, via e-mail.  I specifically recollect that

14   we were in touch with Mr. Lubar to let him know that

15   I needed to make a declaration similar to before and

16   that we needed to discuss issues that had already

17   been discussed in preparation for an earlier

18   declaration.

19       Q    Okay.

20       A    That's my recollection.

21       Q    And when you say an earlier declaration, you

22   mean in the Swiger case?

23       A    I do.

24       MR. FELDT:  Okay.  I got to ask, Tina, do you

Page 71

1    have this e-mail?  Are you aware of this e-mail?

2        MS. SOLIS:  Are you making a request for it?

3        MR. FELDT:  I thought we did.

4        MS. SOLIS:  I do not have it, but that does not

5    mean that I cannot ask the client for it.

6        MR. FELDT:  Okay.  Well, maybe you're answering

7    my question.  You didn't see it and determine it to

8    be nonresponsive?

9        MS. SOLIS:  My answer is the same as it was when

10   we spoke the other day.

11       MR. FELDT:  Okay.  Well, I personally think it's

12   responsive to our requests.

13       MS. SOLIS:  I think a lot of that depends who

14   else may be on that e-mail, but --

15       MR. FELDT:  Well, I obviously don't know anything

16   about that.

17   BY MR. FELDT:

18       Q   Ms. D'Agostino, without talking about who

19   else may have received the e-mail, other information

20   that may be in the e-mail other than specifically

21   with regard to the statement that serves as the basis

22   for this sentence in Paragraph 3, "Mr. Lubar has no

23   immediate plans to leave the United Kingdom and to

24   return to the U.S. to live on a permanent basis," do

1    you recall the text that Mr. Lubar used to convey

2    that thought to you that resulted in this sentence in

3    Paragraph 3 of your declaration?

4        A    Not specifically.

5        Q    Did he specifically use the word "permanent"?

6    MS. SOLIS:   Objection.   Asked and answered.

7    BY MR. FELDT:

8        Q    This is more precise, but is the word

9    "permanent" --

10    MS. SOLIS:   She can't recall what he said, but go

11    ahead.

12    BY MR. FELDT:

13       Q    Is the word "permanent" your word or his?

14       A    I don't remember.

15       Q    Okay.   Then I guess I want to ask you the

16    same question about the sentence in Paragraph 4 that

17    deals with "partner resident," and is that the same

18    as you said about Mr. Lubar that it means she works

19    in the Tokyo office?

20       A    It is, that's correct.

21       Q    Then there is a sentence, "Ms. Yano has

22    resided in Japan continuously since 1992."

23           What is that based upon?

24       A    That is based upon telephone communication,

1    e-mail communication between Ms. Yano and I when we

2    were establishing certain facts about Ms. Yano not

3    having had the benefit of earlier preparation as we

4    did with Mr. Lubar and is he ready to make this

5    statement.

6        Q    You mean oral information in discussing it

7    with her specifically?

8        A    Yes.  I specifically recollect leaving voice

9    mail messages, receiving voice mail messages, and I

10   do believe there was an e-mail too.  The time

11   difference between Philadelphia and Tokyo sometimes

12   makes direct person-to-person communication sometimes

13   difficult, so we find ourselves sometimes exchanging

14   voice mails or e-mails, of course.

15       Q    I understand that.  I guess I would have a

16   similar comment about any e-mail, that it's

17   responsive, but let me move on to the voice mail

18   message.

19            Assuming that there was a voice mail

20   message, is that something you retained?

21       A    It is not.

22       Q    In Paragraph 4 there is a sentence "Ms. Yano

23   has no immediate plans to leave Japan and to return

24   to the U.S. to live on a permanent basis."

1          Where does that information come from?

2     A    From either the exchange of voice mails or

3   the exchange of e-mails.  The exact one of those two

4   places I cannot answer at this point.

5     Q    Can you recall ever specifically discussing

6   not via some voice mail recorded or e-mail but

7   actually talking directly on the telephone or in

8   person with Ms. Yano about whether she intends to

9   stay in Japan or leaving Japan or return to the U.S.?

10    A    No, not person to person.

11    Q    And the word "permanent" in that sentence, do

12  you recall if that came from her in the voice mail or

13  e-mail, whatever form the communication took, or is

14  that your word?

15    A    I do not recollect.

16    MR. FELDT:  All right.  I'll pass the witness.

17                    EXAMINATION

18  BY MS. SOLIS:

19    Q    Ms. D'Agostino, I just have a couple

20  follow-up questions.

21          Do you remember when Mr. Feldt was asking

22  you the last time you saw Mr. Lubar person to person?

23  Do you remember that line of questioning?

24    A    Yes.

Page 81

1      MR. FELDT:  That's all still information from

2   him, right?

3      MS. SOLIS:  Well, not if she visibly sees him

4   there.  I think that's seeing it with her own two

5   eyes.  I just want to make sure the record is clear.

6   BY MR. FELDT:

7      Q    Do you have any information about Mr. Lubar's

8   intent other than what he's told you?

9      A    I do not.

10      Q    Do you have any information -- let me clarify

11   that question.

12           Do you have any information about

13   Mr. Lubar's intent as to where he will live or where

14   he has considered to be his domicile other than what

15   he has told you?

16      A    I have not.

17      Q    Do you have any information about Ms. Yano's

18   intent about where she intends to live or where she

19   has intended to live in the past or what she

20   considers to be her domicile other than what she has

21   told you?

22      A    I have not.

23      MR. FELDT:  I'll pass the witness.

24

# EXHIBIT B TO THE JULY 10, 2008
# MOTION TO STRIKE THE
# AFFIDAVIT OF
# MS. CLARE D'AGOSTINO
# OF THE DEFENDANT,
# CITY OF EAST CHICAGO

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MORGAN, LEWIS & BOCKIUS LLP, )
           )
    Plaintiff,     )
           )
   v.        )   No. 08 CV 2748
           )   Judge Pallmeyer
CITY OF EAST CHICAGO,   )   Magistrate Judge Schenkier
           )
    Defendant.   )

### PLAINTIFF'S RESPONSES AND OBJECTIONS TO
### DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Morgan, Lewis & Bockius LLP ("Plaintiff" or "Morgan Lewis"), hereby serves its Responses and Objections to Defendant the City of East Chicago's ("Defendant" or "East Chicago") First Requests for Production of Documents. Morgan Lewis reserves the right to supplement or amend its Objections and Responses to these Requests for Production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

Morgan Lewis objects generally to East Chicago's First Requests for Production of Documents to the extent that they call for information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or defense.

Morgan Lewis also objects generally to East Chicago's First Requests for Production of Documents to the extent they impose burdens, obligations, or requirements in excess of those required or permitted by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, or any other applicable rule or order issued by the Court.



DEFENDANT'S
EXHIBIT
B

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents on the grounds they are vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent they contain no time limitation and are, therefore, temporally overbroad.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent the "Definition and Instructions" contained therein are overly broad.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent they exceed the scope of discovery permitted under the Court Order, dated June 9, 2008, permitting discovery on issues germane to the Motion to Remand.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent that the information and/or documents they seek is available from public sources.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent that the information and/or documents they seek is unreasonably cumulative, duplicative or obtainable from some other source that is more convenient, less burdensome or less expensive.

Subject to and without waiver of these General Objections, which are expressly incorporated by reference into each of the responses below, Morgan Lewis responds

1175436-2                                          2

more specifically.

## SPECIFIC OBJECTIONS AND/OR RESPONSES
### (in addition to all General Objections)

### REQUESTS FOR DOCUMENTS

**1.    All documents upon which Ms. Clare D'Agostino relied with regard to her Declaration of June 4, 2008.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that Clare

D'Agostino ("Ms. D'Agostino") relied on documents maintained by Morgan Lewis in the

ordinary course of business, including information from various files and/or databases on

residence and the information available on the Morgan Lewis website regarding Charles

Lubar ("Mr. Lubar") and Lisa Yano ("Ms. Yano").   This information and documents

relevant to the Motion to Remand will be produced.

**2.    All documents utilized as the basis for the representations about Mr. Lubar's citizenship, domicile or partnership in the *Swiger* matter, Civil Action No. 05-CV-5725, United States District Court for the Eastern District of Pennsylvania.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first

page of Mr. Lubar's 2005 United Kingdom tax return (ML00128); the first page of Mr.

Lubar's 2004 United States tax return (ML00129); statements for bar dues paid by Mr.

Lubar in 2004 and 2005 to the Maryland Bar; (ML00130-131); statements for bar dues

paid by Mr. Lubar in 2004 and 2005 to the District of Columbia Bar (as an inactive

member) (ML00132-133); a November 2005 statement from the Law Society regarding

Mr. Lubar's registration as a Registered Foreign Lawyer (ML00134); Mr. Lubar's

Washington, D.C. driver's license (ML00136); a June 2006 bank statement from Mr.

Lubar's bank account with Coutts Bank, Geneva, Switzerland (ML00137); a July 2006

bank statement from Mr. Lubar's bank account with SunTrust Bank, Orlando, Florida,

1175436-2                                        3

which account is located in Washington, D.C. (ML00138-139); a 2004 interest statement
from an account with Fleet National Bank, Scranton, Pennsylvania, relating to Mr.
Lubar's payment of New York real estate tax (ML00147); a May 2006 statement from
Mr. Lubar's Citigroup Global Markets, Inc. brokerage account (ML00140); January 2006
and March 2006 Chase mortgage loan statements for Mr. Lubar's apartment in New
York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for
Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for
payment of property maintenance fees for residential property owned by Mr. Lubar in
London, United Kingdom (ML00144); a January 2006 statement for payment of property
maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a
January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment
in New York, New York (ML00146); a 2004 United States tax return mortgage interest
statement for Mr. Lubar's apartment in New York, New York (ML00148). Each of these
documents is redacted so as not to reflect any confidential personal information.

    **3.**     **All documents which refer to Mr. Lubar's citizenship and/or domicile.**

    **OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce all of the
documents described in response to Request No. 2 (ML00128-48), as well as Mr. Lubar's
United Kingdom passport (ML00001-0037); Mr. Lubar's United States passport
(ML00038-00067); Mr. Lubar's certificate of naturalization as a British citizen
(ML00155); Mr. Lubar's business card (ML00069); Mr. Lubar's letterhead (ML00070); a
statement for bar dues paid in 2007 by Mr. Lubar to the Maryland Bar (ML00071); a
statement for bar dues paid in 2008 by Mr. Lubar to the District of Columbia Bar (as an
inactive member) (ML00075); Mr. Lubar's 2006 application for renewal as a Registered

1175436-2                           4

Foreign Lawyer (ML00072); a 2008 statement from the Law Society regarding Mr.

Lubar's registration as a Registered Foreign Lawyer (ML00073); a June 24, 2008 e-mail

from the Solicitors Regulation Authority confirming that Mr. Lubar is a Registered

Foreign Lawyer (ML00074); a June 27, 2008 statement from the Solicitors Regulation

Authority regarding Mr. Lubar's registration as a Registered Foreign Lawyer

(ML00156); the cover sheet of Mr. Lubar's 2006 U.S. tax return (ML00076); the first

page of Mr. Lubar's 2006 United States tax return (ML00077); Form 2555 of Mr.

Lubar's 2006 United States tax return (ML00078-80); Form 1042-S of Mr. Lubar's 2007

United States tax return (ML00081); the first and second pages of Mr. Lubar's 2007

United Kingdom tax return (ML00082-83); September 2007 and May 2008 account

statements from SunTrust Bank, Orlando, Florida which account is located in

Washington, D.C. (ML00084-85); a March 2008 account statement for Leumi Bank,

Jersey (ML00086); a March 2008 account statement from Citibank, New York, New

York (ML00087); a January 2007 account statement from Coutts & Co. Bank, London,

United Kingdom (ML00088); a June 2008 statement regarding Mr. Lubar's payment of

rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas

bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008

electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a

January 2008 tax bill for residential property owned by Mr. Lubar in London, United

Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of

property maintenance fees for residential property owned by Mr. Lubar in London,

United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for

Mr. Lubar's payment of property maintenance fees for his apartment in New York, New

York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102). Each of these documents is redacted so as not to reflect any confidential personal information.

    **4.**    **All documents which refer to Ms. Yano's citizenship and/or domicile.**

    **OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first page of Ms. Yano's United States passport (ML00105); Ms. Yano's Japanese driver's license (ML00107); Ms. Yano's Certificate of Alien Registration (ML00106); a statement for bar dues paid in 2008 by Ms. Yano to the California Bar (ML00109); a statement for bar dues paid in 2006 by Ms. Yano to the New York Bar (ML00111); a 2007 statement acknowledging Ms. Yano's change of attorney registration information for the New York Bar (ML00112); a 2008 statement from the New York State Unified Court System regarding Ms. Yano's registration as a member of the New York Bar (ML00110); Ms. Yano's Notice for Registration as Foreign Lawyer in Japan (ML00113-115); the Governmental Gazette providing notice of Ms. Yano's registration as a Foreign Lawyer; (ML00116); Ms. Yano's business card (ML00108); the first page of Ms. Yano's 2006 United States tax return (ML00117); an April 2008 bank account statement from Citibank (ML00118); a May 2008 consolidated bank and brokerage account statement from Citibank (ML00119); a May 2008 brokerage account statement from Fidelity Investments (ML00120); a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken,

6

Japan (ML00125-127); a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124). Each of these documents is redacted so as not to reflect any confidential personal information.

5.    **Any document related to or showing that any individual classified as or considered to be a partner with Morgan Lewis is a citizen or domiciliary of the State of Indiana, and for each such individual, provide all partnership documents.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds by stating that there are no responsive documents to this request in Morgan Lewis' possession, custody, or control.

6.    **All partnership agreements which form the basis for Plaintiff's claims that Mr. Lubar and Ms. Yano are partners of Morgan Lewis.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis objects to this request on the grounds that it is beyond the discovery authorized by the Court on issues related to the Motion to Remand. It is not reasonably calculated to lead to the discovery of admissible evidence. Morgan Lewis further responds by stating that information confirming Mr. Lubar and Ms. Yano's status as Morgan Lewis partners is publicly available on Morgan Lewis' website, on the Martindale-Hubbell Law Directory, and from various other similar sources. Morgan Lewis further responds by producing the letterhead of Mr. Lubar (ML00070) and the business card of Ms. Yano (ML00108), which acknowledge the status of each as "Partner."

7.    **All documents which reflect an ownership or occupancy interest in real property held by Mr. Lubar and Ms. Yano, respectively, between January 1, 2002 and the present date.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the following documents regarding Mr. Lubar: January 2006 and March 2006 Chase

mortgage loan statements for Mr. Lubar's apartment in New York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00144); a January 2006 statement for payment of property maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment in New York, New York (ML00146); a 2004 United States tax return mortgage interest statement for Mr. Lubar's apartment in New York, New York (ML00148); a June 2008 statement regarding Mr. Lubar's payment of rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008 electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a January 2008 tax bill for residential property owned by Mr. Lubar in London, United Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for Mr. Lubar's payment of property maintenance fees for his apartment in New York, New York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); and July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102).

Morgan Lewis will produce the following documents regarding Ms. Yano: a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in

1175436-2                                          8

Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00125-127); and a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124).

8.    **All documents the Plaintiff utilized in preparing the purported data regarding Mr. Lubar that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
   **http://www.morganlewis.com/index.cfm/personID/4c4115b6-f068-4acf-99ae-66b044 b64144/fromSearch/1/fuseaction/people.viewBio.**

**OBJECTIONS AND/OR RESPONSE:** East Chicago's request for documents encompasses numerous pieces of information and data on Morgan Lewis' website, including, *inter alia*, Mr. Lubar's photograph, practice areas, and civic involvements. Documentation regarding this information clearly is irrelevant to the issues presented by the Motion to Remand in the above-captioned action. In addition, the term "purported data" is vague and undefined, and Morgan Lewis has no basis for determining what information the term refers to. Subject to and without waiver of these objections, Morgan Lewis responds by stating that, upon information and belief, the information in Mr. Lubar's biography on the Morgan Lewis website is based on communications with Mr. Lubar, as well as documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases. Morgan Lewis further responds by stating that some of the information on Mr. Lubar's biography is publicly available information accessible through the Martindale-Hubbell Law Directory and various other similar sources.

9.    **All documents the Plaintiff utilized in preparing the purported data regarding Ms. Yano that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
   **http://www.morganlewis.com/index.cfm/personID/6ad4225b-629b-42b0-813e-28cc993cc35a/fromSearch/1/fuseaction/people.viewBio.**

**OBJECTIONS AND/OR RESPONSE:** East Chicago's request for documents encompasses numerous pieces of information and data on Morgan Lewis' website, including, *inter alia*, Ms. Yano's photograph, practice areas, and civic involvements. Documentation regarding this information clearly is irrelevant to the issues presented by the Motion to Remand in the above-captioned action. In addition, the term "purported data" is vague and undefined, and Morgan Lewis has no basis for determining what information the term refers to. Subject to and without waiver of these objections, Morgan Lewis responds by stating that, upon information and belief, the information in Ms. Yano's biography on the Morgan Lewis website is based on communications with Ms. Yano, as well as documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases. Morgan Lewis further responds by stating that some of the information on Ms. Yano's biography is publicly available information accessible through the Martindale-Hubbell Law Directory and various other similar sources.

**10.    With respect to Mr. Lubar, a copy of all passports held and all information evidencing the issuing nation for each passport.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce Mr. Lubar's United Kingdom passport (ML00001-00037) and Mr. Lubar's United States passport (ML00038-00067), designated as confidential.

**11.    With respect to Ms. Yano, a copy of all passports held and all information evidencing the issuing nation for each passport.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first page of Ms. Yano's United States passport (ML00105), designated as confidential.

12.    **All documents related to any naturalization, oath, process, action or test by which Mr. Lubar became a citizen or subject of any nation.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce Mr. Lubar's United Kingdom passport (ML00001-00037) and his certificate of naturalization as a British citizen (ML00155), designated as confidential.

13.    **All documents related to any naturalization, oath, process, action, or test by which Ms. Yano became a citizen or subject of any nation.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds by stating that there are no responsive documents to this request in Morgan Lewis' possession, custody, or control.

14.    **All documents upon which the plaintiff relied to support the Motion and Memorandum to Remand this matter.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis objects to this request on the ground that it seeks material protected by the attorney-client privilege and work product privilege.  Subject to and without waiver of these objections, Morgan Lewis will produce the Declaration of Clare D'Agostino, dated June 4, 2008 (ML00149-150); a copy of Mr. Lubar's biography reproduced from Morgan Lewis' website (ML00151-52); and a copy of Ms. Yano's biography, reproduced from Morgan Lewis' website (ML00153-54).

Dated:    June 27, 2008                    Respectfully submitted,

                                One of the Attorneys for
                                MORGAN, LEWIS & BOCKIUS
                                LLP


                                F. Thomas Hecht (ARDC #1168606)
                                Tina B. Solis (ARDC #6242461)

1175436-2                    11

Seth A. Horvath (ARDC #6283110)
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone (312) 977-4400
Facsimile (312) 977-4405

## CERTIFICATE OF SERVICE

I, Seth A. Horvath, an attorney, hereby certify that I served a copy of the foregoing PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS on the attorneys listed below by Federal Express and electronic mail on June 27, 2008 at or before 5:00 p.m.

David C. Jensen, #18395
Robert J. Feldt, #14284
Eichhorn & Eichhorn, LLP
200 Russell Street
P.O. Box 6328
Hammond, IN 46325

Seth A. Horvath

# EXHIBIT C TO THE JULY 10, 2008 MOTION TO STRIKE THE AFFIDAVIT OF MS. CLARE D'AGOSTINO OF THE DEFENDANT, CITY OF EAST CHICAGO

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 2748 | **DATE** | 6/9/2008 |
| **CASE TITLE** | Morgan, Lewis & Bockius LLP vs. City of East Chicago | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to remand [14] entered and continued for briefing.  Response 7/10/2008; reply 7/24/2008; ruling 7/31/2008 at 9:00.  Parties to proceed promptly with discovery on issues germane to this motion. Plaintiff to respond to written disclosures within 7 days of receipt of Defendant's request, and promptly to produce the affiant for deposition.

Notices mailed by Judicial staff.

00:08

| | Courtroom Deputy Initials: | ETV |
|---|---|---|



DEFENDANT'S
EXHIBIT
C

1  IN THE UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF ILLINOIS
   EASTERN DIVISION

3

| | | |
|---|---|---|
| 4  MORGAN, LEWIS & BOCKIUS, | ) | |
|    LLP, | ) | |
| 5  | ) | Docket No. 08 C 2748 |
|    Plaintiff, | ) | |
| 6  | ) | |
|    vs. | ) | |
| 7  | ) | |
|    CITY OF EAST CHICAGO, | ) | Chicago, Illinois |
| 8  | ) | June 9, 2008 |
|    Defendant. | ) | 9:36 a.m. |

9

10  TRANSCRIPT OF PROCEEDINGS - Motion
    BEFORE THE HONORABLE REBECCA R. PALLMEYER

11

12  APPEARANCES:

13

14  For the Plaintiff:        UNGARETTI & HARRIS, LLP
                              BY:  MR. F. THOMAS HECHT
                                   MR. SETH HORVATH
15                            3500 Three First National Plaza
                              Chicago, Illinois  60602

16

17  For the Defendant:        EICHHORN & EICHHORN, LLP
                              BY:  MR. ROBERT J. FELDT
18                            200 Russell Street, P.O. Box 6328
                              Hammond, Indiana  46320

19

20

21

22

23  Court Reporter:           FRANCES WARD, CSR, RPR, FCRR
                              Official Court Reporter
24                            219 S. Dearborn Street, Suite 2118
                              Chicago, Illinois  60604
25                            (312) 435-5561
                              frances_ward@ilnd.uscourts.gov

1          THE CLERK:  08 C 2748, Morgan, Lewis & Bockius

2   versus City of East Chicago on a motion.

3          MR. HORVATH:  Good morning, your Honor.

4          Seth Horvath for plaintiff, Morgan, Lewis &

5   Bockius.

6          MR. HECHT:  Thomas Hecht, your Honor, for Morgan,

7   Lewis as well.

8          THE COURT:  Good morning.

9          MR. FELDT:  Rob Feldt for the defendant.

10          THE COURT:  Good morning.

11          This is also a motion for remand, correct?

12          MR. HORVATH:  That's right, your Honor.

13          THE COURT:  Is there a diversity problem?

14          Remind me of the nature of the motion.

15          MR. HORVATH:  That's right.  Our motion to remand

16   argues that there is no diversity jurisdiction here.  And the

17   notice of removal that was filed is based entirely on the

18   idea that there is diversity.

19          So our argument goes that because Morgan,

20   Lewis & Bockius has two partners that are United States

21   citizens domiciled abroad, they are stateless for purposes of

22   diversity jurisdiction.

23          THE COURT:  And if you are stateless, you can't

24   bring a case -- you can't be in federal court; is that right?

25          MR. HORVATH:  That's correct, your Honor.

1          THE COURT:  Response?

2          MR. FELDT:  Well, these are very complicated

3     factual issues.  We were just served with the motion last

4     Wednesday.  We need time to issue, take, and -- take

5     discovery and brief the response.  And I have asked already

6     for information to try to speed that process up.  I was

7     rejected.

8          So what I would like, if your Honor is willing, is

9     120 days to issue and obtain written and oral discovery with

10    a response due 30 days after that.

11         MR. HORVATH:  I don't know that 120 days is

12    necessary on this.  I think it's -- I don't think it's that

13    complicated of an issue.

14         THE COURT:  You know, I wouldn't ever set 150 days'

15    response date on a motion for remand in any event.

16         But it seems to me the argument here is that there

17    are two members of Morgan, Lewis & Bockius who are not U.S.

18    citizens and, therefore, that that destroys diversity.

19         MR. FELDT:  Correct.

20         THE COURT:  That's a legal question.

21         What I think there may be some factual issues

22    regarding would be those two partners or members.  And what I

23    would suggest is that there be some written discovery on

24    those individuals and then a response in, say, 30 days.

25         MR. FELDT:  If I may, your Honor, there is an

1    affiant who is neither of the two partners that are alleged

2    to be domiciled abroad.  So at the very least, we are

3    anticipating at least three depositions: the deposition of

4    the affiant and the deposition of each of the partners who

5    supposedly are the basis for no diversity jurisdiction.

6          MR. HORVATH:  Your Honor, I am not sure that the

7    depositions of the two partners who are in question here

8    would be necessary, because the affiant is one of the

9    assistant general counsel for Morgan, Lewis.  And I could

10   understand, perhaps, if there might be some further inquiry

11   into her knowledge of the status of these two partners, but I

12   don't think there is a need to depose the partners who are

13   U.S. citizens domiciled abroad.

14         MR. FELDT:  If I may, your Honor, domicile is an

15   issue that has to go to the intent of the person involved.

16   The person who has given the affidavit can only obtain

17   whatever information on that issue by hearsay and other

18   inadmissible forms of evidence.

19         Mr. Lubar, I believe his name is, for example, is,

20   by my estimate, about 68 years old.  And he is the one who is

21   supposedly in London.  If it was his intent to retire next

22   month and move back to the states and he had had that goal

23   for quite some time, that would be a highly relevant fact.

24         So those kind of issues are the issues that we need

25   to obtain in order to have a proper response to this motion.

1    THE COURT:  Well, first of all, somebody's intent
2    to move a month from now wouldn't alter the calculus, unless
3    we are talking about somebody who's on a six-week assignment
4    or something and that's what puts him in London.  That would
5    be a different story.  That person is not a permanent
6    resident of London.  He is just visiting.

7    But you are right that there be some factual issues
8    along those lines.

9    I guess I am more curious right now about the law
10   and how it can be that if you have a foreign national -- or
11   not a foreign national, but somebody residing outside the
12   United States you can't possibly be in federal court.  So I
13   am more interested in the law myself.

14   That having been said, I think it's appropriate for
15   you to proceed with the deposition of the affiant and any
16   documents relating to these two individuals.

17   If you want to depose individuals who are abroad,
18   that's a very complicated process.  And I question the wisdom
19   of that effort where we are really talking about what I
20   understand to be a collection action.  I think it's a
21   collection action.

22   So whether it proceeds in state court or federal
23   court, the real issues are not where does somebody live and
24   whether he intends to retire, but whether or not there is a
25   basis to claim that City of East Chicago owes this law firm

1    $3 million.

2          MR. HORVATH:  That's correct, your Honor.

3          THE COURT:  I hope we can keep our focus on that

4    issue.

5          But before that happens, we do need to decide

6    whether I have got the case or whether somebody else does.

7          So I am going to direct that you proceed with the

8    deposition of the affiant and any written discovery with

9    regard to these two, and then respond to the motion to remand

10    within 30 days.

11          Today is June 9th.  So the response to the motion

12    for remand would be due on July 10th.  And then a reply, can

13    we say July 24th?

14          MR. HECHT:  Yes, your Honor, that's fine.

15          MR. HORVATH:  That's fine, your Honor.

16          Your Honor, there was also a pretrial conference

17    scheduled in the case for the 26th of June.

18          THE COURT:  Right.  We will strike that date.  I

19    think it was June 12th we had it set.  Whichever date it is,

20    it will be stricken.

21          We now have a motion for -- the briefing on the

22    motion for remand, and why don't we set a date for ruling

23    sometime after July 24th.  I am going to suggest July 31st at

24    9:00 o'clock.

25          MR. FELDT:  In light of the fact that you have only

1    given me 30 days to respond, am I not allowed to take written

2    discovery? which would have to be expedited to be completed

3    within the 30 days.

4         THE COURT:  The documents you need on this issue I

5    think counsel should be able to produce within seven days.

6    So why don't you put together a request and serve that on

7    them.

8         MR. FELDT:  Thank you.

9         THE COURT:  Thank you.

10        MR. FELDT:  One last issue.  There is one other

11   calendar date.  Our responsive pleading is due next week.  I

12   think it's either the 18th or 19th.  In light of the pending

13   motion to remand, can we hold that obligation in abeyance

14   until after there is a ruling?

15        It was our intent to move to dismiss and ask the

16   Court to transfer the case to the Northern District of

17   Indiana.  If you are not going to keep the case, we would

18   just as soon make that motion in state court and not --

19        THE COURT:  What's the basis for the motion to

20   dismiss?

21        MR. FELDT:  Contesting personal jurisdiction.

22        THE COURT:  Okay.  So that, too, would be a matter

23   of whether it's going here or going there.

24        MR. FELDT:  That's my point.  And I don't think

25   that it would be efficient for us to file the motion and then

1    you just simply hold that one in abeyance until you resolve

2    the remand.  If you end up sending it back to state court,

3    then you won't see the motion at all.

4              THE COURT:  Right.  I will enter and continue your

5    response date to the pleadings.

6              All right.  July 31st at 9:00 o'clock.

7              In the meantime, the response to the motion for

8    remand will be filed on July 10th and the reply on July 24th.

9              MR. FELDT:  Thank you.

10             MR. HORVATH:  Thank you, your Honor.

11             MR. HECHT:  Thank you.

12                          *    *    *    *    *

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15   F_____  _____, 2008.
     Official Court Reporter

16

17

18

19

20

21

22

23

24

25

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| NORTHERN | DISTRICT OF | ILLINOIS |

MORGAN, LEWIS & BOCKIUS LLP

V.

CITY OF EAST CHICAGO

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  08-cv-2748

TO:   CHARLES  LUBAR
c/o F. Thomas Hecht/Tina B. Solis, UNGARETTI & HARRIS
3500 Three First National Plaza, Chicago, IL 60602

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION   UNGARETTI & HARRIS<br>3500 Three First National Plaza, Chicago, IL 60602 | DATE AND TIME<br>7/3/08 8:00 a.m. CDT |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
Any and all documents responsive to the June 19, 2008 First Requests For Production Of Documents and Requests for
Admission, Supporting Interrogatory, And Supporting Request For Production of the Defendant, City of East Chicago.

| PLACE    UNGARETTI & HARRIS<br>3500 Three First National Plaza, Chicago, IL 60602 | DATE AND TIME<br>7/3/08 8:00 a.m. CDT |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Robert J. Feldt*    Attorney for the Defendant | DATE<br>7/1/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David C. Jensen, Robert J. Feldt, EICHHORN & EICHHORN, LLP, 200 Russell Street, Hammond, IN 46325

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 7/1/2008 | 200 Russell Street<br>Hammond, IN 46325 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| CHARLES LUBAR<br>c/o F. Thomas Hecht/Tina B. Solis | Overnight Mail and E-mail as PDF attachment |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Robert J. Feldt | Attorney |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on      7/1/2008
                  _____                    _____
                       DATE                              SIGNATURE OF SERVER


                                                     ADDRESS OF SERVER

                                                     200 Russell Street, Hammond, IN 46325

---

Rule 45. Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation material, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Robert J. Feldt

| | |
|---|---|
| **From:** | "Barbara Cernick" <bcernick@eichhorn-law.com> |
| **To:** | <tbsolis@uhlaw.com> |
| **Cc:** | "Robert Feldt" <rfeldt@eichhorn-law.com> |
| **Sent:** | Tuesday, July 01, 2008 3:07 PM |
| **Attach:** | Solis-ltr-re 7-3-08 deps.pdf; Yano-subpoena.pdf; DAgostino Dep Ex 1.pdf; DAgostino Dep Ex 2.pdf; DAgostino Dep Ex 3(1).pdf; DAgostino Dep Ex 3(2).pdf; DAgostino Dep Ex 3(3).pdf; DAgostino Dep Ex 3(4).pdf; DAgostino Dep Ex 4.pdf; DAgostino-subpoena.pdf; Lubar-subpoena.pdf |
| **Subject:** | Morgan Lewis v. City of East Chicago, Our File No. 411.11197 |

Sent at the request of Robert J. Feldt, please see the attached correspondence and enclosures to that letter. Hard copies will follow by Federal Express delivery.  Thank you.  Barbara, Secretary

Barbara R. Cernick
bcernick@eichhorn-law.com
Eichhorn & Eichhorn, LLP
200 Russell Street
P.O. Box 6328
Hammond, IN 46325
(219) 931-0560 - voice
(219) 931-5370 - facsimile

# EICHHORN & EICHHORN, LLP

DAVID C. JENSEN*
PAUL A. RAKE
JOHN M. McCRUM
ROBERT J. FELDT**
GREGORY A. CRISMAN
ALYSSA STAMATAKOS
DAVID J. BEACH
LOUIS W. VOELKER, III
JOHN P. TWOHY*

MICHAEL ROTH
MATTHEW S. VER STEEG
KIRK D. BAGROWSKI*

MICHAEL P. MULCHAY
TRENTON W. GILL
DAVID J. LANGE*
KAROL A. SCHWARTZ
LOGAN C. HUGHES*

MEGAN C. BRENNAN*
MALLORY R. INSELBERG
JUSTIN M. TREASURE
NICHOLAS G. BRUNETTE
BRETT T. CLAYTON
MICHAEL D. KARRAS
CARLY A. BRANDENBURG

―――――――――ATTORNEYS AT LAW―――――――――

HAMMOND OFFICE
200 RUSSELL STREET
POST OFFICE BOX 6328
HAMMOND, INDIANA 46325
TELEPHONE: (219) 931-0560
TELECOPIER: (219) 931-5370

TOLL FREE NUMBER: (866) 931-0560

INDIANAPOLIS OFFICE
9101 NORTH WESLEYAN ROAD
SUITE 401
INDIANAPOLIS, IN 46268
TELEPHONE: (317) 228-9670
TELECOPIER: (317) 228-9569

FREDERICK F. EICHHORN, JR.
WILLIAM H. EICHHORN
RETIRED

* ALSO ADMITTED IN ILLINOIS
**ALSO ADMITTED IN ILLINOIS & MINNESOTA

July 1, 2008

PLEASE REPLY TO:     Hammond Office

VIA FEDERAL EXPRESS
and E-MAIL TRANSMISSION

Ms. Tina B. Solis
**UNGARETTI & HARRIS LLP**
3500 Three First National Plaza
Chicago, IL 60602

> Re:   **Morgan Lewis Bockius, LLP v. City of East Chicago**
>       Cause No. 1:08-cv-2748
>       Our File No. 411.11197

Dear Ms. Solis:

     This will acknowledge my agreement with you to proceed with the deposition of Ms. D'Agostino via a telephonic deposition with all parties calling a central telephone number at 2:00 p.m. EDT, 1:00 p.m. CDT, on July 3, 2008. It is my understanding that you are agreeable to the court reporter being present with me at our offices in Hammond, Indiana and swearing in the witness in Philadelphia via telephone. The court reporter which we have retained is Merrill Legalink, Chicago, Illinois. We would be most appreciative if you could confirm that this process is acceptable to you and your client in writing by return e-mail. The call-in information for this telephone deposition is as follows: dial in number: 877-322-9654, participant code: 510059. A copy of the notice of deposition/subpoena is enclosed.

     Copies of the marked exhibits also are enclosed and are attached as PDF files to the electronic version of this letter. They consist of the Plaintiff's Responses And Objections To Defendant's Requests For Admission, Supporting Interrogatory, And Supporting Request For Production, the Plaintiff's Responses And Objections To Defendant's First Requests For Production Of Documents, the documents produced and Ms. D'Agostino's Declaration and attachments. Per your representation during our June 30, 2008 telephone conference, it is my understanding that you have produced all responsive documents and that there are no responsive documents which have been withheld, for example, due to attorney-client privilege, and hence, no privilege log. We would be most appreciative if you could confirm this in writing by return e-mail, as well.

## EICHHORN & EICHHORN, LLP

Ms. Tina B. Solis
July 1, 2008
Page 2

Finally, also enclosed are notices of deposition/subpoenas for Mr. Charles Lubar and Ms. Lisa Yano. As I indicated during our June 30, 2008 telephone conference, these are being submitted to you only to preserve our requests for these depositions for the record. We acknowledge that the Honorable Rebecca P. Pallmeyer already has rejected our request to take these depositions and that you object to these depositions and the notices.

Please contact me if you have any questions or comments.

Very truly yours,

**EICHHORN & EICHHORN, LLP**

By: _Robert J. Feldt_

Robert J. Feldt

RJF:brc
Enclosures

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| NORTHERN | DISTRICT OF | ILLINOIS |
|---|---|---|

MORGAN, LEWIS & BOCKIUS LLP

V.

CITY OF EAST CHICAGO

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  08-cv-2748

TO:  CLARE D'AGOSTINO
c/o F. Thomas Hecht/Tina B. Solis, UNGARETTI & HARRIS
3500 Three First National Plaza, Chicago, IL 60602

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case `telephonically.`

| PLACE OF DEPOSITION   Telephonically at EICHHORN & EICHHORN, LLP (with Court Reporter) 200 Russell Street, Hammond, IN 46325 | DATE AND TIME 7/3/08 2:00 p.m. EDT |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all documents responsive to the June 19, 2008 First Requests For Production Of Documents and Requests for Admission, Supporting Interrogatory, And Supporting Request For Production of the Defendant, City of East Chicago.

| PLACE   Telephonically at EICHHORN & EICHHORN, LLP (with Court Reporter) 200 Russell Street, Hammond, IN 46325 | DATE AND TIME 7/3/08 2:00 p.m. EDT |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)      Attorney for the Defendant | DATE 7/1/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David C. Jensen, Robert J. Feldt, EICHHORN & EICHHORN, LLP, 200 Russell Street, Hammond, IN 46325

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 7/1/2008 | 200 Russell Street<br>Hammond, IN 46325 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| CLARE D'AGOSTINO<br>c/o F. Thomas Hecht/Tina B. Solis | Overnight Mail and E-mail as PDF attachment |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Robert J. Feldt | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on          7/1/2008
                      DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

200 Russell Street, Hammond, IN 46325

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
  (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
  (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
  (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| NORTHERN | DISTRICT OF | ILLINOIS |
|---|---|---|

MORGAN, LEWIS & BOCKIUS LLP

V.

CITY OF EAST CHICAGO

### SUBPOENA IN A CIVIL CASE

Case Number:[1]  08-cv-2748

TO:  **LISA YANO**
c/o F. Thomas Hecht/Tina B. Solis, UNGARETTI & HARRIS
3500 Three First National Plaza, Chicago, IL 60602

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    UNGARETTI & HARRIS<br>3500 Three First National Plaza, Chicago, IL 60602 | DATE AND TIME<br>7/3/08 11:00 a.m. CDT |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
Any and all documents responsive to the June 19, 2008 First Requests For Production Of Documents and Requests for Admission, Supporting Interrogatory, And Supporting Request For Production of the Defendant, City of East Chicago.

| PLACE    UNGARETTI & HARRIS<br>3500 Three First National Plaza, Chicago, IL 60602 | DATE AND TIME<br>7/3/08 11:00 a.m. CDT |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    Attorney for the Defendant | DATE<br>7/1/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David C. Jensen, Robert J. Feldt, EICHHORN & EICHHORN, LLP, 200 Russell Street, Hammond, IN 46325

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 7/1/2008 | 200 Russell Street<br>Hammond, IN 46325 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| LISA YANO<br>c/o F. Thomas Hecht/Tina B. Solis | Overnight Mail and E-mail as PDF attachment |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Robert J. Feldt | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on        7/1/2008
                      DATE

_Robert J. Feldt_
SIGNATURE OF SERVER

ADDRESS OF SERVER

200 Russell Street, Hammond, IN 46325

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Robert J. Feldt

| | |
|---|---|
| **From:** | "Barbara Cernick" <bcernick@eichhorn-law.com> |
| **To:** | <tbsolis@uhlaw.com> |
| **Cc:** | "Robert Feldt" <rfeldt@eichhorn-law.com> |
| **Sent:** | Wednesday, July 02, 2008 1:57 PM |
| **Attach:** | Yano-NOD.pdf; DAgostino-NOD.pdf; Lubar-NOD.pdf |
| **Subject:** | Morgan Lewis v. City of East Chicago, Our File No. 411.11197 |

Sent at the request of Robert J. Feldt, please see the attached Notices Of Deposition.  Hard copies will follow by U.S. mail with no cover letter.  Thank you.  Barbara, Secretary


Barbara R. Cernick
bcernick@eichhorn-law.com
Eichhorn & Eichhorn, LLP
200 Russell Street
P.O. Box 6328
Hammond, IN 46325
(219) 931-0560 - voice
(219) 931-5370 - facsimile

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIVISION OF ILLINOIS

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    No. 08-cv-2748 |
| | ) |
| **CITY OF EAST CHICAGO,** | )    Judge: Rebecca R. Pallmeyer |
| | )    **Magistrate Judge:** |
| **Defendant.** | )    Sidney I. Schenkier |

### NOTICE OF DEPOSITION

To:    Mr. Charles Lubar
     c/o F. Thomas Hecht/Tina B. Solis
     UNGARETTI & HARRIS LLP
     3500 Three First National Plaza
     Chicago, IL 60602

PLEASE TAKE NOTICE that on the 3rd day of July, 2008, at the hour of 8:00 a.m., prevailing time, at the offices of Ungaretti& Harris LLP, 3500 Three First National Plaza, Chicago, IL 60602, the undersigned will proceed to take the deposition of Mr. Charles Lubar before a duly authorized court reporter. The deposition will continue without interruption until completed. The deponent is requested to bring the documents listed in the Subpoena previously served upon you.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: _____
     One of the attorneys for the Defendant,
     City of East Chicago

David C. Jensen
Robert J. Feldt
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46320
219-931-0560

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, certify that on the _2ᵗʰ_ day of July, 2008, a true and complete copy of

the foregoing Notice Of Deposition was served upon:

> Tina B. Solis
> UNGARETTI & HARRIS LLP
> 3500 Three First National Plaza
> Chicago, IL 60602
> tbsolis@uhlaw.com

by depositing a copy in the United States mail, first class postage prepaid, in a properly addressed

envelope and by e-mail transmission.

Robert J. Feldt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIVISION OF ILLINOIS

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-cv-2748 |
| | ) | |
| CITY OF EAST CHICAGO, | ) | Judge: Rebecca R. Pallmeyer |
| | ) | Magistrate Judge: |
| Defendant. | ) | Sidney I. Schenkier |

### NOTICE OF TELEPHONIC DEPOSITION

To:    Ms. Clare D'Agostino
       c/o F. Thomas Hecht/Tina B. Solis
       UNGARETTI & HARRIS LLP
       3500 Three First National Plaza
       Chicago, IL 60602

PLEASE TAKE NOTICE that on the 3rd day of July, 2008, at the hour of 1:00 p.m., prevailing time, the undersigned will proceed to take the telephonic deposition of Ms. Clare D'Agostino at the offices of Eichhorn & Eichhorn, LLP, 200 Russell Street, Hammond, IN 46320 with a duly authorized court reporter present. The deposition will continue without interruption until completed. The deponent is requested to have available the documents listed in the Subpoena previously served upon you.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: _____
One of the attorneys for the Defendant,
City of East Chicago

David C. Jensen
Robert J. Feldt
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46320
219-931-0560

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, certify that on the _Owl_ day of July, 2008, a true and complete copy of

the foregoing Notice Of Telephonic Deposition was served upon:

> Tina B. Solis
> UNGARETTI & HARRIS LLP
> 3500 Three First National Plaza
> Chicago, IL 60602
> tbsolis@uhlaw.com

by depositing a copy in the United States mail, first class postage prepaid, in a properly addressed

envelope and by e-mail transmission.

_____
Robert J. Feldt

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIVISION OF ILLINOIS

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-cv-2748 |
| | ) | |
| CITY OF EAST CHICAGO, | ) | Judge: Rebecca R. Pallmeyer |
| | ) | Magistrate Judge: |
| Defendant. | ) | Sidney I. Schenkier |

### NOTICE OF DEPOSITION

To:    Ms. Lisa Yano
       c/o F. Thomas Hecht/Tina B. Solis
       UNGARETTI & HARRIS LLP
       3500 Three First National Plaza
       Chicago, IL 60602

PLEASE TAKE NOTICE that on the 3rd day of July, 2008, at the hour of 11:00 a.m., prevailing time, at the offices of Ungaretti& Harris LLP, 3500 Three First National Plaza, Chicago, IL 60602, the undersigned will proceed to take the deposition of Ms. Linda Yano before a duly authorized court reporter. The deposition will continue without interruption until completed. The deponent is requested to bring the documents listed in the Subpoena previously served upon you.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: _____
One of the attorneys for the Defendant,
City of East Chicago

David C. Jensen
Robert J. Feldt
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46320
219-931-0560

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, certify that on the _2nd_ day of July, 2008, a true and complete copy of

the foregoing Notice Of Deposition was served upon:

> Tina B. Solis
> UNGARETTI & HARRIS
> 3500 Three First National Plaza
> Chicago, IL 60602
> tbsolis@uhlaw.com

by depositing a copy in the United States mail, first class postage prepaid, in a properly addressed

envelope and by e-mail transmission.

Robert J. Feldt

# NOTICE FOR
# EXHIBIT D TO THE JULY 10, 2008
# MOTION TO STRIKE THE
# AFFIDAVIT OF
# MS. CLARE D'AGOSTINO
# OF THE DEFENDANT,
# CITY OF EAST CHICAGO

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) | No. 08-cv-2748 |
| Plaintiff, | ) | |
| v. | ) | Judge: Rebecca R. Pallmeyer |
| CITY OF EAST CHICAGO, | ) | Magistrate Judge: |
| Defendant. | ) | Sidney I. Schenkier |

**NOTICE OF RESTRICTED AND SEALED DOCUMENTS
PURSUANT TO LR 26.2 and LR 5.8:  EXHIBIT D TO MOTION TO STRIKE**

**Statement:**      The Defendant, the City of East Chicago, ("East Chicago"), notifies the Court that Exhibit D to its Motion To Strike and related Brief is designated as a restricted document for filing with the Court under seal.  Exhibit D includes pages numbered ML 38-40, 48, 49, 50, 51, 53, 54, 58, 59, 61, 63, 68, 90-91, 101-102, 105, 117, 136, 145, 147-148. These pages were produced by the Plaintiff in response to the City of East Chicago's Requests For Production and contain materials designated as restricted and confidential in accordance with the Court's Stipulation and Order Governing the Protection and Exchange of Confidential Material of June 24, 2008 and the Court's Order of July 10, 2008. The pages comprising Exhibit D to East Chicago's July 10, 2008, Motion To Strike and related Brief are provided under seal for filing pursuant to LR 26.2 and LR 5.8.

Pursuant to LR 26.2(c), copies of the June 24, 2008 and July 10, 2008 restricting orders have been included along with the restricted and sealed document presented for filing.

David C. Jensen
djensen@eichhorn-law.com

Robert J. Feldt
rfeldt@eichhorn-law.com

**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46320
219-931-0560

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: _____
One of the attorneys for the Defendant,
the City of East Chicago

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, hereby certify that on the _____ day of July, 2008, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

> F. Thomas Hecht
> Tina B. Solis
> UNGARETTI & HARRIS LLP
> 3500 Three First National Plaza
> Chicago, IL 60602
> fthecht@uhlaw.com
> tbsolis@uhlaw.com

Robert J. Feldt