**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DIVISION OF ILLINOIS**

| | | |
|---|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08-cv-2748** |
| **v.** | ) | |
| | ) | **Judge: Rebecca R. Pallmeyer** |
| **CITY OF EAST CHICAGO,** | ) | **Magistrate Judge:** |
| **Defendant.** | ) | **Sidney I. Schenkier** |

**RESPONSE OF THE DEFENDANT, CITY OF EAST CHICAGO,**
**IN OPPOSITION TO THE PLAINTIFF'S MOTION TO REMAND**

**I.  INTRODUCTION & FACTUAL SUMMARY**

The Plaintiff, Morgan Lewis & Bockius, LLP, ("Morgan Lewis"), is a Pennsylvania partnership which employees 1400 lawyers, 466 of them as partners. (See attached Exhibit A, portions of the deposition of Claire D'Agostino, pp. 18-19, and [DE1, Exhibit A, ¶9.) Morgan Lewis is a Citizen of the States of Illinois, New York, California, New Jersey, Florida, Texas, Pennsylvania, Massachusetts and Minnesota by virtue of the fact that various partners in its numerous offices in those States are domiciled in those States. (See Exhibit A, pp. 18, 22-24. See, also, [DE 1, Amended Exhibit C.) The Defendant, City of East Chicago, ("East Chicago"), is a Citizen of the State of Indiana by virtue of its status as an Indiana Municipal Corporation. [DE1, Exhibit A, ¶10] *People of the State of Illinois v. Kerr-McGee Chemical Corp.,* 677 F.2d 571, 577, fn. 13 (7th Cir. 1982). Morgan Lewis concedes that it is not a Citizen of the State of Indiana. (See attached Exhibit B, Morgan Lewis' Admission Response Nos. 1-2.) This controversy arises from Morgan Lewis' claim that it is entitled to more than $3,000,000.00 in additional attorneys fees and expenses which it billed to East Chicago for services which supposedly were reasonable and necessary in order for East

Chicago to defend itself in numerous lawsuits pending in Indiana State and Federal Courts. [DE1, Exhibit A, generally.][1]

In language to be prized for its straight-forward simplicity, the United States Constitution and 28 U.S.C. §1332(a)(1), state in relevant part that "federal district courts *shall* have original jurisdiction where the matter in controversy . . . is between [C]itizens of different States." 28 U.S.C. §1332(a)(1), *emphasis added. Accord,* U.S. Const., Art. III, Sec. 2. As a result, a correspondingly simple three-step test exists to determine under §1332(a)(1) if a controversy is between Citizens of different States: 1) determine if the plaintiff and defendant are both U.S. Citizens; 2) determine if the plaintiff and defendant are both Citizens of one or more of the fifty (50) States; and 3) if 1) and 2) are satisfied, determine if there are any overlapping States. (See Section II. of this Response Brief.) East Chicago has satisfied this test by showing that, indeed, Morgan Lewis is a Citizen of at least nine (9) of the fifty (50) States through the citizenship of hundreds of its partners,  and that Morgan Lewis has no partner who is a Citizen of the State of Indiana.

Morgan Lewis has contorted this simple test in its motion to suit its own needs and to deprive East Chicago of its constitutional and statutory right of access to the Federal Courts. Morgan Lewis has misapplied the "completeness" rule for the third prong of this test, *i.e.* that all plaintiffs must be diverse from all defendants, to the second prong of the test which requires that a party be a Citizen of one of the fifty (50) States. Without citing to any Supreme Court or Seventh Circuit case which has so held, Morgan Lewis insists that each partner in a partnership must be shown to be a Citizen of one of the fifty (50) States in order for the partnership to be a Citizen of one or more of the fifty

---

[1]East Chicago further disputes that it is subject to personal jurisdiction in Illinois and anticipates that it will contest the same and venue and seek transfer to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C §§1404, 1406 if remand is denied.

(50) States. In other words, despite that fact that it has hundreds of partners domiciled in at least nine

(9) states, Morgan Lewis asserts that these partners' States of domicile are wiped out by two of its

partners who it claims are U.S. citizens domiciled abroad.  Morgan Lewis has the standard backward;

by the plain language of the U.S. Constitution and 28 U.S.C. §1332(a)(1), Morgan Lewis needs be

a Citizen of one State by virtue of one partner, who is not domiciled in the State of Indiana.

## II.  ARGUMENT

### A.  The Parties Are U.S. Citizens, Are Citizens Of A State And Are Diverse.

In relevant part, 28 U.S.C. § 1332(a)(1) states that "[t]he district courts shall have original

jurisdiction of all civil actions where the matter in controversy . . .is between citizens of different

states." A simple three-step test exists as a result to determine under §1332(a)(1) if a controversy is

between Citizens of different States: 1) determine if the plaintiff and defendant are both U.S.

Citizens; 2) determine if the plaintiff and defendant are both Citizens of one or more of the fifty (50)

States; and 3) if 1) and 2) are satisfied, determine if there is any overlapping States. *See,  Newman-*

*Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989);  *Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th

Cir. 1980). As a partnership, Morgan Lewis' citizenship is determined by consulting the citizenship

of its partners, in this case including the States of Illinois, New York, California, New Jersey,

Pennsylvania, Massachusetts, Florida, Texas and Minnesota, but not including the State of Indiana.

*Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990), (finding that the parties were not diverse

because one of the defendant's limited partners, like the plaintiff, was a Citizen of the State of

Louisiana); *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007) ("For diversity

jurisdiction purposes, the citizenship of an LLC is *the citizenship of <u>each</u> of its members*."),

*(<u>emphasis</u> <u>added</u>)*; *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881, n. 1 (7th Cir.

3

2004), ("[F]or diversity purposes, 'limited liability companies are citizens *of every state of which any member is a citizen.*'"), (*emphasis added, and citing to Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003)). (See, also, Section I. of this Response Brief.) Citizenship is synonymous with domicile, which is defined as a person's "true, fixed, and permanent home and place of habitation." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973).

East Chicago has established that diversity exists between the two parties to this action by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), (noting that a defendant can meet its burden by supporting its allegations of jurisdiction with "competent proof"); *see also, Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993), (explaining that a defendant must offer evidence which proves "to a reasonable probability that jurisdiction exists.") East Chicago first examined the locations of Morgan Lewis' offices and its Chicago office was the only one near the State of Indiana. East Chicago then obtained evidence that every single partner at the Firm's Chicago Office was a citizen of the States of Illinois, except for one who was a Citizen of the State of Minnesota. [DE1, Amended Exhibit C] Morgan Lewis further admits that hundreds of its partners are domiciled in the States of Illinois, New York, New Jersey, California, Pennsylvania, Massachusetts, Florida, Texas and Minnesota, and that none are domiciled in the State of Indiana. (See Section I. of this Response Brief.)

Morgan Lewis' suggestion that East Chicago did not consider all of its partners, [DE15, p. 3], is simply false. East Chicago reasonably concluded that, if none of the partners in the Chicago office were domiciled in the State of Indiana, there was no likelihood that a partner in an office several States away might be. Morgan Lewis' suggestion is based upon an incorrect pleading standard; East Chicago was only obligated to plead diversity to a reasonable probability. *Gould*, 1

4

F.3d at 547. East Chicago was then entitled to establish complete diversity through discovery, as it has. *See, Boustead v. Barancik*, 151 F.R.D. 102, 105-06 (E.D. Wis. 1993), *citing, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, fn.13 (1978) (Exhibit B, Admission Response Nos. 1-2.)

**B. Morgan Lewis' Motion To Remand Is Not Supported By Any Applicable Supreme Court Or Seventh Circuit Holding And The Basis For Its Motion Is Contrary To The Plain Language Of Art. III, Sec. 2 And 28 U.S.C. §1332(a)(1).**

The Plaintiff relies primarily on *Newman-Green* and *Sadat* in arguing that its two partners who are U.S. Citizens but allegedly are domiciled abroad defeat diversity jurisdiction in this matter, but neither case is on point. *Newman-Green* involved an attempt to apply 28 U.S.C. §1332(a)(2) & (3) to a dispute between an Illinois corporation, a Venezuelan corporation, and several citizens, one of whom was a United States citizen domiciled in Venezuela, (Mr. Bettison). The court found nothing more than that Mr. Bettison, as an individual, was "stateless" for purposes of §1332(a)(3), and it rejected §1332(a)(2) because he was a United States citizen. *Newman-Green,* 490 U.S. at 828. Likewise, the court in *Sadat* held only that an individual foreign citizen who becomes a naturalized U.S. Citizen but is domiciled abroad at the time he files suit cannot claim that he is a Citizen of one of the fifty (50) States. *Sadat,* 615 F.2d at 1180-1182. This is a rather meaningless point here, where Morgan Lewis is a Citizen of nine (9) different States by virtue of the States of domicile of hundreds of its partners. Neither the Supreme Court nor the Seventh Circuit has held that a partnership which was otherwise a Citizen of a State due to the State(s) of domicile of its other partners is rendered "stateless" because one allegedly "stateless" partner negates all of the other partners. In fact, to apply *Newman-Green* or *Sadat* in such a fashion would violate *Carden*, 494 U.S. at 187, *Camico Mut. Ins. Co.*, 474 F.3d at 992, and *Commonwealth Ins. Co.*., 398 F.3d at 881, n. 1, which all hold that a

partnership's citizenship is determined by consulting the State of domicile of _each_ of its partners, not just one or two.

Thus, even if Mr. Charles Lubar or Ms. Lisa Yano were to be found to be "stateless," (see, however, Section II.C. of this Response Brief and East Chicago's Motion To Strike and Motion To Compel and supporting Briefs), the only relevance of this point would be that neither Mr. Lubar nor Ms. Yano is a Citizen of the State of Indiana. Morgan Lewis mistakenly asks the Court without any binding authority to apply the "completeness" rule, which requires that the parties be completely diverse, as a basis for arguing that all of Morgan Lewis' U.S. partners must be a Citizen of at least one of the fifty (50) States. But an artificial entity like a partnership cannot invoke the citizenship of some, but not all of its' partners, _Carden_, 494 U.S. at 196. That is what Morgan Lewis is asking the Court to do by asking the Court to ignore its other 400 + partners and define its Citizenship by only the status of Mr. Lubar and/or Ms. Yano. While all of the partners' place of domicile must be "consulted" to determine diversity, no single partner defines the partnership's citizenship status, nor does he or she erase the status of all of the other partners. _Carden_, 494 U.S. at 189-196, (one non-diverse partner can, however, prevent complete diversity.) In other words, Morgan Lewis has the second prong, the State citizenship test, backwards; once there is positive evidence of a partner who is a Citizen of one of the fifty (50) States, and that any such partner is diverse from the opposing party, an alleged "stateless" partner becomes irrelevant. Such an interpretation of 28 U.S.C. §1332(a)(1) to apply the "completeness" rule to determining a collective entity's State citizenship as Morgan, Lewis asserts should come from Congress, or at least from a clear and binding holding from the Supreme Court or the Seventh Circuit.

The Plaintiff misconstrues *ISI Int'l, Inc., v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) in a similar fashion. The issue in *ISI Int'l* was whether the district court properly invoked *forum non conveniens* when it relegated a plaintiff to a Canadian forum to pursue its action against a Canadian law firm.  In upholding the district court's application of *forum non conveniens,* the Seventh Circuit Court of Appeals noted parenthetically in *dicta* that one of the defendant's law partners was a U.S. citizen domiciled in Canada who therefore was "stateless." *ISI Int'l*, 316 F.3d at 733. *ISI* involved a Canadian law firm, however, and there is nothing in the case to suggest that the law firm was a U.S. Citizen or that it had any other U.S. partner who was a Citizen of one of the fifty (50) States. That is certainly not the evidence here, and for these reasons *ISI Int'l* is irrelevant.

The Supreme Court recently expounded upon the need to rely upon cases in the proper context, where the parties to the case briefed and argued the same issues, and where the reviewing court actually based its holding upon its resolution of those issues. *District of Columbia v. Heller*, 2008 WL 2520816 (June 26, 2008), ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.")[2]

Morgan Lewis also discusses 28 U.S.C. §1332(a)(2), but East Chicago has been deprived of the opportunity to fully address its alleged inapplicability. *Sadat* suggests that it may be proper in

---

[2]The Supreme Court strongly cautioned the parties in *Heller* against relying on particular language in *Lewis v. United States*, 445 U.S. 55 (1980).  *Lewis* involved an appeal from a conviction for being a felon in possession of a firearm.  The court noted that "no Second Amendment claim was raised or briefed by any party [in *Lewis*].  In the course of rejecting the asserted challenge, the Court commented gratuitously, in a footnote, that 'these legislative restrictions on the use of firearms are neither based upon any constitutionally protected liberties.  *See United States v. Miller*. . . (the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to preservation or efficiency of a well regulated militia'). . ."  *Heller,* at FN 25.

the case of dual nationality to assess which nationality is predominant. Morgan Lewis admits that

Mr. Lubar is a British subject, [DE 15, Exhibit A, ¶ 3], and implicitly argues that his British contacts

are predominant in an effort to argue that he is not a Citizen of one of the fifty (50) states. *See, Sadat,*

615 F.2d at 1187-1188, (examining the theory of dominant nationality for purposes of analyzing 28

U.S.C. §1332(a)(2).) East Chicago has been precluded from deposing Mr. Lubar by Morgan Lewis'

objection, foreclosing its ability to address the relevance of his dual nationality. *Sadat,* 615 F.2d at

1187-1188. This lost right to cross-examine could potentially be of great significance to a full

assessment of 28 U.S.C. §1332(a)(2) and (3), for example, because foreign nationals from the same

country can be both plaintiff and defendant without defeating diversity. *See, Tango Music, LLC v.*

*Deadquick Music, Inc.*, 348 F.3d 244, 245-247 (7th Cir. 2003)[3]

This case involves a Defendant American City which should not be deprived of the

constitutional and statutory rights available to it in a federal forum without a clear basis in the

holdings of the Supreme Court or the Seventh Circuit Court of Appeals.  It likewise defies logic that

a partnership which employs over 1400 lawyers in Fifteen (15) Cities in Nine (9) States can declare

itself "stateless" because it has one or two partners domiciled abroad, when the applicable law states

that a partnership is a Citizen of _each_ State where one of its partners is domiciled. *Carden*, 494 U.S.

at 187, *Camico Mut. Ins. Co.*, 474 F.3d at 992, and *Commonwealth Ins. Co.*, 398 F.3d at 881, n. 1.

This Court should be governed in its decision by the plain language of Article III, Sec. 2 and 28

U.S.C. §1332(a)(1), coupled with the holdings in *Carden*, *Camico Mut. Ins. Co.* and *Commonwealth*

---

[3]Morgan Lewis' theory also should be rejected because it has refused to produce its partnership agreement. This agreement not only establishes who its partners are, but also likely would demonstrate that its partners have agreed that they no individual right of action to collect fees. (See East Chicago's Motion To Compel and supporting Brief, generally.)

*Ins. Co.* that a partnership is a citizen of each and every State in which one of its partners is domiciled, rather than by a district court judge in another Circuit who reached an ill-reasoned conclusion to the contrary. [DE15, pp. 4-5][4]

## C. Morgan Lewis Has Failed To Meet Its Burden Of Proof.

Wholly separate from the legal deficiency of its motion, Morgan Lewis has failed to meet its burden to prove as a factual matter that Mr. Lubar and Ms. Yano are not longer domiciled in one of the fifty (50) States. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 288, (3rd Cir. 2006). Citizenship is synonymous with domicile, which is defined as a person's "true, fixed, and permanent home and place of habitation." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973). In *Vlandis*, the Supreme Court also recognized that determination of a person's domicile is a highly fact sensitive inquiry:

> [E]ach individual case must be decided on its own particular facts. In reviewing a claim, relevant criteria include year-round residence, voter registration, place of filing tax returns, property ownership, driver's license, car registration, marital status, vacation employment, etc.

*Id.,* (citing to an Opinion of the Attorney General of the State of Connecticut). Because admissible evidence of Mr. Lubar's and Ms. Yano's alleged new domicile abroad is lacking or at best equivocal, Morgan Lewis has failed to overcome the presumption that they are Citizens of one of the fifty (50) States.

---

[4]While *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68-69 (2nd Cir. 1990) is not a district court opinion, *Cresswell* further demonstrates the problem described by Justice Scalia in *Heller*. The issue of the court's subject matter jurisdiction was first raised during oral argument by the court itself. As the basis for its holding, the court noted that three individual plaintiffs were U.S. Citizens domiciled abroad. When the plaintiff suggested that these three parties could be dismissed to address the court's holding, the defendant partnership then asserted that several of its partners were domiciled abroad and the plaintiffs did not contest the issue further at that point.

First, the Plaintiff has yet to provide an affidavit or declaration from Mr. Lubar or Ms. Yano establishing that they are partners of Morgan Lewis who are domiciled abroad.[5]  East Chicago's Request For Production No. 6 asked that Morgan Lewis provide "[a]ll partnership agreements which form the basis for Plaintiff's claims that Mr. Lubar and Ms. Yano are partners of Morgan Lewis." Morgan Lewis has refused to produce the very contractual agreement which forms the only basis by which either Mr. Lubar or Ms. Yano can be considered a partner in the first place. (See attached Exhibit C, Morgan Lewis Production Response No. 6, and East Chicago's Motion To Compel and supporting Brief, generally.) Where Mr. Lubar and Ms. Yano's only relevance to this matter is based on the assertion that they are Morgan Lewis partners, East Chicago should be entitled to inspect whatever agreement confers this status upon each individual.  This is particularly true where Morgan Lewis refuses to present an affidavit from Mr. Lubar and Ms. Yano, nor will it allow East Chicago to depose either person.

Documents provided among Morgan Lewis' production request responses make this issue particularly important.  According to produced document no. ML 38, Mr. Lubar's identification card shows he was born in 1941, and is therefore 67 years old.  (See Exhibit D, Restricted And Sealed Document: documents produced by Morgan Lewis, ML 38.)  Many law firm's partnership agreements include a mandatory retirement age, and many firms require a partners to transition from "partner" to "of counsel" at a particular age.  At this point, there is no way for Defendant to confirm via the only relevant document whether Mr. Lubar was in fact a partner on May 12, 2008, and East

---

[5]Even the Iowa District Court case Plaintiff relied on permitted direct inquiry of the "stateless" partner himself. *Thompson v. Deloitte & Touche LLP*, 503 F.Supp.2d 1118 (S.D. Iowa 2007), ("Specifically, Cochrane declares that he has 'at all times from April 1996 to the present. . . lived and worked in Asia' and presently intends to 'continue living and working in Asia indefinitely. . .'").

Chicago is not obligated in such a fact-sensitive adversarial process to accept Morgan Lewis' representations in this regard at face value. Moreover, document ML 48 shows Mr. Lubar actually was in New York on May 11, 2008, where he has maintained a residence for many years. (See Exhibit D, ML 48, 90-91, 101-102, 145, 147). Also, several documents show Mr. Lubar was in New York several times by May of 2008. (See Exhibit D, ML 48, 51, 53, 54, 61.) An approaching retirement date may be of great relevance to Mr. Lubar's intended place of domicile as of May 12, 2008, particularly given his repeated presence in New York; and East Chicago has been denied not only the partnership agreement, but Mr. Lubar's deposition, as well. With respect to the materials provided regarding Ms. Yano, her U.S. income tax form lists her work address as her home address, providing that it should be mailed "c/o Morgan, Lewis & Bockius, LLP," rather than to any home address in Japan. (See attached Exhibit D, ML 117.) Morgan Lewis initially did not identify her as a U.S. Citizen domiciled abroad. (See attached Exhibit E, Mr. Horvath's May 29, 2008 correspondence.)

Neither Mr. Lubar nor Ms. Yano have provided an Affidavit to assert their intent as of May 12, 2008, which would have been a simple task were it indisputable that they are domiciled abroad. Instead, Morgan Lewis relies upon a surrogate, one of the partnership's own lawyers, Ms. Clare D'Agostino. [DE15, Exhibit A, ¶1] Ms. D'Agostino does not have personal knowledge as to Mr. Lubar's and Ms. Yano's domicile other than through rank hearsay. (See attached Exhibit A, pp. 68-74, 81.) *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998), (testimony is inadmissible due to a lack of foundation where it concerns matters not within a witness' personal knowledge.) Personal knowledge of such facts would require Ms. D'Agostino to know the private intentions and beliefs of third parties, which is impossible. The Seventh Circuit has noted that a person's intent is

11

highly relevant to determining his or her domicile, and "intent is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980). D'Agostino can only claim knowledge of Mr. Lubar's and Ms. Yano's private thoughts and intentions via hearsay and she cannot offer opinions as to the state of mind or credibility of another. Fed.R.Evid. 801-802; *U.S. v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005), (holding that a lawyer's affidavit containing statements of his client, being hearsay, was not evidence at all because judicial consideration of affidavits is limited to what would be admissible if made on the stand); *Robinson Engineering Co. Pension Plan and Trust v. George*, 223 F.3d 445, 451-452 (7th Cir. 2000). *See, also, U.S. v. Benson*, 941 F.2d 598, 604-605 (7th Cir. 1991); *U.S. v. Ricketts*, 146 F.3d 492, 496-497 (7th Cir. 1998); *Schultz v. Thomas*, 832 F.2d 108, 109-111 (7th Cir. 1987). *Klein v. Vanek*, 86 F.Supp.2d 812, 818-819 (N.D. Ill. 2000). Moreover, Morgan Lewis has failed to produce or has spoliated any evidence from Mr. Lubar and Ms. Yano in response to Ms. D'Agostino's inquiries as to their intended places of domicile. (See East Chicago's Motion To Strike and Motion To Compel and its respective supporting Briefs, generally.) The only appropriate persons to address the question of their place of domicile as of May 12, 2008 are Mr. Lubar and Ms. Yano themselves. Without such evidence, Morgan Lewis' motion is unsupported, or at best fails to overcome the presumption that Mr. Lubar and Ms. Yano remain domiciled in one of the fifty (50) States.

### D.  There Is No Basis For Granting Morgan Lewis' Request For Fees.

Morgan Lewis misstates the standard for awarding attorney fees upon remand. ("Where a case is wrongfully removed, and the removing party is made aware of the operative facts and law that compel returning the case to state court, an award of attorney's fees for bringing the motion is

appropriate.") [DE 15-1, p.8] To the contrary, the Supreme Court has held that, absent unusual circumstances, attorney fees may be awarded only where the removing party lacks an objectively reasonable basis for seeking the removal at the time a notice of removal is filed. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005); 28 U.S.C. § 1447(c); *see, also, Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007), (holding that the district court erred in granting the plaintiff attorney fees and costs where the defendant had an objectively reasonable basis for seeking removal to federal court.) Apart from the fact that there is no basis for remand, Morgan Lewis has admitted that East Chicago had an objectively reasonable basis for seeking removal as of May 12, 2008. (See Exhibit E, "Mr. Lubar's status as a U.S. citizen domiciled abroad is a jurisdictional nuance specific to Morgan Lewis that *you could not reasonably have foreseen*." *(Emphasis added.)* See, also, Sections I. & II. of this Response Brief.) There is no basis for awarding attorneys fees to Morgan Lewis.

## IV.  CONCLUSION

The undisputed evidence demonstrates that East Chicago is diverse from Morgan Lewis, and Morgan Lewis' Motion To Remand should be denied as a result.  East Chicago is a Citizen of the State of Indiana and Morgan Lewis is a Citizen of at least nine (9) different States which do not include the State of Indiana. Morgan Lewis' sole contention in support of remand, that diversity is defeated by two alleged U.S. partners domiciled abroad, is not supported by the holding of any Supreme Court or Seventh Circuit case.  To the contrary, it runs afoul of the plain language of Article III, Sec. 2 of the United States Constitution and 28 U.S.C. §1332(a)(1), coupled with the holdings in *Carden*, *Camico Mut. Ins. Co.* and *Commonwealth Ins. Co.* that a partnership is a Citizen of each and every State in which one of its partners is domiciled.

Morgan Lewis' motion also is unsupported with admissible evidence in support of its theory, or at best it fails to overcome the presumption that Mr. Lubar and Ms. Yano remain domiciled within one of the fifty (50) States. Morgan Lewis has refused to produce Affidavits from Mr. Lubar and/ or Ms. Yano regarding their domicile or citizenship.  Moreover, the only evidence which Morgan Lewis has offered as to the intent of Mr. Lubar and Ms. Yano is inadmissible hearsay, and it has refused to produce relevant discovery and spoliated other relevant discovery/possible evidence. Morgan Lewis' motion should be denied for these reasons, as well.

WHEREFORE, the Defendant, City of East Chicago, respectfully requests that the Court enter an order which denies the Motion To Remand of the Plaintiff, Morgan Lewis Bockius, LLP.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: s/Robert J. Feldt
　　　One of the attorneys for the Defendant,
　　　City of East Chicago

David C. Jensen
Robert J. Feldt
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46325
219-931-0560

14

## <u>CERTIFICATE OF SERVICE</u>

I, Robert J. Feldt, hereby certify that on the __10th__ day of July, 2008, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

F. Thomas Hecht
Tina B. Solis
UNGARETTI & HARRIS
3500 Three First National Plaza
Chicago, IL 60602
fthecht@uhlaw.com
tbsolis@uhlaw.com


 s/Robert J. Feldt                
Robert J. Feldt

**EXHIBIT A TO THE JULY 10, 2008
RESPONSE IN OPPOSITION TO
THE PLAINTIFF'S
MOTION TO REMAND
OF THE DEFENDANT,
CITY OF EAST CHICAGO**

1         IN THE DISTRICT COURT OF THE UNITED STATES

           FOR THE NORTHERN DISTRICT OF ILLINOIS

2               EASTERN DIVISION

3

   MORGAN, LEWIS & BOCKIUS LLP,     )

4                       )

           Plaintiff,     )

5                       )

       -vs-             ) No. 08 CV 2748

6                       )

   CITY OF EAST CHICAGO,      )

7                       )

           Defendant.     )

8

9

10      Deposition of CLARE D'AGOSTINO via telephone, taken

11 before DONNA L. POLICICCHIO, C.S.R., and Notary Public,

12 pursuant to the Federal Rules of Civil Procedure for the

13 United States District Courts pertaining to the taking of

14 depositions, at 200 Russell Street, Eighth Floor,

15 Hammond, Indiana, commencing at 1:02 p.m., on the 3rd day

16 of July, 2008.

17

18

19

20

21

22

23

24

DEFENDANT'S
EXHIBIT
A

Clare D'Agostino    July 3, 2008

Page 9

1    are marked 1 through 4 as well as a copy of the

2    notice and the subpoena?

3         A    I do.

4         Q    Okay.  I'm going to ask you for the time

5    being to set them aside because there are certain

6    things I'm going to ask you to try to find out

7    whether you know or don't know based upon not

8    referring to documents.  So can you do so, please?

9         A    Sure.

10        Q    Have you brought any documents with you other

11   than those four exhibits and the notice and the

12   subpoena?

13        A    I have not.

14        Q    Okay.  Go ahead then and tell me where you

15   work.

16        A    Where I work?

17        Q    Who do you work for?

18        A    I work for Morgan, Lewis & Bockius LLP.

19        Q    Okay.  And that's a limited liability

20   partnership?

21        A    It is.

22        Q    Is that a Pennsylvania limited liability

23   partnership?

24        A    It is.

Clare D'Agostino    July 3, 2008

Page 10

 1      Q     And where is the location where you work for

 2   Morgan, Lewis & Bockius?

 3      A     In Philadelphia, Pennsylvania.

 4      Q     Where do you live?

 5      A     In Philadelphia, Pennsylvania.

 6      Q     Are you a domicile of the State of

 7   Pennsylvania?

 8      A     I am.

 9      Q     How long have you lived there?

10      A     I have lived in Pennsylvania for more than

11   20 years.

12      Q     Okay.  Do you have any intention of leaving

13   your current place of domicile?

14      A     I do not.

15      Q     How long have you worked for Morgan, Lewis &

16   Bockius?

17      A     23 years.

18      Q     Could you start at the beginning and give me

19   the inclusive dates of employment and the title, if

20   any, that you held over those 23 years?

21      A     I joined Morgan, Lewis & Bockius in

22   October 1985, and I was a general administrator based

23   in the Philadelphia office with certain firm-wide

24   responsibilities.  Relatively quickly I was promoted

1  become assistant counsel to the firm, it was actually

2  called assistant to the firm managing partner,

3  because at that point the person who led the firm,

4  the title was firm managing partner.  Today it

5  happens to be firm chair in the reorganization that

6  we undertook some ten years ago probably at this

7  point.  And I began assisting the firm managing

8  partner with a variety of issues affecting the firm,

9  legal type issues, but primarily my responsibilities

10 were in the area of risk management, particularly

11 with regards to new business intake, and I continued

12 my responsibilities working very closely with lateral

13 partners.

14        Over the years as the firm has grown and my

15 experience level has grown, I have undertaken more

16 responsibilities.  I assist with many contractual

17 issues where the firm is contracting to acquire goods

18 or services other than in the area of real estate

19 where our real estate specialists take care of that.

20 And I continue to be involved with risk management,

21 conflicts of interest issues, assisting our partners

22 in resolving those issues, sometimes working directly

23 with clients on those issues, and generally assisting

24 the partnership in the area of professional

Clare D'Agostino    July 3, 2008

Page 14

1    responsibility and also fiduciary review.

2        Q    Okay.  Are you a U.S. citizen?

3        A    I am.

4        Q    Born here or naturalized?

5        A    Naturalized.

6        Q    When was that?

7        A    July 2000.

8        Q    All right.  Can you tell me when you started

9    to go to law school?

10       A    I started in August of 1989.

11       Q    Okay.  And when did you complete law school?

12       MR. SOLIS:  I'm sorry there, Mr. Feldt.  You cut

13   out.  If you could repeat that question.

14   BY MR. FELDT:

15       Q    When did you complete law school?

16       A    I completed law school December of 1992.

17       Q    Where did you go to law school?

18       A    Temple University School of Law in

19   Philadelphia.

20       Q    And you obtained a Juris Doctorate?

21       A    I did.

22       Q    And can you briefly summarize your college

23   education prior to that time?

24       A    I obtained a bachelor degree from the

Page 18

1    Morgan Lewis has removed the case from a state court

2    to a federal court based upon diversity of

3    citizenship?

4        MS. SOLIS:  Objection.  I think based on her

5    previous answer that would call for speculation, and,

6    boy, for her to know that with a worldwide firm I

7    think would be difficult.  But, Clare, the best you

8    can.

9        MR. FELDT:  Well, she either knows it or doesn't

10   know and that's all I'm asking.

11       A    I am aware of the Swiger case.

12   BY MR. FELDT:

13       Q    Any case other than Swiger?

14       A    I am not so aware.

15       Q    All right.  Are there -- Well, are you a

16   partner?

17       A    I am not.

18       Q    Are there partners of Morgan Lewis who are

19   domiciled in Pennsylvania?

20       A    There are.

21       Q    My understanding is from your website that

22   there is approximately 1,400 total lawyers in the

23   various offices of Morgan Lewis.

24              Can you confirm that?

Clare D'Agostino    July 3, 2008

Page 19

1        A    I can.

2        Q    Is that a true statement?

3        A    It is a true statement.

4        Q    Do you know how many partners Morgan Lewis

5    has?

6        A    As of July 1, I know the number that Morgan

7    Lewis has.

8        Q    And that number is what?

9        A    466.

10        Q    Okay.  Do you know out of the 466 how many

11    are U.S. citizens?

12        A    The precise number, no.

13        Q    Okay.  Do you have a range in mind?

14        A    I do.

15        Q    And what would that range be?

16        A    Approximately 450.

17        Q    Other than Mr. Charles Lubar and Ms. Lisa

18    Yano, are you aware of any other U.S. citizens who

19    are partners with Morgan Lewis who Morgan Lewis

20    claims to be domiciled outside the 50 United States?

21        MS. SOLIS:  Objection.  What time frame?  She's

22    held this position for quite some time.

23        MR. FELDT:  All right.  That's a fair comment.

24

Clare D'Agostino    July 3, 2008

Page 20

1    BY MR. FELDT:

2        Q    Let's say in the month of -- starting from

3    May 1st to May 12th of 2008.

4        A    I am aware of partners who are U.S. citizens

5    who are residing outside of the United States.

6        Q    Are there any others for that time period

7    besides Mr. Lubar and Ms. Yano?

8        A    There are.

9        Q    You used the word reside.  Do you know of any

10   of those other people who you have referenced as U.S.

11   citizens who reside outside the United States who are

12   domiciled outside the United States?

13       A    I would need clarification on your use of

14   resident and domicile.

15       Q    Well, you used the word resident.  How did

16   you mean it?

17       A    I meant resident as in living outside of the

18   United States.  When your question came back, you

19   said domicile.

20       Q    Correct.

21       A    So I'm aware of partners other than Mr. Lubar

22   and Ms. Yano who were residing outside of the United

23   States.

24       Q    Who are U.S. citizens?

Clare D'Agostino     July 3, 2008

Page 21

1        A     Who are U.S. citizens.

2        Q     How many people are we talking about?

3        A     Two of which I am aware.

4        Q     And they are who?

5        A     They are Mr. Gregory Salathe, S-A-L-A-T-H-E,

6     and Mr. Robert Hollingshead.

7        Q     Hollingshead, H-E-A-D?

8        A     H-O-L-L-I-N-G-S-H-E-A-D.

9        MR. FELDT:  All right.  I guess this is a

10    question for Tina and Seth.  These are new people not

11    previously disclosed.  Are you guys relying upon

12    them?

13        MS. SOLIS:  For purposes of our motion?

14        MR. FELDT:  Yeah.

15        MS. SOLIS:  We don't need to.  We only need one

16    individual, and Mr. Lubar and Ms. Yano more than

17    satisfy it, so no.

18        MR. FELDT:  Well, I'm not going to waste her time

19    or yours then in light of that.  Should it come up in

20    the future, I reserve my right to come back and

21    requestion.  Okay.

22        MS. SOLIS:  Well, wait a minute.  When you say

23    reserve your right to come back -- and did you say

24    request or requestion?  I'm sorry.

1      MR. FELDT:  I said requestion.  I'm not going to

2  ask her about people who are not at issue in the

3  motion as U.S. citizens domiciled or residing abroad

4  if they're not going to be raised.

5      MS. SOLIS:  That's fine.

6      MR. FELDT:  And all I'm saying is if you change

7  your mind and decide to assert them, you know, I

8  think I have the right to come back and ask the

9  questions.

10      MS. SOLIS:  We understand that request,

11  Mr. Feldt.  We are just relying on Mr. Lubar and

12  Ms. Yano for purposes of our motion.

13      MR. FELDT:  Okay.

14  BY MR. FELDT:

15      Q   I'm just going to run through some other

16  states then, Ms. D'Agostino, where I understand that

17  Morgan Lewis has offices.

18          So my first question is, does Morgan Lewis

19  have offices in Texas?

20      A   Yes.

21      Q   Does Morgan Lewis have partners who are

22  domiciled in the State of Texas?

23      A   Yes.

24      Q   Does Morgan Lewis have an office in

Page 23

```
 1   Massachusetts?
 2        A    Yes.
 3        Q    Does Morgan Lewis have partners who are
 4   domiciled in the State of Massachusetts?
 5        A    Yes.
 6        Q    Does Morgan Lewis have an office in Illinois?
 7        A    Yes.
 8        Q    Does Morgan Lewis have partners who are
 9   domiciled in the State of Illinois?
10        A    Yes.
11        Q    Does Morgan Lewis have offices in California?
12        A    Yes.
13        Q    Does Morgan Lewis have partners who are
14   domiciles of the State of California?
15        A    Yes.
16        Q    Does Morgan Lewis have an office in
17   Minnesota?
18        A    Yes.
19        Q    Does Morgan Lewis have partners who are
20   domiciles of the State of Minnesota?
21        A    Yes.
22        Q    Does Morgan Lewis have an office in Florida?
23        A    Yes.
24        Q    Does Morgan Lewis have partners who are
```

Clare D'Agostino    July 3, 2008

Page 24

1    domiciles of the State of Florida?

2        A    Yes.

3        Q    Does Morgan Lewis have an office in the State

4    of New York?

5        A    Yes.

6        Q    Does Morgan Lewis have partners who are

7    domiciled in the State of New York?

8        A    Yes.

9        Q    Does Morgan Lewis have an office in New

10   Jersey?

11       A    Yes.

12       Q    Does Morgan Lewis have partners who are

13   domiciliaries of the State of New Jersey?

14       A    Yes.

15       Q    Thank you for bearing with me there.

16            Of the total number of partners that you

17   estimated to be 466 as of July 1st, are 462 -- let me

18   start that over.

19            How many of the 466, if you know, are U.S.

20   citizens?

21       MS. SOLIS:  Objection.  Asked and answered.

22       MR. FELDT:  I don't think so.  Are you directing

23   her not to answer?

24       MS. SOLIS:  I'm just making my objection.  She

Clare D'Agostino   July 3, 2008

Page 25

```
 1    can go ahead.  I think the question has already been

 2    asked and answered, but she's welcome to answer it

 3    again.

 4         A    You previously asked me to make a statement,

 5    and I made an estimate of 450 being U.S. citizens.

 6    BY MR. FELDT:

 7         Q    Okay.  Does that mean then 436 of the 450 are

 8    U.S. citizens who are domiciled within one of the 50

 9    United States?

10         A    It does.

11         Q    Are there other people who serve in the same

12    position as you to the partnership?

13         A    There is not.

14         Q    Do you have one superior?

15         A    Yes.

16         Q    And that would be --

17         A    That would be the general counsel to the firm.

18         Q    And who is that?

19         A    The person's name is Michael, M-I-C-H-A-E-L,

20    Bloom, B-L-O-O-M.

21         Q    How does a person become a partner with

22    Morgan Lewis?

23         MS. SOLIS:  Objection.  I think that's a little

24    vague, but go ahead, Clare, if you know.
```

Page 26

1      A    There are two typical ways of becoming a

2   partner at Morgan Lewis, either to join sometime in

3   the associate years, either directly out of law

4   school or the first year -- as a first-year

5   associate, or to lateral in with some sort of

6   experience, and then after a number of years, and

7   it's greatly divergent as to how many years that will

8   be, an associate may be proposed for partnership or

9   in the interim the person might be promoted to

10  typically an of-counsel position and perhaps promoted

11  from there.  Alternatively, a person may become a

12  partner by joining the firm by lateraling in and

13  being admitted to the partnership immediately.

14  BY MR. FELDT:

15      Q    Okay.  When someone is either lateraled in or

16  asked to join the partnership, is signing a

17  partnership agreement a prerequisite for being

18  considered to be a Morgan Lewis partner?

19      A    As a part of the process, a lateral partner,

20  when an offer is extended, they will be asked to sign

21  our partnership agreement.

22      Q    Okay.  And what about someone who is an

23  associate who is asked to join the firm, do they also

24  have to a sign partnership agreement?

Clare D'Agostino    July 3, 2008

Page 27

```
 1      A    They do.

 2      Q    Can anyone be a partner at Morgan Lewis

 3  without signing a partnership agreement?

 4      A    They cannot.

 5      Q    I'm not asking for privileged information

 6  here.  All I want to know is whether you understand

 7  what kind of suit this lawsuit by Morgan Lewis

 8  against the City of East Chicago is.

 9           Do you know the kind of claim that's raised

10  in this lawsuit?

11      A    I do, very basically.

12      Q    And that's all I'm interested in.

13           Do you basically understand it's an action

14  in order to collect attorneys' fees allegedly earned

15  by Morgan Lewis to be allegedly paid by the City of

16  East Chicago?

17      A    I so understand, yes.

18      Q    All right.  Can an individual partner bring

19  this kind of collection suit or does this right of

20  action belong only to the partnership as a

21  collective?

22      MS. SOLIS:  Objection.  That calls for a legal

23  conclusion.  She has testified that she is not

24  involved in any litigation matters, and I think that
```

Clare D'Agostino    July 3, 2008

Page 28

1   goes beyond her testimony here today as a fact

2   witness despite the fact that she has a J.D.

3       MR. FELDT:  Okay.

4   BY MR. FELDT:

5       Q   Do you have an understanding of the terms of

6   the partnership agreement which Mr. Lubar would have

7   signed and been a part of and Ms. Yano would have

8   signed and been a part of, say, beginning in 2004

9   going up to the present?

10      MS. SOLIS:  Objection.  Clare, I don't want you

11  to divulge any substantive knowledge about the

12  partnership agreement, but I believe you can answer

13  that question with a yes or no.

14      A   I would like to hear the question again.

15  BY MR. FELDT:

16      Q   Do you know the terms of the partnership

17  agreement to which Mr. Lubar and Ms. Yano would have

18  been a party with Morgan, Lewis & Bockius LLP in

19  effect from the years 2004 to the present?

20      A   I do.

21      Q   I'll ask the question again.  I know you're

22  going to object, Tina, but I just want to get it on

23  the record again.

24          Do the partnership agreements to which

Page 29

 1    Mr. Lubar and Ms. Yano that they were parties to with
 2    Morgan, Lewis & Bockius LLP from 2004 to the present
 3    allow them to sue individually for the fees allegedly
 4    earned by Morgan, Lewis & Bockius to be paid by the
 5    City of East Chicago or does that right exist in the
 6    partnership agreement only as a collective right of
 7    the partnership itself?
 8        MS. SOLIS:  Same objection as before.  I think
 9    this goes beyond her testimony as a fact witness here
10    today.  She's not called as an expert.  She is not a
11    practicing lawyer nor does she have involvement with
12    this lawsuit from an attorney perspective, so I'm
13    going to instruct her not to answer that question.
14        MR. FELDT:  All right.  Okay.  I'll move on then.
15        MS. SOLIS:  Not to mention I think it calls for a
16    legal conclusion too, but I'll let that one go.
17        MR. FELDT:  Well, I'd be happy to look at the
18    document.
19        MS. SOLIS:  I know you would, Rob, but we don't
20    want you to do that.
21        MR. FELDT:  I know.
22    BY MR. FELDT:
23        Q    Let me talk to you a little bit then about
24    Charles Lubar.

Clare D'Agostino    July 3, 2008

Page 30

1          Do you know Mr. Lubar?

2     A    I do.

3     Q    Have you met him?

4     MS. SOLIS:  I'm sorry, Rob.  You cut out there.

5  Can you repeat that question?

6  BY MR. FELDT:

7     Q    Have you met Mr. Lubar?

8     A    I have.

9     Q    How many times?

10    A    I wouldn't want to hazard a guess at that.

11  I've seen him many, many times.

12    Q    All right.  Is he a friend?

13    A    He is a colleague.

14    Q    What would be the circumstances of the times

15  that you've seen him?

16    A    I have seen him in the Philadelphia office

17  when he has been visiting.  He has frequently come

18  and spoken to me in my office.  Perhaps those

19  conversations were of a social nature, but he was

20  here working.  I have seen him at different types of

21  firm events.  I have also seen him frequently in our

22  offices in London.

23    Q    How many times have you been to the London

24  office?

Clare D'Agostino   July 3, 2008

Page 31

1       A    Multiple, multiple times.

2       Q    When is the last time that you saw Mr. Lubar?

3       A    The last time I saw him in person was at a

4    farewell gathering in our London office for a

5    colleague who was leaving the firm, and it was

6    sometime late 2006 in the winter months.

7       Q    Did you speak to Mr. Lubar at that time?

8       A    I did.

9       Q    What did you talk about?

10      A    All sorts of different things.  It was a

11   social event.  It was the farewell of a long-standing

12   employee of the firm.  We talked about how long we

13   both had known this particular lady.  We talked about

14   him being in London and me happening to be in London

15   when this event was going on.  It was a social event.

16      Q    Prior to that time, when is the most recent

17   time that you saw Mr. Lubar?

18      A    I saw him before that probably in the

19   Philadelphia office, but I wouldn't like to hazard a

20   guess as to when it was compared to the party that I

21   saw him at.

22      Q    Is there any way you can pin it down to a

23   year?

24      A    Oh, it would have been the same year.

Page 32

```
 1       Q    Do you remember what you discussed at that

 2   point?

 3       A    I do not.

 4       Q    How about the most recent time before that

 5   that you saw Mr. Lubar?

 6       A    The most recent time -- no, I couldn't guess.

 7       Q    Is there any particular time that you saw

 8   Mr. Lubar that you can perhaps associate it with an

 9   event as opposed to a year like this farewell

10   gathering that we haven't already talked about?

11       A    No, I don't think so.

12       Q    Have you been to Mr. Lubar's apartment in

13   London?

14       A    I have not.

15       Q    How about his apartment in New York?

16       A    I have not.

17       Q    Do you know if he owns any property besides

18   his apartment in London or his apartment in New York?

19       A    I do not know.

20       Q    Do you know if he's married?

21       A    I do.

22       Q    Is he married?

23       A    He is.

24       Q    What's his wife's name?
```

Clare D'Agostino   July 3, 2008

Page 33

1    A    Dominique.

2    Q    Have you met his wife?

3    A    I have not.

4    Q    Does he have children?

5    A    He does.

6    Q    How many and their names, if you know?

7    A    I do not know.

8    Q    Do you know where Dominique lives?

9    A    I do not.

10   Q    Do you know where his children live?

11   A    I do not.

12   Q    Do you know relative to any other location

13   how much time Mr. Lubar over the past, say, two years

14   has been in London versus some other location?

15   MS. SOLIS:  Objection.  Vague.  You can go ahead

16   and answer, Clare.

17   A    It would be impossible for me to answer

18   whether Mr. Lubar is in London, some other European

19   country, some of the Asian countries, or in the

20   United States and to come up with a percentage of

21   where he is during any given period of time.

22   BY MR. FELDT:

23   Q    That's kind of what I was getting at.

24        In your role do you become familiar with or

Page 34

```
 1   have access to his travel schedule?

 2        A    I do not.

 3        Q    Do you know how many times he's been in the

 4   United States in the year 2008?

 5        A    I do not.

 6        Q    Do you know where he was on the day that City

 7   of East Chicago filed its notice of removal May 12th,

 8   2008?

 9        A    I do not.

10        Q    Do you know anything about where he keeps his

11   bank accounts?

12        A    I have certain information from the various

13   documents that were produced and which were shared

14   with me showing where certain accounts are, so yes.

15        Q    In your normal activities in your job, would

16   you have reason to see those documents or is the only

17   reason you saw them because we asked for certain

18   discovery in this litigation?

19        A    That is correct, the latter.

20        Q    The latter?

21        A    The latter.

22        Q    Have you ever -- Well, let me back up just a

23   second.

24             Does Morgan Lewis have a mandatory
```

Page 35

1   retirement age?

2        A    I cannot answer that question.

3        Q    Does that mean that you don't know or there

4   is some reason that you feel compelled not to answer?

5        MS. SOLIS:  I'm just going to interpose an

6   objection here.  Clare, if you think that it's going

7   to violate some sort of confidential or privileged

8   information, maybe we need to take a break.

9        THE WITNESS:  I think we should take a break.

10       MS. SOLIS:  Rob, can we -- I don't know how you

11   want to do this.

12       MR. FELDT:  Can you call her on a separate phone?

13       MS. SOLIS:  Okay.  We will -- We're going to keep

14   it on this line and then we're going to go to a

15   separate office.  Clare, do you have an empty office

16   close to you?

17       THE WITNESS:  I can put this on hold and you can

18   call my cell phone.

19       MS. SOLIS:  Okay.  All right.  Why don't you give

20   me that number and we'll go do that.

21       THE WITNESS:  267 --

22       MS. SOLIS:  267.

23       THE WITNESS:  303 --

24       MS. SOLIS:  303.

Page 36

1          THE WITNESS:  -- 3392.

2          MS. SOLIS:  3392.  We will call you momentarily.

3          THE WITNESS:  Okay.  I'll put this on hold.

4          MS. SOLIS:  We'll be right back, Mr. Feldt.

5          MR. FELDT:  All right.

6                (Recess was taken.)

7          MS. SOLIS:  So the record is clear, Rob, you can

8     go ahead and ask the question again and we'll make a

9     clear record on this.

10         MR. FELDT:  Okay.

11    BY MR. FELDT:

12         Q   Does Morgan Lewis have a mandatory retirement

13    age for attorneys?

14         MS. SOLIS:  And I'm going to object to that

15    question.  I think we're getting pretty far afield

16    for the purposes on which we're here today in which

17    Judge Pallmeyer ordered the affiant's deposition.  I

18    don't know what this has to do with citizenship or

19    what it has to do with the motion to remand, so I'm

20    not only objecting on that basis, but I'm going to

21    object on the fact that I think it would require us

22    to disclose some confidential information.  I'm going

23    to instruct the witness not to answer that one.

24         MR. FELDT:  All right.  Well, as far as the

Page 37

1   relevance, it certainly goes to his intent of

2   maintaining a domicile if he's nearing retirement,

3   and obviously I'm not getting to ask him that

4   question because you've objected to producing him.  I

5   shouldn't have to explain the relevance because

6   relevance is not a basis for directing a witness not

7   to answer, and if it's confidential information, we

8   certainly can agree that the testimony is subject to

9   the confidentiality order that's already in place.

10      MS. SOLIS:  Well, I think there is an easier way

11  to get your answer.  Why don't you just ask Clare

12  that direct question.  I mean, if that's what you're

13  looking for is if he has an intent to move when he

14  retires, I don't know, maybe she knows that.  Why

15  don't you just ask the direct question.

16      MR. FELDT:  Well, I can, and I can ask the other

17  question as well, but I'll ask her that question if

18  you're telling me that you're going to stand on your

19  objections.

20      MS. SOLIS:  We're going to stand on our objection

21  on that one.

22      MR. FELDT:  All right.

23  BY MR. FELDT:

24      Q   All right.  To come back to Mr. Lubar,

Clare D'Agostino    July 3, 2008

Page 38

1    Ms. D'Agostino, do you know anything about where he

2    was born or grew up?

3        A    I do.

4        Q    Where?

5        A    He was born in Washington D.C.

6        Q    Did he grow up there as well?

7        A    I don't know that.

8        Q    Do you know if he has extended family

9    somewhere in the United States, brothers, sisters,

10   aunts, uncles?

11       A    I do not know.

12       Q    All right.  Do you know if his family has a

13   family home or estate or farm or anything like that

14   in the U.S.?

15       A    I do not know.

16       Q    Apart from his apartment in New York, do you

17   know if his family owns any other property in the

18   United States?

19       A    I do not.

20       Q    Have you ever discussed with Mr. Lubar what

21   he intends to do as far as retirement goes?

22       A    I have not.

23       Q    Have you ever discussed with Mr. Lubar where

24   he intended to live as of May 11th, 2008?

Page 39

1      A    Very recently thereafter, yes.

2      Q    Prior to May 12th, 2008, had you ever

3   discussed with Mr. Lubar where he intended to remain

4   living as a private residence for any particular

5   period of time?

6      MS. SOLIS:  Objection.  Go ahead, Clare.

7      A    I have discussed with Mr. Lubar and he had

8   shared with me his intent not to leave the United

9   Kingdom.

10  BY MR. FELDT:

11     Q    When was that discussion?

12     A    The most recent discussion was in preparation

13  for my declaration.

14     Q    Okay.  My question was, before May 12th,

15  2008, had you ever had such a discussion with

16  Mr. Lubar?

17     A    Yes.

18     Q    When was that discussion?

19     A    It was in preparation for another

20  declaration, and I cannot give you the specific

21  months and year off the top of my head.

22     Q    Was that for the Swiger matter?

23     A    It was.

24     Q    Apart from speaking to Mr. Lubar in preparing

 1    a declaration for litigation purposes, have you ever

 2    talked with Mr. Lubar about where he intended to

 3    live?

 4        MS. SOLIS:  Objection.  Go ahead, Clare.

 5        A    No.

 6    BY MR. FELDT:

 7        Q    Have you obtained any information about

 8    Mr. Lubar's intent as to where he was going to live

 9    other than in speaking to him in these two

10    conversations you've described?

11        MS. SOLIS:  Objection.  Form.  You can go ahead

12    and answer, Clare.  I'm just making my objections for

13    the record.

14    BY MR. FELDT:

15        Q    Let me restate it since there is a form

16    objection.

17            Other than these two occasions for preparing

18    these declarations, do you have information from any

19    other source about Mr. Lubar's intent about where he

20    wished to live as his private residence?

21        A    No.

22        Q    In your declaration you indicated that he is

23    both a citizen of the United States and the United

24    Kingdom, is that correct?

Page 43

1    A    He has not.

2    Q    All right.  I'm going to change subjects to

3  Ms. Yano now.

4         Do you know Lisa Yano?

5    A    I do.

6    Q    How do you know her?

7    A    I know her as a partner of Morgan Lewis &

8  Bockius.  I have spoken with her on the telephone.  I

9  have exchanged e-mails and I have met her on one

10  occasion.

11    Q    When was the one occasion?

12    A    That occasion was after she became a partner

13  of the firm last year, she was visiting the

14  Philadelphia office, and she stopped by my office to

15  introduce herself.

16    Q    Had you had some contact with her before

17  then?

18    A    I had.

19    Q    What would the circumstances have been?

20    A    Her arrival as a partner in our Tokyo office.

21    Q    Was that an in-person meeting in Tokyo or

22  some sort of phone discussion?

23    A    For me it was a phone discussion.

24    Q    Did you have any contact with her before she

Page 45

1      MR. FELDT:  Certainly, certainly.  That's why I

2   wanted to clarify.

3      MS. SOLIS:  Go ahead, Clare.  I'm sorry to

4   interrupt.

5      THE WITNESS:  We spoke in person or we shared

6   e-mails about various business issues with regards to

7   the firm.  I specifically recollect an interaction

8   with regard to continuing legal education.  We also

9   have spoken about licensing, the licensing of lawyers

10  within the firm, and we have talked generally about

11  particular client relationships.

12  BY MR. FELDT:

13     Q   When you say licensing, you mean law license?

14     A   Yes.

15     Q   All right.  Do you know where Ms. Yano's law

16  license is held, what state or what country?

17     A   I do.

18     Q   In what state or country is she licensed to

19  practice law?

20     A   She's licensed in New York, California, and

21  she has a special legal license in Japan, which I

22  would hate to hesitate to pronounce, but I'm sure we

23  can pick it up off of her biography.

24     Q   All right.  How about Mr. Lubar?

1      A    Mr. Lubar is admitted in the State of

2    Maryland.  He is on an inactive status in the

3    District of Columbia.  The District of Columbia is

4    one jurisdiction where by paying a certain amount of

5    money you can keep your license in inactive status

6    and you can reactivate it by doing certain things.

7    He's also registered as a foreign lawyer in the

8    United Kingdom.

9      Q    Have either Ms. Yano or Mr. Lubar terminated

10   any law licenses?

11     MS. SOLIS:  Objection.  Form.  In terms of what

12   time?

13     MR. FELDT:  Any time ever.

14     MS. SOLIS:  Clare, you may go ahead and answer.

15     A    Mr. Lubar allowed his District of Columbia

16   license to go into inactive status.

17   BY MR. FELDT:

18     Q    I know.  My question was terminate.

19     A    I do not know the answer.

20     Q    In the various meeting or phone calls or

21   e-mails with Ms. Yano, have you ever discussed

22   anything about her personal life?

23     A    I have not.

24     Q    Do you know where she was born?

Clare D'Agostino    July 3, 2008

```
 1      A    I know the state but not the city.

 2      Q    What is the state?

 3      A    New Jersey.

 4      Q    Do you know where she grew up?

 5      A    I do not.

 6      Q    Do you know where she went to school?

 7      A    I know where she went to law school.

 8      Q    Which was --

 9      A    Yale.

10      Q    Do you know if she has any brothers or

11 sisters?

12      A    I do not.

13      Q    Do you know if her parents are alive?

14      A    I do not.

15      Q    Do you know if her family owns any property

16 in the United States?

17      A    I do not.

18      Q    Is she married?

19      A    I believe she is, yes.  To the best of my

20 knowledge, the answer is yes.

21      Q    Is that based upon reviewing a document or

22 because you've discussed it with her?

23      A    It's based upon legal directories that are

24 maintained within the firm where she has a spouse
```

Page 48

1    listed.

2        Q    All right.  How about children, do you know

3    if she has any children?

4        A    I do.

5        Q    How many children?

6        A    I believe she has two.

7        Q    Ages and names, if you know?

8        A    I do not know.

9        Q    Do you know where her children live?

10        A    I do.

11        Q    Where?

12        A    They live with her in Tokyo.

13        Q    And her husband?

14        A    I do not know.

15        Q    Do you know if she or her husband own any

16    property outside of Tokyo?

17        A    I do not.

18        Q    The building where she lives in Tokyo, do you

19    know what kind of building it is?  Is it an apartment

20    building, a home, a condominium?  Do you know

21    anything about it?

22        A    I do not know.

23        Q    Do you know if she owns or rents?

24        A    I do not know.

1      Q    Do you know how much time she spends in Japan

2    as opposed to traveling abroad?

3      A    I can't answer that question.

4      Q    As with Mr. Lubar, can I assume that you

5    don't have any purpose in your job in knowing her

6    travel itinerary?

7      A    That's correct.

8      Q    Would you know why on her tax return the home

9    address for Ms. Yano is listed as the Morgan, Lewis &

10    Bockius office in Tokyo?

11      A    I do not.

12      Q    Mr. Lubar's and Ms. Yano's business cards

13    have been produced to us.  Let me start with

14    Mr. Lubar's business card.  Does it have the address

15    for Morgan Lewis' London office on that business

16    card?

17      A    It does.

18      Q    Does it have any kind of a resident address

19    for Mr. Lubar?

20      A    It does not.

21      Q    If Mr. Lubar worked out of the London office

22    but lived in New York, would he still have Morgan

23    Lewis' London office listed on his business card?

24          MS. SOLIS:  Objection.  I think that calls for

Clare D'Agostino    July 3, 2008

Page 50

1    speculation, but, Clare, go ahead, if you can.

2        A    If any lawyer, Mr. Lubar as we're talking

3    about, is resident in a particular office of the

4    firm, Mr. Lubar for London, the person has business

5    cards with their resident office.

6    BY MR. FELDT:

7        Q    Okay.  You've used the term "resident office."

8    by that do you mean works out of that office?

9        A    I do.

10       Q    You don't mean physically living there?

11       A    No.

12       Q    So in Ms. Yano's case as well then, if she

13   lived in San Francisco but worked out of the Tokyo

14   office, she would still have the Tokyo office on her

15   business card?

16       A    She would.

17       Q    Do you know if Mr. Lubar pays real estate

18   taxes in the United Kingdom?

19       A    I do.

20       Q    Do you know if he pays real estate taxes in

21   the United States?

22       A    I do not.

23       Q    Do you know anything about Mr. Lubar's

24   apartment either in London or in New York, about his

Clare D'Agostino    July 3, 2008

Page 68

1    Ms. Yano is living in Tokyo in the way that I live in
2    Philadelphia, Pennsylvania.  I live here.  That's
3    what I meant.
4         Q    I'm just making a note to myself, so bear
5    with me.
6              Do you know how much time Mr. Lubar spends
7    in London in his private residence on a monthly
8    basis?
9         A    I believe that we've already discussed that
10   in a slightly different way and we concluded that I
11   do not have access to either Mr. Lubar or, if you're
12   going there, Ms. Yano's travel arrangements, so I
13   cannot answer that question.
14        Q    Okay.  I appreciate that.  I'm asking the
15   question in a specific form, so bear with me.
16             I'm going to ask you the same question with
17   regard to Mr. Lubar's apartment in New York.  Do you
18   know how much time Mr. Lubar spends in his apartment
19   in New York on a monthly basis?
20        A    Personally, I do not.
21        Q    In Paragraph 3 then, when you say
22   "Specifically, Charles G. Lubar is a partner resident
23   in our London office," does that mean that you
24   think -- or do you use that term to mean that he

Clare D'Agostino    July 3, 2008

Page 69

1    works out of the London office?

2        A    That is correct.  It is a term that we use

3    here when we talk about where partners -- anyone is

4    working, I would say they are resident in, Mr. Lubar,

5    the London office.  If someone was speaking about me,

6    they would say I am resident in the Philadelphia

7    office.

8        Q    And when you say "here," you mean within

9    Morgan Lewis?

10       A    Yes, within Morgan Lewis.  That's how we talk

11   about people's office location.

12       Q    Now, you indicate in Paragraph 3 "Mr. Lubar

13   has no immediate plans to leave the United Kingdom

14   and to return to the U.S. to live on a permanent

15   basis."

16             What is that based upon?

17       A    That is based upon interaction with

18   Mr. Lubar, I believe it was via e-mail, asking him

19   about his intent.

20       Q    Okay.  And when was the e-mail?

21       A    Around the end of May or the beginning of

22   June.

23       Q    All right.  Did you initiate the e-mail?

24       MS. SOLIS:  I'm sorry.  You cut out a little bit,

Clare D'Agostino    July 3, 2008

Page 70

1    Rob.  Can we have that one again?

2    BY MR. FELDT:

3        Q    Did you initiate the e-mail?

4        A    I don't remember.

5        Q    Do you recall if he sent the e-mail in

6    response to a phone call from you?

7        A    I do not remember.

8        Q    Do you recall if he sent the e-mail in

9    response to some form of question from you regardless

10   of whether it took an electronic or a telephone form?

11       A    It would have been definitely in relation to

12   a question.  I do not recollect whether it was via

13   telephone, via e-mail.  I specifically recollect that

14   we were in touch with Mr. Lubar to let him know that

15   I needed to make a declaration similar to before and

16   that we needed to discuss issues that had already

17   been discussed in preparation for an earlier

18   declaration.

19       Q    Okay.

20       A    That's my recollection.

21       Q    And when you say an earlier declaration, you

22   mean in the Swiger case?

23       A    I do.

24       MR. FELDT:  Okay.  I got to ask, Tina, do you

Clare D'Agostino    July 3, 2008

Page 71

1    have this e-mail?  Are you aware of this e-mail?

2        MS. SOLIS:  Are you making a request for it?

3        MR. FELDT:  I thought we did.

4        MS. SOLIS:  I do not have it, but that does not

5    mean that I cannot ask the client for it.

6        MR. FELDT:  Okay.  Well, maybe you're answering

7    my question.  You didn't see it and determine it to

8    be nonresponsive?

9        MS. SOLIS:  My answer is the same as it was when

10   we spoke the other day.

11       MR. FELDT:  Okay.  Well, I personally think it's

12   responsive to our requests.

13       MS. SOLIS:  I think a lot of that depends who

14   else may be on that e-mail, but --

15       MR. FELDT:  Well, I obviously don't know anything

16   about that.

17   BY MR. FELDT:

18       Q   Ms. D'Agostino, without talking about who

19   else may have received the e-mail, other information

20   that may be in the e-mail other than specifically

21   with regard to the statement that serves as the basis

22   for this sentence in Paragraph 3, "Mr. Lubar has no

23   immediate plans to leave the United Kingdom and to

24   return to the U.S. to live on a permanent basis," do

Clare D'Agostino    July 3, 2008

Page 72

1    you recall the text that Mr. Lubar used to convey

2    that thought to you that resulted in this sentence in

3    Paragraph 3 of your declaration?

4        A    Not specifically.

5        Q    Did he specifically use the word "permanent"?

6        MS. SOLIS:  Objection.  Asked and answered.

7    BY MR. FELDT:

8        Q    This is more precise, but is the word

9    "permanent" --

10       MS. SOLIS:  She can't recall what he said, but go

11   ahead.

12   BY MR. FELDT:

13       Q    Is the word "permanent" your word or his?

14       A    I don't remember.

15       Q    Okay.  Then I guess I want to ask you the

16   same question about the sentence in Paragraph 4 that

17   deals with "partner resident," and is that the same

18   as you said about Mr. Lubar that it means she works

19   in the Tokyo office?

20       A    It is, that's correct.

21       Q    Then there is a sentence, "Ms. Yano has

22   resided in Japan continuously since 1992."

23            What is that based upon?

24       A    That is based upon telephone communication,

Page 73

1    e-mail communication between Ms. Yano and I when we

2    were establishing certain facts about Ms. Yano not

3    having had the benefit of earlier preparation as we

4    did with Mr. Lubar and is he ready to make this

5    statement.

6        Q    You mean oral information in discussing it

7    with her specifically?

8        A    Yes.  I specifically recollect leaving voice

9    mail messages, receiving voice mail messages, and I

10   do believe there was an e-mail too.  The time

11   difference between Philadelphia and Tokyo sometimes

12   makes direct person-to-person communication sometimes

13   difficult, so we find ourselves sometimes exchanging

14   voice mails or e-mails, of course.

15       Q    I understand that.  I guess I would have a

16   similar comment about any e-mail, that it's

17   responsive, but let me move on to the voice mail

18   message.

19            Assuming that there was a voice mail

20   message, is that something you retained?

21       A    It is not.

22       Q    In Paragraph 4 there is a sentence "Ms. Yano

23   has no immediate plans to leave Japan and to return

24   to the U.S. to live on a permanent basis."

1              Where does that information come from?

2        A    From either the exchange of voice mails or

3   the exchange of e-mails.  The exact one of those two

4   places I cannot answer at this point.

5        Q    Can you recall ever specifically discussing

6   not via some voice mail recorded or e-mail but

7   actually talking directly on the telephone or in

8   person with Ms. Yano about whether she intends to

9   stay in Japan or leaving Japan or return to the U.S.?

10       A    No, not person to person.

11       Q    And the word "permanent" in that sentence, do

12  you recall if that came from her in the voice mail or

13  e-mail, whatever form the communication took, or is

14  that your word?

15       A    I do not recollect.

16       MR. FELDT:  All right.  I'll pass the witness.

17                      EXAMINATION

18  BY MS. SOLIS:

19       Q    Ms. D'Agostino, I just have a couple

20  follow-up questions.

21            Do you remember when Mr. Feldt was asking

22  you the last time you saw Mr. Lubar person to person?

23  Do you remember that line of questioning?

24       A    Yes.

Page 77

1      MR. FELDT:  No problem.

2  BY MS. SOLIS:

3      Q   Ms. D'Agostino, do you recall when Mr. Feldt

4  was asking you about your duties and responsibilities

5  as assistant counsel to the firm?

6      A   Yes.

7      Q   Do part of your duties and responsibilities

8  include making disclosures in which you must identify

9  Morgan Lewis partners who are domiciled abroad?

10      A   They do.

11      Q   Can you tell us a little bit about that

12  without giving away any client names or confidences,

13  please?

14      A   I can describe two -- I hope that will be

15  helpful -- very generically without having to

16  disclose client confidences.  On a periodic basis,

17  generally on an annual basis, we need to make

18  disclosure of foreign ownership, influence, and

19  control as a part of which we disclose the names and

20  locations of all of our partners, their citizenships,

21  and the ownership percentage that they have of part

22  of the firm, and the purpose of this is for the

23  United States government to understand what

24  percentage is owned by U.S. citizens and what

Clare D'Agostino    July 3, 2008

Page 81

1        MR. FELDT:  That's all still information from

2   him, right?

3        MS. SOLIS:  Well, not if she visibly sees him

4   there.  I think that's seeing it with her own two

5   eyes.  I just want to make sure the record is clear.

6   BY MR. FELDT:

7        Q    Do you have any information about Mr. Lubar's

8   intent other than what he's told you?

9        A    I do not.

10       Q    Do you have any information -- let me clarify

11  that question.

12            Do you have any information about

13  Mr. Lubar's intent as to where he will live or where

14  he has considered to be his domicile other than what

15  he has told you?

16       A    I have not.

17       Q    Do you have any information about Ms. Yano's

18  intent about where she intends to live or where she

19  has intended to live in the past or what she

20  considers to be her domicile other than what she has

21  told you?

22       A    I have not.

23       MR. FELDT:  I'll pass the witness.

24

90

```
 1                IN THE DISTRICT COURT OF THE UNITED STATES

 2                   FOR THE NORTHERN DISTRICT OF ILLINOIS

                                 EASTERN DIVISION

 3

 4     MORGAN, LEWIS & BOCKIUS LLP,      )

                                         )

 5               Plaintiff,              )

                                         )

 6          -vs-                         ) No. 08 CV 2748

                                         )

 7     CITY OF EAST CHICAGO,             )

                                         )

 8               Defendant.              )

 9

10          I, CLARE D'AGOSTINO, being first duly sworn, on

11     oath say that I am the deponent in the aforesaid

12     deposition taken on July 3, 2008; that I have read the

13     foregoing transcript of my deposition, consisting of

14     Pages 1 through 90, inclusive, and affix my signature to

15     same.

16

17     _____

                     CLARE D'AGOSTINO

18

19     Subscribed and sworn to

       before me this ____7____ day

20     of ___July___, _2008_.

21     _____

22     Notary Public

23

24
```

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Katie C. Kinsman, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Nov. 10, 2011
Member, Pennsylvania Association of Notaries

# EXHIBIT B TO THE JULY 10, 2008 RESPONSE IN OPPOSITION TO THE PLAINTIFF'S MOTION TO REMAND OF THE DEFENDANT, CITY OF EAST CHICAGO

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MORGAN, LEWIS & BOCKIUS LLP,  )
              )
    Plaintiff,     )
              )
    v.        )   No. 08 CV 2748
              )   Judge Pallmeyer
CITY OF EAST CHICAGO,    )   Magistrate Judge Schenkier
              )
    Defendant.    )

### PLAINTIFF'S RESPONSES AND OBJECTIONS
### TO DEFENDANT'S REQUESTS FOR ADMISSION, SUPPORTING
### INTERROGATORY, AND SUPPORTING REQUEST FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36, Plaintiff Morgan, Lewis & Bockius LLP ("Plaintiff" or "Morgan Lewis") hereby serves its Responses and Objections to Defendant the City of East Chicago's ("Defendant" or "East Chicago") Requests for Admission, Supporting Interrogatory, and Supporting Request for Production. Morgan Lewis reserves the right to supplement or amend its Responses and Objections to Defendant's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

Morgan Lewis objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent that they call for information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or defense.

Morgan Lewis also objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent they



DEFENDANT'S
EXHIBIT
b

impose burdens, obligations, or requirements in excess of those required or permitted by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, or any other applicable rule or order issued by the Court.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent they are vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent they contain no time limitation and are, therefore, temporally overbroad.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent the "Definition and Instructions" contained therein are overly broad.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent they exceed the scope of discovery permitted under the Court Order, dated June 9, 2008, permitting discovery on issues germane to the motion to remand.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the extent that the information and/or documents they seek is available from public sources.

Morgan Lewis further objects generally to East Chicago's Requests for Admission, Supporting Interrogatory, and Supporting Request for Production to the

extent that the information and/or documents they seek is unreasonably cumulative, duplicative or obtainable from some other source that is more convenient, less burdensome or less expensive.

Subject to and without waiver of these General Objections, which are expressly incorporated by reference into each of the responses below, Morgan Lewis responds more specifically.

## SPECIFIC OBJECTIONS AND/OR RESPONSES
### (in addition to all General Objections)

### REQUEST FOR ADMISSION NO. 1

**Neither the Plaintiff nor any of the Plaintiff's partners are citizens of the State of Indiana.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis admits that none of Morgan Lewis' partners resides in the State of Indiana. Morgan Lewis can neither admit nor deny whether Morgan Lewis or any of its partners is a citizen of the State of Indiana.

### REQUEST FOR ADMISSION NO. 2

**Neither the Plaintiff nor any of the Plaintiff's partners are domiciled or have their principal place of business in the State of Indiana.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis admits that none of its partners is domiciled in the State of Indiana. Morgan Lewis admits that none of its partners, in his or her capacity as a Morgan Lewis partner, has his or her principal place of business in Indiana. Morgan Lewis admits that it is not domiciled in the State of Indiana and that it does not have its principal place of business in the State of Indiana.

### INTERROGATORY NO. 1

**With regard to any of the foregoing Requests for Admission which you did not unconditionally admit, for each state:**

a.    **The factual and legal basis for your refusal to unconditionally admit said Request for Admission;**

**OBJECTIONS AND/OR RESPONSE:** The legal bases for Morgan Lewis' refusal to unconditionally admit the Requests for Admission are set forth above. The factual bases for Morgan Lewis' refusal to unconditionally admit the Requests for admission are set forth below.

b.    **Identify each and every document which you contend supports your refusal to unconditionally admit said Request for Admission; and**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that the documents that support its refusal to unconditionally admit the Requests for Admission are referenced in its Responses and Objections to East Chicago's First Requests for Production.

c.    **Identify every person who has knowledge which you contend supports your refusal to unconditionally admit said Request for Admission and state the substance of that person's knowledge which you contend supports your refusal to unconditionally admit said Request for Admission.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that the individuals with knowledge supporting its refusal to unconditionally admit the Requests for Admission are Clare D'Agostino ("Ms. D'Agostino"), Mr. Lubar, and Ms. Yano. Ms. D'Agostino is Assistant Counsel to Morgan Lewis. Mr. Lubar and Ms. Yano are the Morgan Lewis partners whose stateless status affects the citizenship of Morgan Lewis.

## REQUEST FOR PRODUCTION NO. 1

All documents and other tangible things listed and/or described in your Answer to Interrogatory herein.

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that the documents that support its refusal to unconditionally admit the Requests for Admission

are referenced in its Responses and Objections to East Chicago's First Requests for Production.

Dated:    June 27, 2008

Respectfully submitted,

One of the Attorneys for
MORGAN, LEWIS & BOCKIUS
LLP

F. Thomas Hecht (ARDC #1168606)
Tina B. Solis (ARDC #6242461)
Seth A. Horvath (ARDC #6283110)
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone (312) 977-4400
Facsimile (312) 977-4405

1174900-2                                5

## CERTIFICATE OF SERVICE

I, Seth A. Horvath, an attorney, hereby certify that I served a copy of the foregoing PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S REQUESTS FOR ADMISSION, SUPPORTING INTERROGATORY, AND SUPPORTING REQUEST FOR PRODUCTION on the attorneys listed below by Federal Express and electronic mail on June 27, 2008 at or before 5:00 p.m.

David C. Jensen, #18395
Robert J. Feldt, #14284
Eichhorn & Eichhorn, LLP
200 Russell Street
P.O. Box 6328
Hammond, IN 46325

Seth A. Horvath

# EXHIBIT C TO THE JULY 10, 2008 RESPONSE IN OPPOSITION TO THE PLAINTIFF'S MOTION TO REMAND OF THE DEFENDANT, CITY OF EAST CHICAGO

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MORGAN, LEWIS & BOCKIUS LLP,   )
                             )
           Plaintiff,        )
                             )
        v.               )     No. 08 CV 2748
                             )     Judge Pallmeyer
CITY OF EAST CHICAGO,        )     Magistrate Judge Schenkier
                             )
          Defendant.     )

### PLAINTIFF'S RESPONSES AND OBJECTIONS TO
### DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Morgan, Lewis & Bockius LLP ("Plaintiff" or "Morgan Lewis"), hereby serves its Responses and Objections to Defendant the City of East Chicago's ("Defendant" or "East Chicago") First Requests for Production of Documents. Morgan Lewis reserves the right to supplement or amend its Objections and Responses to these Requests for Production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

Morgan Lewis objects generally to East Chicago's First Requests for Production of Documents to the extent that they call for information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or defense.

Morgan Lewis also objects generally to East Chicago's First Requests for Production of Documents to the extent they impose burdens, obligations, or requirements in excess of those required or permitted by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, or any other applicable rule or order issued by the Court.



ALL-STATE LEGAL®
DEFENDANT'S
EXHIBIT
C

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents on the grounds they are vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent they contain no time limitation and are, therefore, temporally overbroad.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent the "Definition and Instructions" contained therein are overly broad.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent they exceed the scope of discovery permitted under the Court Order, dated June 9, 2008, permitting discovery on issues germane to the Motion to Remand.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent that the information and/or documents they seek is available from public sources.

Morgan Lewis further objects generally to East Chicago's First Requests for Production of Documents to the extent that the information and/or documents they seek is unreasonably cumulative, duplicative or obtainable from some other source that is more convenient, less burdensome or less expensive.

Subject to and without waiver of these General Objections, which are expressly incorporated by reference into each of the responses below, Morgan Lewis responds

1175436-2                                2

more specifically.

## SPECIFIC OBJECTIONS AND/OR RESPONSES
### (in addition to all General Objections)

### REQUESTS FOR DOCUMENTS

1.      **All documents upon which Ms. Clare D'Agostino relied with regard to her Declaration of June 4, 2008.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that Clare D'Agostino ("Ms. D'Agostino") relied on documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases on residence and the information available on the Morgan Lewis website regarding Charles Lubar ("Mr. Lubar") and Lisa Yano ("Ms. Yano"). This information and documents relevant to the Motion to Remand will be produced.

2.      **All documents utilized as the basis for the representations about Mr. Lubar's citizenship, domicile or partnership in the *Swiger* matter, Civil Action No. 05-CV-5725, United States District Court for the Eastern District of Pennsylvania.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first page of Mr. Lubar's 2005 United Kingdom tax return (ML00128); the first page of Mr. Lubar's 2004 United States tax return (ML00129); statements for bar dues paid by Mr. Lubar in 2004 and 2005 to the Maryland Bar; (ML00130-131); statements for bar dues paid by Mr. Lubar in 2004 and 2005 to the District of Columbia Bar (as an inactive member) (ML00132-133); a November 2005 statement from the Law Society regarding Mr. Lubar's registration as a Registered Foreign Lawyer (ML00134); Mr. Lubar's Washington, D.C. driver's license (ML00136); a June 2006 bank statement from Mr. Lubar's bank account with Coutts Bank, Geneva, Switzerland (ML00137); a July 2006 bank statement from Mr. Lubar's bank account with SunTrust Bank, Orlando, Florida,

which account is located in Washington, D.C. (ML00138-139); a 2004 interest statement from an account with Fleet National Bank, Scranton, Pennsylvania, relating to Mr. Lubar's payment of New York real estate tax (ML00147); a May 2006 statement from Mr. Lubar's Citigroup Global Markets, Inc. brokerage account (ML00140); January 2006 and March 2006 Chase mortgage loan statements for Mr. Lubar's apartment in New York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00144); a January 2006 statement for payment of property maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment in New York, New York (ML00146); a 2004 United States tax return mortgage interest statement for Mr. Lubar's apartment in New York, New York (ML00148). Each of these documents is redacted so as not to reflect any confidential personal information.

3. **All documents which refer to Mr. Lubar's citizenship and/or domicile.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce all of the documents described in response to Request No. 2 (ML00128-48), as well as Mr. Lubar's United Kingdom passport (ML00001-0037); Mr. Lubar's United States passport (ML00038-00067); Mr. Lubar's certificate of naturalization as a British citizen (ML00155); Mr. Lubar's business card (ML00069); Mr. Lubar's letterhead (ML00070); a statement for bar dues paid in 2007 by Mr. Lubar to the Maryland Bar (ML00071); a statement for bar dues paid in 2008 by Mr. Lubar to the District of Columbia Bar (as an inactive member) (ML00075); Mr. Lubar's 2006 application for renewal as a Registered

Foreign Lawyer (ML00072); a 2008 statement from the Law Society regarding Mr. Lubar's registration as a Registered Foreign Lawyer (ML00073); a June 24, 2008 e-mail from the Solicitors Regulation Authority confirming that Mr. Lubar is a Registered Foreign Lawyer (ML00074); a June 27, 2008 statement from the Solicitors Regulation Authority regarding Mr. Lubar's registration as a Registered Foreign Lawyer (ML00156); the cover sheet of Mr. Lubar's 2006 U.S. tax return (ML00076); the first page of Mr. Lubar's 2006 United States tax return (ML00077); Form 2555 of Mr. Lubar's 2006 United States tax return (ML00078-80); Form 1042-S of Mr. Lubar's 2007 United States tax return (ML00081); the first and second pages of Mr. Lubar's 2007 United Kingdom tax return (ML00082-83); September 2007 and May 2008 account statements from SunTrust Bank, Orlando, Florida which account is located in Washington, D.C. (ML00084-85); a March 2008 account statement for Leumi Bank, Jersey (ML00086); a March 2008 account statement from Citibank, New York, New York (ML00087); a January 2007 account statement from Coutts & Co. Bank, London, United Kingdom (ML00088); a June 2008 statement regarding Mr. Lubar's payment of rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008 electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a January 2008 tax bill for residential property owned by Mr. Lubar in London, United Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for Mr. Lubar's payment of property maintenance fees for his apartment in New York, New

York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102). Each of these documents is redacted so as not to reflect any confidential personal information.

    **4.**    **All documents which refer to Ms. Yano's citizenship and/or domicile.**

    <u>**OBJECTIONS AND/OR RESPONSE:**</u> Morgan Lewis will produce the first page of Ms. Yano's United States passport (ML00105); Ms. Yano's Japanese driver's license (ML00107); Ms. Yano's Certificate of Alien Registration (ML00106); a statement for bar dues paid in 2008 by Ms. Yano to the California Bar (ML00109); a statement for bar dues paid in 2006 by Ms. Yano to the New York Bar (ML00111); a 2007 statement acknowledging Ms. Yano's change of attorney registration information for the New York Bar (ML00112); a 2008 statement from the New York State Unified Court System regarding Ms. Yano's registration as a member of the New York Bar (ML00110); Ms. Yano's Notice for Registration as Foreign Lawyer in Japan (ML00113-115); the Governmental Gazette providing notice of Ms. Yano's registration as a Foreign Lawyer; (ML00116); Ms. Yano's business card (ML00108); the first page of Ms. Yano's 2006 United States tax return (ML00117); an April 2008 bank account statement from Citibank (ML00118); a May 2008 consolidated bank and brokerage account statement from Citibank (ML00119); a May 2008 brokerage account statement from Fidelity Investments (ML00120); a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken,

1175436-2                                                6

Japan (ML00125-127); a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124). Each of these documents is redacted so as not to reflect any confidential personal information.

**5.    Any document related to or showing that any individual classified as or considered to be a partner with Morgan Lewis is a citizen or domiciliary of the State of Indiana, and for each such individual, provide all partnership documents.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds by stating that there are no responsive documents to this request in Morgan Lewis' possession, custody, or control.

**6.    All partnership agreements which form the basis for Plaintiff's claims that Mr. Lubar and Ms. Yano are partners of Morgan Lewis.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis objects to this request on the grounds that it is beyond the discovery authorized by the Court on issues related to the Motion to Remand. It is not reasonably calculated to lead to the discovery of admissible evidence. Morgan Lewis further responds by stating that information confirming Mr. Lubar and Ms. Yano's status as Morgan Lewis partners is publicly available on Morgan Lewis' website, on the Martindale-Hubbell Law Directory, and from various other similar sources. Morgan Lewis further responds by producing the letterhead of Mr. Lubar (ML00070) and the business card of Ms. Yano (ML00108), which acknowledge the status of each as "Partner."

**7.    All documents which reflect an ownership or occupancy interest in real property held by Mr. Lubar and Ms. Yano, respectively, between January 1, 2002 and the present date.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the following documents regarding Mr. Lubar: January 2006 and March 2006 Chase

1175436-2                                7

mortgage loan statements for Mr. Lubar's apartment in New York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00144); a January 2006 statement for payment of property maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment in New York, New York (ML00146); a 2004 United States tax return mortgage interest statement for Mr. Lubar's apartment in New York, New York (ML00148); a June 2008 statement regarding Mr. Lubar's payment of rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008 electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a January 2008 tax bill for residential property owned by Mr. Lubar in London, United Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for Mr. Lubar's payment of property maintenance fees for his apartment in New York, New York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); and July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102).

Morgan Lewis will produce the following documents regarding Ms. Yano: a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in

Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00125-127); and a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124).

      **8.**    **All documents the Plaintiff utilized in preparing the purported data regarding Mr. Lubar that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
> **http://www.morganlewis.com/index.cfm/personID/4c4115b6-f068-4acf-99ae-66b044 b64144/fromSearch/1/fuseaction/people.viewBio.**

**OBJECTIONS AND/OR RESPONSE:** East Chicago's request for documents encompasses numerous pieces of information and data on Morgan Lewis' website, including, *inter alia*, Mr. Lubar's photograph, practice areas, and civic involvements. Documentation regarding this information clearly is irrelevant to the issues presented by the Motion to Remand in the above-captioned action. In addition, the term "purported data" is vague and undefined, and Morgan Lewis has no basis for determining what information the term refers to. Subject to and without waiver of these objections, Morgan Lewis responds by stating that, upon information and belief, the information in Mr. Lubar's biography on the Morgan Lewis website is based on communications with Mr. Lubar, as well as documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases. Morgan Lewis further responds by stating that some of the information on Mr. Lubar's biography is publicly available information accessible through the Martindale-Hubbell Law Directory and various other similar sources.

      **9.**    **All documents the Plaintiff utilized in preparing the purported data regarding Ms. Yano that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
> **http://www.morganlewis.com/index.cfm/personID/6ad4225b-629b-42b0-813e-28cc993cc35a/fromSearch/1/fuseaction/people.viewBio.**

1175436-2                                        9

**OBJECTIONS AND/OR RESPONSE:** East Chicago's request for documents encompasses numerous pieces of information and data on Morgan Lewis' website, including, *inter alia*, Ms. Yano's photograph, practice areas, and civic involvements. Documentation regarding this information clearly is irrelevant to the issues presented by the Motion to Remand in the above-captioned action. In addition, the term "purported data" is vague and undefined, and Morgan Lewis has no basis for determining what information the term refers to. Subject to and without waiver of these objections, Morgan Lewis responds by stating that, upon information and belief, the information in Ms. Yano's biography on the Morgan Lewis website is based on communications with Ms. Yano, as well as documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases. Morgan Lewis further responds by stating that some of the information on Ms. Yano's biography is publicly available information accessible through the Martindale-Hubbell Law Directory and various other similar sources.

10. **With respect to Mr. Lubar, a copy of all passports held and all information evidencing the issuing nation for each passport.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce Mr. Lubar's United Kingdom passport (ML00001-00037) and Mr. Lubar's United States passport (ML00038-00067), designated as confidential.

11. **With respect to Ms. Yano, a copy of all passports held and all information evidencing the issuing nation for each passport.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first page of Ms. Yano's United States passport (ML00105), designated as confidential.

12.     **All documents related to any naturalization, oath, process, action or test by which Mr. Lubar became a citizen or subject of any nation.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce Mr. Lubar's United Kingdom passport (ML00001-00037) and his certificate of naturalization as a British citizen (ML00155), designated as confidential.

13.     **All documents related to any naturalization, oath, process, action, or test by which Ms. Yano became a citizen or subject of any nation.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds by stating that there are no responsive documents to this request in Morgan Lewis' possession, custody, or control.

14.     **All documents upon which the plaintiff relied to support the Motion and Memorandum to Remand this matter.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis objects to this request on the ground that it seeks material protected by the attorney-client privilege and work product privilege.  Subject to and without waiver of these objections, Morgan Lewis will produce the Declaration of Clare D'Agostino, dated June 4, 2008 (ML00149-150); a copy of Mr. Lubar's biography reproduced from Morgan Lewis' website (ML00151-52); and a copy of Ms. Yano's biography, reproduced from Morgan Lewis' website (ML00153-54).

Dated:     June 27, 2008

Respectfully submitted,


One of the Attorneys for
MORGAN, LEWIS & BOCKIUS
LLP


F. Thomas Hecht (ARDC #1168606)
Tina B. Solis (ARDC #6242461)

Seth A. Horvath (ARDC #6283110)
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, Illinois 60602
Telephone (312) 977-4400
Facsimile (312) 977-4405

## CERTIFICATE OF SERVICE

I, Seth A. Horvath, an attorney, hereby certify that I served a copy of the foregoing **PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS** on the attorneys listed below by Federal Express and electronic mail on June 27, 2008 at or before 5:00 p.m.

> David C. Jensen, #18395
> Robert J. Feldt, #14284
> Eichhorn & Eichhorn, LLP
> 200 Russell Street
> P.O. Box 6328
> Hammond, IN 46325

Seth A. Horvath

# NOTICE FOR
# EXHIBIT D TO THE JULY 10, 2008
# RESPONSE IN OPPOSITION TO
# THE PLAINTIFF'S
# MOTION TO REMAND
# OF THE DEFENDANT,
# CITY OF EAST CHICAGO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP,** | ) | **No. 08-cv-2748** |
| **Plaintiff,** | ) | |
| v. | ) | **Judge: Rebecca R. Pallmeyer** |
| **CITY OF EAST CHICAGO,** | ) | **Magistrate Judge:** |
| **Defendant.** | ) | **Sidney I. Schenkier** |

### NOTICE OF RESTRICTED AND SEALED DOCUMENTS
### PURSUANT TO LR 26.2 and LR 5.8: EXHIBIT D TO RESPONSE

**Statement:**    The Defendant, the City of East Chicago, ("East Chicago"), notifies the Court that Exhibit D to its Response is designated as a restricted document for filing with the Court under seal.  Exhibit D includes pages numbered  ML 38- 40, 48-51, 53-54, 58-59, 61, 63, 68, 90, 91, 101, 102, 105, 117, 136, 145, 147, and 148.  These pages were produced by the Plaintiff in response to the City of East Chicago's Requests For Production and contain materials designated as restricted and confidential in accordance with the Court's Stipulation and Order Governing the Protection and Exchange of Confidential Material of June 24, 2008 and the Court's Order of July 10, 2008. The pages comprising Exhibit D to East Chicago's July 10, 2008, Response are provided under seal for filing pursuant to LR 26.2 and LR 5.8.

Pursuant to LR 26.2(c), copies of the June 24, 2008 and July 10, 2008 restricting orders have been included along with the restricted and sealed document presented for filing.

David C. Jensen
djensen@eichhorn-law.com

Robert J. Feldt
rfeldt@eichhorn-law.com

**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46320
219-931-0560

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By: _Robert J. Feldt_
One of the attorneys for the Defendant,
City of East Chicago

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, hereby certify that on the ___10th___ day of July, 2008, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

> F. Thomas Hecht
> Tina B. Solis
> UNGARETTI & HARRIS LLP
> 3500 Three First National Plaza
> Chicago, IL 60602
> fthecht@uhlaw.com
> tbsolis@uhlaw.com

_____
Robert J. Feldt

# EXHIBIT E TO THE JULY 10, 2008 RESPONSE IN OPPOSITION TO THE PLAINTIFF'S MOTION TO REMAND OF THE DEFENDANT, CITY OF EAST CHICAGO

# UNGARETTI ᗺ HARRIS

**SETH A. HORVATH**
Direct No.: (312) 977-4443
Facsimile:  (312) 977-4405
sahorvath@uhlaw.com

**UNGARETTI ᗺ HARRIS LLP**

**CHICAGO**
3500 Three First National Plaza
Chicago, Illinois 60602.4224
Telephone: 312.977.4400
Fax: 312.977.4405

**WASHINGTON**
1500 K Street, N.W., Suite 250
Washington, D.C. 20005.1714
Telephone: 202.639.7500
Fax: 202.639.7505

May 19, 2008

**SPRINGFIELD**
400 E. Jefferson Street, Suite 1200
Springfield, Illinois 62701.1053
Telephone: 217.544.7000
Fax: 217.544.7950

www.uhlaw.com

**VIA FEDERAL EXPRESS AND E-MAIL**

Robert J. Feldt
Eichhorn & Eichhorn
200 Russell Street
P.O. Box 6328
Hammond, IN  46320

Re:    **Motion to Remand** *Morgan, Lewis & Bockius LLP v. City of East Chicago,*
       **Case No. 08 CV 2748, to the Circuit Court of Cook County**

Dear Mr. Feldt:

As you know, on May 16, 2008, we discussed and agreed to the extension of time you requested to file your Answer to the Complaint in the above-captioned matter. We also placed you on notice that we intend to file a motion to remand the matter to the Circuit Court of Cook County. The basis of our motion to remand is that the United States District Court for the Northern District of Illinois lacks subject matter jurisdiction over the dispute due to the absence of complete diversity between the parties. *See* 28 U.S.C. § 1332. We are confident that, if filed, our motion will be granted. Therefore, to avoid the unnecessary time and expense of litigating the motion, we request that you review the enclosed materials and consider withdrawing your notice of removal.

The case law from the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit clearly establishes that the citizenship of a limited liability partnership is determined based on the citizenship of all its partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007). The case law also establishes that a United States citizen domiciled abroad has no state citizenship. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003). In this case, Charles Lubar, one of Morgan, Lewis & Bockius's ("Morgan Lewis") partners, is a United States citizen domiciled in London. He is therefore "stateless" for purposes of diversity jurisdiction. This fact precludes a federal court from exercising diversity jurisdiction over Morgan Lewis under paragraph (a)(1) of the diversity statute either. *See* 28 U.S.C. § 1332(a)(1).

ALL-STATE LEGAL®
**DEFENDANT'S EXHIBIT**
E

UNGARETTI
ᴁ HARRIS

Mr. Mark Feldt
May 19, 2008
Page 2

Even to the extent a federal court might conclude Mr. Lubar has dual citizenship, this would not affect the outcome of the diversity analysis. A United States citizen with dual citizenship is not a "citizen[] or subject[] of a foreign state" under paragraph (a)(2) of the diversity statute because the United States citizenship of a dual citizen is controlling. *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980). Therefore, a federal court has no jurisdiction over Morgan Lewis pursuant to paragraph (a)(2) of the diversity statute either. *See* 28 U.S.C. § 1332(a)(2).

In addition to the cases cited above, we have included for your review cases from other jurisdictions where courts have held that no diversity jurisdiction existed over a controversy where a partnership had partners who were United States citizens domiciled abroad. *See, e.g., Thompson v. Deloitte & Touche*, 503 F. Supp. 2d 1118, 1121-125 (S.D. Iowa 2007); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68-69 (2d Cir. 1990). We have also included the orders entered in *Swiger v. Allegheny Energy, Inc. et al.*, No. 05 CV 5725, a case where Morgan Lewis, as a named defendant, successfully maintained the position it intends to assert here regarding the effect of Mr. Lubar's status on the citizenship of the partnership.

While we are mindful of the time and effort that undoubtedly went into your preparation of the notice of removal, we hope that you recognize the case law on this issue is well-settled, and therefore agree to withdraw the notice. Mr. Lubar's status as a U.S. citizen domiciled abroad is a jurisdictional nuance specific to Morgan Lewis that you could not reasonably have foreseen. Please consider this a good faith effort on our part to avoid the unnecessary litigation of this issue and the request for attorney fees that would follow its resolution in our favor. *See* 28 U.S.C. § 1447(c).

I would appreciate it if you could inform me within the next week whether you intend to withdraw your notice of removal. If you have any questions, I can be reached at (312) 977-4443.

Sincerely,

Seth A. Horvath

SAH/ci
Enclosures

cc:    F. Thomas Hecht, Ungaretti & Harris (w/o encls.)
       Tina B. Solis, Ungaretti & Harris (w/o encls.)

1131476-1