**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 2748 |
| | ) | Judge Pallmeyer |
| CITY OF EAST CHICAGO, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff Morgan, Lewis & Bockius LLP ("Morgan Lewis"), by its undersigned attorneys, submits the following Response in Opposition to Defendant the City of East Chicago's ("East Chicago") Motion to Compel.

**INTRODUCTION**

On June 9, 2008, the Court ordered Morgan Lewis and East Chicago to proceed with expedited, but limited, discovery on "issues germane to" Morgan Lewis's Motion to Remand. (Docket 17.) Morgan Lewis was specifically ordered to "respond to written disclosures within 7 days of [East Chicago's] request, and promptly to produce [Clare D'Agostino] for deposition." (*Id.*)

Since that date, Morgan Lewis has done everything possible to accommodate East Chicago's discovery demands within the court-ordered deadlines. It has done so in the interest of moving past this unfortunate sidebar in the litigation and reaching the merits of the underlying breach of contract dispute between the parties, recognizing full well that issues concerning the domicile of Charles Lubar ("Mr. Lubar") and Lisa Yano ("Ms. Yano") ultimately have nothing to do with the unpaid attorneys' fees owed to Morgan

Lewis by East Chicago. In that vein, Morgan Lewis timely responded to East Chicago's extensive discovery requests, even though doing so required gathering documents from individuals domiciled overseas. Morgan Lewis also produced Clare D'Agostino ("Ms. D'Agostino"), Assistant Counsel to the Firm for Morgan Lewis, for a deposition on less than one week's notice. (*See* Subpoena, attached hereto as Ex. A; Transcript of Deposition of Clare D'Agostino at 1, attached hereto as Ex. B.)

Despite the facts that Morgan Lewis has made every effort to produce all relevant responsive documents and has produced Ms. D'Agostino for deposition, East Chicago has conjured up an alleged discovery dispute in the hopes of further delaying this matter. Even though East Chicago has not pointed to one scintilla of evidence suggesting that Mr. Lubar and Ms. Yano are not U.S. citizens domiciled abroad, East Chicago continues to insist that additional documents must be produced. There comes a time when enough is enough. East Chicago's Motion to Compel has no merit and must be denied.

## ARGUMENT

Although the scope of discovery is broad, it is not unlimited. *Byers v. Ill. State Police*, 2002 WL 1264004, at *6 (N.D. Ill. June 3, 2002); *see also McClain v. T.P. Orthodontics*, 2008 WL 2477578, at *1 (N.D. Ill. June 16, 2008) ("Discovery under Rule 26…is not an invitation to the proverbial fishing expedition."). Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matter that is relevant and nonprivileged. Fed. R. Civ. P. 26(b)(1). Additionally, Rule 26(b)(2)(C)(i) prohibits discovery that is duplicative or that can be obtained from a less burdensome source, and Rule 26(b)(2)(C)(iii) prohibits discovery if its burden outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i), (C)(iii). These limitations, which the Court has broad

discretion to enforce, *see Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998),

govern the additional documents sought by East Chicago in its Motion to Compel.

## I.     MORGAN LEWIS ALREADY HAS PRODUCED NUMEROUS DOCUMENTS RELEVANT TO THE ISSUES OF MR. LUBAR AND MS. YANO'S DOMICILE AND CITIZENSHIP.

Before addressing the particular requests for additional documents set forth in

East Chicago's Motion to Compel, it is important to note that the Motion makes no

mention of the documents Morgan Lewis already has produced in response to East

Chicago's First Requests for Production of Documents.  Those documents include Mr.

Lubar and Ms. Yano's passports, driver's licenses, tax returns, bar registration

statements, bank account statements, and various documents evincing their ownership of

property in London, New York, and Tokyo.  (Excerpt from Morgan Lewis's Responses

and Objections to Defendant's First Requests for Production of Documents at 3-7,

attached hereto as Ex. C.)  Morgan Lewis also has produced Mr. Lubar's certificate of

naturalization as a British citizen and Ms. Yano's certificate of alien registration.  (*Id.*)

The requests for additional documents set forth in the Motion to Compel must be

considered in light of what Morgan Lewis already has produced to East Chicago, and in

light of the limited nature of the discovery ordered with respect to Morgan Lewis's

Motion to Remand.  These considerations, in conjunction with those discussed below,

make it readily apparent that the additional discovery sought by East Chicago in its

Motion to Compel is unnecessary and excessive.

## II.    THE E-MAILS SOUGHT BY EAST CHICAGO ARE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE.

East Chicago seeks to compel the production of various e-mails referenced by Ms.

D'Agostino in her deposition.  (Ex. B at 69-74, 79-80, 82.)  Those e-mails were part of

exchanges that Ms. D'Agostino engaged in with Mr. Lubar and Ms. Yano in preparing her declaration.  (*Id.*)  In addition to the e-mails, Ms. D'Agostino testified that the exchanges with Mr. Lubar and Ms. Yano included telephone communications.  (*Id.*) Counsel for Morgan Lewis first became aware of the potential existence of the e-mail communications at Ms. D'Agostino's deposition, and after confirming that the e-mails did, in fact, exist, promptly informed opposing counsel that they were subject to the attorney-client privilege.

The e-mails sought by East Chicago, which, incidentally, are few in number, are subject to the attorney-client privilege because Morgan Lewis's General Counsel, Michael Bloom, was involved in their exchange, either as a sender or a carbon-copy recipient.  East Chicago claims that Morgan Lewis has waived the attorney-client privilege with respect to the e-mails because Ms. D'Agostino relied on these documents in preparing her declaration.  (Docket 24 at 3.)  Discussing the underlying facts of a privileged communication, however, does not by itself waive the attorney-client privilege with respect to the particular communication.  *See, e.g., Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 460 (N.D. Ill. 1974), *aff'd without op.*, 534 F.2d 330 (7th Cir. 1976) (attorney bargaining on behalf of client does not waive privilege); *Charles Woods Tel. Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1162 (8th Cir. 1989) (no waiver where television network testified generally about effects of merger without mentioning particular privileged communications).  Because the e-mails requested by East Chicago are covered by the attorney-client privileged, there is no basis to compel their production.

### III.    MORGAN LEWIS'S PARTNERSHIP AGREEMENT IS NOT ESSENTIAL TO THE DISPOSITION OF THE MOTION TO REMAND, AND COMPELLING ITS PRODUCTION WOULD IMPOSE AN UNDUE BURDEN ON MORGAN LEWIS.

East Chicago goes to great lengths to insist that Morgan Lewis's partnership agreement is "highly relevant" to the Motion to Remand.  (Docket at 4-6.)  The particular financial arrangement Morgan Lewis has with its individual partners, however, is irrelevant to the issues before the Court.  *Cf. Marrese v. Amer. Acad. of Orthopaedic Surgeons*, 706 F.2d 1488, 1495 (7th Cir. 1983) ("Discovery of sensitive documents is sometimes sought not in a sincere effort to gather evidence for use in a lawsuit but in an effort to coerce the adverse party, regardless of the merits of the suit, to settle it in order not to have to disclose sensitive materials.")

East Chicago relies on the tenuous argument that the partnership agreement may be relevant to establishing Mr. Lubar's domicile if it contains a mandatory retirement age.  (Docket at 5.)  Even assuming it does, it is pure speculation to connect Mr. Lubar's hypothetical retirement from his position with Morgan Lewis with his return to the United States, especially in light of other evidence establishing the United Kingdom as Mr. Lubar's long-time domicile and his statements regarding his intent to remain in the United Kingdom.  The partnership agreement clearly is not relevant in establishing Mr. Lubar's domicile.

East Chicago further argues that the partnership agreement "is likely to establish contractual rights for the claims which Morgan Lewis has pled."  (Docket 24 at 5-6.)  East Chicago has not cited any legal authority for the proposition that the right of an individual partner to take legal action on behalf of the partnership is related to the assertion of jurisdiction over the partnership.  Even assuming an individual partner

cannot maintain a private right of action to recover fees due to the partnership, this fact is immaterial to the partner's membership in the partnership, which is all that is relevant to the jurisdictional inquiry before the Court.

To the extent the issue of Mr. Lubar and Ms. Yano's partnership status *is* relevant to the Motion to Remand, Ms. D'Agostino was competent to attest to that status, because her position at Morgan Lewis as Assistant Counsel to the Firm requires her to be personally familiar with numerous aspects of the firm's partnership. (Ex. B at 13-14, 77-78.) Because compelling Morgan Lewis to produce its highly confidential partnership agreement would serve only to burden Morgan Lewis, and because confirmation of Mr. Lubar and Ms. Yano's partnership status is available from another competent evidentiary source (*see* Docket 15, Ex. A), there is no reason for the Court to compel production of the partnership agreement. *See, e.g.*, *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305-06 (N.D. Ill. 1992) (insurer was not permitted to depose insured's attorney regarding whether insurer's agent had waived time limits for reporting claims under policy, since that information was available directly from insurer's agent).

## IV.    THE ADDITIONAL INFOMRATION SOUGHT BY EAST CHICAGO REGARDING MR. LUBAR AND MS. YANO'S PROPERTY OWNERSHIP IS DUPLICATIVE.

Finally, East Chicago demands the production of additional documents regarding Mr. Lubar and Ms. Yano's property ownership. (Docket 24 at 6.) As mentioned, Morgan Lewis already has produced numerous documents evincing Mr. Lubar's ownership of property in London and New York and Ms. Yano's ownership of property in Tokyo. With respect to Mr. Lubar, these documents include a statement regarding Mr. Lubar's payment of rent for his apartment in London; gas and electric bills for Mr.

Lubar's apartment in London; statements for payment of property maintenance fees for residential property owned by Mr. Lubar in London; a tax bill for residential property owned by Mr. Lubar in London; mortgage loan statements for Mr. Lubar's apartment in New York; statements for payment of property maintenance fees for Mr. Lubar's apartment in New York; a statement regarding payment of real estate taxes for Mr. Lubar's apartment in New York; a tax return mortgage interest statement for Mr. Lubar's apartment in New York; and gas and electric bills for Mr. Lubar's apartment in New York; (Ex. C at 7-8.) With respect to Ms. Yano, these documents include a tax bill for Ms. Yano's condominium in Tokyo; a mortgage loan statement for residential property owned by Ms. Yano outside Tokyo; and a property registration statement for residential property owned by Ms. Yano outside Tokyo. (*Id.* at 8-9.)

This, however, is not enough to satisfy East Chicago's discovery demands. East Chicago also seeks the production of "title documents, mortgage agreements, leases, and full tax returns with real estate schedules." (Docket at 24.) To the extent such documents exist, their production clearly would be duplicative, *see* Fed. R. Civ. P. 26(b)(2)(C)(i), considering that the documents already produced provide more than sufficient indicia of Mr. Lubar and Ms. Yano's ownership interests in their property. *See, e.g., Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1444 (D. Kan. 1995) (when information already provided by employer should have been sufficient for employee to make preliminary determination as to whether company treated employee's ethnic group differently, employee could not compel employer to cull information from 1,700 personnel files, even though files might contain some relevant information).

Moreover, with respect specifically to the tax returns, those documents are presumptively confidential, and prohibiting their disclosure is consistent with the strong public interest in ensuring their privacy. *See Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2005 WL 3177880, at *4 n.1 (recognizing that "the public has a strong interest in ensuring the privacy of taxpayers' returns" and finding good cause for prohibiting the disclosure of the individual defendants' tax returns) (N.D. Ill. Jan. 19, 2005); *U.S. v. Gaynor*, 2002 WL 411608, at *2 (N.D. Ill. Mar. 15, 2002) (magistrate judge's determination that tax returns should be protected because they were, as a matter of public policy, presumptively confidential, was not clearly erroneous). Thus, in addition to the fact that production of the complete tax returns would be duplicative, the special consideration given to those highly confidential documents militates against compelling their disclosure.

## V.   ASSUMING THE COURT GRANTS EAST CHICAGO'S MOTION TO COMPEL, THERE IS NO REASON TO DELAY RULING ON THE MOTION TO REMAND.

For the reasons set forth above, Morgan Lewis maintains that East Chicago's Motion to Compel is without merit and must be denied. Even assuming, however, that the Court were to grant the motion and compel production of the documents requested, there would be no reason for the Court to delay its ruling on the Motion to Remand, which is set for July 31, 2008 per the Court's June 9, 2008 Order. (Docket 17.) The numerous documents Morgan Lewis already has produced more than adequately substantiate Morgan Lewis's assertion that Mr. Lubar and Ms. Yano are United States citizens domiciled abroad, and the declaration and deposition testimony of Ms. D'Agostino further support this position.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, Morgan Lewis respectfully requests that the Court enter an order denying East Chicago's Motion to Compel, and granting any further relief the Court deems just.

Dated: July 22, 2008                                    Respectfully submitted,


                                                        /s/ Tina B. Solis
                                                        One of the Attorneys for
                                                        MORGAN, LEWIS & BOCKIUS
                                                        LLP

                                                        F. Thomas Hecht (ARDC #1168606)
                                                        Tina B. Solis (ARDC #6242461)
                                                        Seth A. Horvath (ARDC #6283110)
                                                        Ungaretti & Harris LLP
                                                        3500 Three First National Plaza
                                                        Chicago, Illinois 60602
                                                        Telephone (312) 977-4400
                                                        Facsimile (312) 977-4405

## SERVICE OF DOCUMENTS BY ELECTRONIC MEANS

I, Tina B. Solis, an attorney, certify that service of this document was accomplished pursuant to ECF on all Electronic Filing Users of record this 22nd day of July 2008.

                                                        /s/ Tina. B. Solis

# EXHIBIT A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ ILLINOIS

MORGAN, LEWIS & BOCKIUS LLP

V.

CITY OF EAST CHICAGO

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 08-cv-2748

TO:  CLARE D'AGOSTINO
c/o F. Thomas Hecht/Tina B. Solis, UNGARETTI & HARRIS
3500 Three First National Plaza, Chicago, IL 60602

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case  telephonically.

| PLACE OF DEPOSITION  Telephonically at EICHHORN & EICHHORN, LLP (with Court Reporter) 200 Russell Street, Hammond, IN 46325 | DATE AND TIME 7/3/08 2:00 p.m. EDT |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all documents responsive to the June 19, 2008 First Requests For Production Of Documents and Requests for Admission, Supporting Interrogatory, And Supporting Request For Production of the Defendant, City of East Chicago.

| PLACE       Telephonically at EICHHORN & EICHHORN, LLP (with Court Reporter) 200 Russell Street, Hammond, IN 46325 | DATE AND TIME 7/3/08 2:00 p.m. EDT |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _Attorney for the Defendant_ | DATE 7/1/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David C. Jensen, Robert J. Feldt, EICHHORN & EICHHORN, LLP, 200 Russell Street, Hammond, IN 46325

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | 7/1/2008 | 200 Russell Street<br>Hammond, IN 46325 |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| CLARE D'AGOSTINO<br>c/o F. Thomas Hecht/Tina B. Solis | | Overnight Mail and E-mail as PDF attachment |
| SERVED BY (PRINT NAME) | | TITLE |
| Robert J. Feldt | | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____7/1/2008_____
                              DATE

_____
SIGNATURE OF SERVER

ADDRESS OF SERVER

200 Russell Street, Hammond, IN 46325

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT B

1          IN THE DISTRICT COURT OF THE UNITED STATES

            FOR THE NORTHERN DISTRICT OF ILLINOIS

2               EASTERN DIVISION

3

    MORGAN, LEWIS & BOCKIUS LLP,   )

4                           )

            Plaintiff,     )

5                           )

        -vs-             ) No. 08 CV 2748

6                           )

    CITY OF EAST CHICAGO,       )

7                           )

            Defendant.     )

8

9

10       Deposition of CLARE D'AGOSTINO via telephone, taken

11   before DONNA L. POLICICCHIO, C.S.R., and Notary Public,

12   pursuant to the Federal Rules of Civil Procedure for the

13   United States District Courts pertaining to the taking of

14   depositions, at 200 Russell Street, Eighth Floor,

15   Hammond, Indiana, commencing at 1:02 p.m., on the 3rd day

16   of July, 2008.

17

18

19

20

21

22

23

24

1    become assistant counsel to the firm, it was actually

2    called assistant to the firm managing partner,

3    because at that point the person who led the firm,

4    the title was firm managing partner.  Today it

5    happens to be firm chair in the reorganization that

6    we undertook some ten years ago probably at this

7    point.  And I began assisting the firm managing

8    partner with a variety of issues affecting the firm,

9    legal type issues, but primarily my responsibilities

10   were in the area of risk management, particularly

11   with regards to new business intake, and I continued

12   my responsibilities working very closely with lateral

13   partners.

14         Over the years as the firm has grown and my

15   experience level has grown, I have undertaken more

16   responsibilities.  I assist with many contractual

17   issues where the firm is contracting to acquire goods

18   or services other than in the area of real estate

19   where our real estate specialists take care of that.

20   And I continue to be involved with risk management,

21   conflicts of interest issues, assisting our partners

22   in resolving those issues, sometimes working directly

23   with clients on those issues, and generally assisting

24   the partnership in the area of professional

1   responsibility and also fiduciary review.

2      Q   Okay.  Are you a U.S. citizen?

3      A   I am.

4      Q   Born here or naturalized?

5      A   Naturalized.

6      Q   When was that?

7      A   July 2000.

8      Q   All right.  Can you tell me when you started

9   to go to law school?

10     A   I started in August of 1989.

11     Q   Okay.  And when did you complete law school?

12     MR. SOLIS:  I'm sorry there, Mr. Feldt.  You cut

13   out.  If you could repeat that question.

14   BY MR. FELDT:

15     Q   When did you complete law school?

16     A   I completed law school December of 1992.

17     Q   Where did you go to law school?

18     A   Temple University School of Law in

19   Philadelphia.

20     Q   And you obtained a Juris Doctorate?

21     A   I did.

22     Q   And can you briefly summarize your college

23   education prior to that time?

24     A   I obtained a bachelor degree from the

1    works out of the London office?

2        A    That is correct.  It is a term that we use

3    here when we talk about where partners -- anyone is

4    working, I would say they are resident in, Mr. Lubar,

5    the London office.  If someone was speaking about me,

6    they would say I am resident in the Philadelphia

7    office.

8        Q    And when you say "here," you mean within

9    Morgan Lewis?

10       A    Yes, within Morgan Lewis.  That's how we talk

11   about people's office location.

12       Q    Now, you indicate in Paragraph 3 "Mr. Lubar

13   has no immediate plans to leave the United Kingdom

14   and to return to the U.S. to live on a permanent

15   basis."

16           What is that based upon?

17       A    That is based upon interaction with

18   Mr. Lubar, I believe it was via e-mail, asking him

19   about his intent.

20       Q    Okay.  And when was the e-mail?

21       A    Around the end of May or the beginning of

22   June.

23       Q    All right.  Did you initiate the e-mail?

24       MS. SOLIS:  I'm sorry.  You cut out a little bit,

1    Rob.  Can we have that one again?

2    BY MR. FELDT:

3        Q    Did you initiate the e-mail?

4        A    I don't remember.

5        Q    Do you recall if he sent the e-mail in

6    response to a phone call from you?

7        A    I do not remember.

8        Q    Do you recall if he sent the e-mail in

9    response to some form of question from you regardless

10   of whether it took an electronic or a telephone form?

11       A    It would have been definitely in relation to

12   a question.  I do not recollect whether it was via

13   telephone, via e-mail.  I specifically recollect that

14   we were in touch with Mr. Lubar to let him know that

15   I needed to make a declaration similar to before and

16   that we needed to discuss issues that had already

17   been discussed in preparation for an earlier

18   declaration.

19       Q    Okay.

20       A    That's my recollection.

21       Q    And when you say an earlier declaration, you

22   mean in the Swiger case?

23       A    I do.

24       MR. FELDT:  Okay.  I got to ask, Tina, do you

1  have this e-mail?  Are you aware of this e-mail?

2      MS. SOLIS:  Are you making a request for it?

3      MR. FELDT:  I thought we did.

4      MS. SOLIS:  I do not have it, but that does not

5  mean that I cannot ask the client for it.

6      MR. FELDT:  Okay.  Well, maybe you're answering

7  my question.  You didn't see it and determine it to

8  be nonresponsive?

9      MS. SOLIS:  My answer is the same as it was when

10  we spoke the other day.

11      MR. FELDT:  Okay.  Well, I personally think it's

12  responsive to our requests.

13      MS. SOLIS:  I think a lot of that depends who

14  else may be on that e-mail, but --

15      MR. FELDT:  Well, I obviously don't know anything

16  about that.

17  BY MR. FELDT:

18      Q   Ms. D'Agostino, without talking about who

19  else may have received the e-mail, other information

20  that may be in the e-mail other than specifically

21  with regard to the statement that serves as the basis

22  for this sentence in Paragraph 3, "Mr. Lubar has no

23  immediate plans to leave the United Kingdom and to

24  return to the U.S. to live on a permanent basis," do

1     you recall the text that Mr. Lubar used to convey

2     that thought to you that resulted in this sentence in

3     Paragraph 3 of your declaration?

4          A    Not specifically.

5          Q    Did he specifically use the word "permanent"?

6          MS. SOLIS:  Objection.  Asked and answered.

7     BY MR. FELDT:

8          Q    This is more precise, but is the word

9     "permanent" --

10         MS. SOLIS:  She can't recall what he said, but go

11    ahead.

12    BY MR. FELDT:

13         Q    Is the word "permanent" your word or his?

14         A    I don't remember.

15         Q    Okay.  Then I guess I want to ask you the

16    same question about the sentence in Paragraph 4 that

17    deals with "partner resident," and is that the same

18    as you said about Mr. Lubar that it means she works

19    in the Tokyo office?

20         A    It is, that's correct.

21         Q    Then there is a sentence, "Ms. Yano has

22    resided in Japan continuously since 1992."

23              What is that based upon?

24         A    That is based upon telephone communication,

1    e-mail communication between Ms. Yano and I when we

2    were establishing certain facts about Ms. Yano not

3    having had the benefit of earlier preparation as we

4    did with Mr. Lubar and is he ready to make this

5    statement.

6        Q    You mean oral information in discussing it

7    with her specifically?

8        A    Yes.  I specifically recollect leaving voice

9    mail messages, receiving voice mail messages, and I

10   do believe there was an e-mail too.  The time

11   difference between Philadelphia and Tokyo sometimes

12   makes direct person-to-person communication sometimes

13   difficult, so we find ourselves sometimes exchanging

14   voice mails or e-mails, of course.

15       Q    I understand that.  I guess I would have a

16   similar comment about any e-mail, that it's

17   responsive, but let me move on to the voice mail

18   message.

19            Assuming that there was a voice mail

20   message, is that something you retained?

21       A    It is not.

22       Q    In Paragraph 4 there is a sentence "Ms. Yano

23   has no immediate plans to leave Japan and to return

24   to the U.S. to live on a permanent basis."

1          Where does that information come from?

2      A    From either the exchange of voice mails or

3    the exchange of e-mails.  The exact one of those two

4    places I cannot answer at this point.

5      Q    Can you recall ever specifically discussing

6    not via some voice mail recorded or e-mail but

7    actually talking directly on the telephone or in

8    person with Ms. Yano about whether she intends to

9    stay in Japan or leaving Japan or return to the U.S.?

10     A    No, not person to person.

11     Q    And the word "permanent" in that sentence, do

12   you recall if that came from her in the voice mail or

13   e-mail, whatever form the communication took, or is

14   that your word?

15     A    I do not recollect.

16     MR. FELDT:  All right.  I'll pass the witness.

17                      EXAMINATION

18   BY MS. SOLIS:

19     Q    Ms. D'Agostino, I just have a couple

20   follow-up questions.

21          Do you remember when Mr. Feldt was asking

22   you the last time you saw Mr. Lubar person to person?

23   Do you remember that line of questioning?

24     A    Yes.

1      MR. FELDT:  No problem.

2    BY MS. SOLIS:

3      Q    Ms. D'Agostino, do you recall when Mr. Feldt

4    was asking you about your duties and responsibilities

5    as assistant counsel to the firm?

6      A    Yes.

7      Q    Do part of your duties and responsibilities

8    include making disclosures in which you must identify

9    Morgan Lewis partners who are domiciled abroad?

10     A    They do.

11     Q    Can you tell us a little bit about that

12   without giving away any client names or confidences,

13   please?

14     A    I can describe two -- I hope that will be

15   helpful -- very generically without having to

16   disclose client confidences.  On a periodic basis,

17   generally on an annual basis, we need to make

18   disclosure of foreign ownership, influence, and

19   control as a part of which we disclose the names and

20   locations of all of our partners, their citizenships,

21   and the ownership percentage that they have of part

22   of the firm, and the purpose of this is for the

23   United States government to understand what

24   percentage is owned by U.S. citizens and what

1    percentage is owned by people who are not citizens of

2    the United States.  Separately we -- this is a

3    twice-a-year basis -- do a survey of all of our

4    partners to ensure that we are in compliance with the

5    Foreign Agents Registration Act statement, because

6    particular representation actually is not active at

7    the moment.  We're not required to make the filing,

8    but we go ahead and do the twice yearly survey asking

9    partners various questions.  And I specifically

10   recollect when Ms. Yano joined the firm that she

11   declared herself as a U.S. citizen, and we have that

12   information as a part of the survey.

13       Q    And as part of your duties and responsibility

14   as assistant counsel to the firm, does that also

15   include having knowledge of where partners of Morgan

16   Lewis are subject to taxation?

17       A    It does.

18       Q    And what part of your duties and

19   responsibilities does that cover?

20       A    We have an entire department who are

21   responsible for partner taxation issues.  My

22   involvement is because typically the people in that

23   department reach out to me and inquire about the

24   citizenship of partners who have recently been

1    admitted either because they have been promoted or

2    because they have lateraled in.

3        Q    And, finally, I believe you've already

4    testified about this, but prior to preparing your

5    declaration in this action, you spoke with Mr. Lubar

6    to verify the information stated in your declaration?

7        A    We either spoke or exchanged e-mails.    In

8    talking about it, I cannot remember which it was.

9        Q    And same question with respect to Ms. Yano.

10    Prior to preparing your declaration, you verified the

11    information contained therein about Ms. Yano prior to

12    signing -- prior to preparing and signing your

13    declaration, correct?

14        A    Most certainly, yes.

15        Q    And as you sit here today, Ms. D'Agostino, is

16    it your understanding that Mr. Lubar currently

17    resides in the United Kingdom?

18        A    It is.

19        Q    As you sit here today, is it your

20    understanding, Ms. D'Agostino, that Mr. Lubar has no

21    immediate plans whatsoever to leave the United

22    Kingdom and return to the U.S.?

23        A    It is.

24        Q    And as you sit here today, is it your

1     understanding that Ms. Yano resides in Tokyo, Japan?

2          A     It is.

3          Q     And as you sit here today, Ms. D'Agostino, is

4     it your understanding that Ms. Yano has no immediate

5     plans to leave Japan and return to the United States

6     to live?

7          A     It is.

8          MS. SOLIS:     That's all I have.     Thank you very

9     much for your time today, ma'am.

10                       FURTHER EXAMINATION

11     BY MR. FELDT:

12          Q     Ms. D'Agostino, I just have a little bit of

13     follow-up.

14               The last two questions about Mr. Lubar and

15     your statements in the declaration, all of that

16     information is based upon information given to you by

17     Mr. Lubar about where he lives and where he intends

18     to stay?

19          A     It is.

20          Q     And it's not based upon any personal

21     knowledge of your own, correct?

22          MS. SOLIS:     Objection.     Other than her testimony

23     about when she's seen him in London in the office and

24     things of that nature, correct?

1                        FURTHER EXAMINATION

2     BY MS. SOLIS:

3         Q    I just have two follow-up questions.

4              When you spoke with Mr. Lubar about the

5     information contained in your declaration, did you

6     expect him to give you truthful and accurate answers?

7         A    I did.

8         Q    And when you spoke to Ms. Yano about her

9     information contained in your declaration, did you

10    expect her to give you truthful and accurate answers?

11        A    I did.

12        Q    Any reason to think that Mr. Lubar was not

13    truthful or accurate with you?

14        A    Not at all.

15        Q    Any reason to think that Ms. Yano was not

16    truthful or accurate with you?

17        A    No, not at all.

18        MS. SOLIS:   Thank you very much.   I'll pass the

19    witness back, if there is anything else.

20        MR. FELDT:   Sure.

21                        FURTHER EXAMINATION

22    BY MR. FELDT:

23        Q    If I asked Mr. Lubar those questions about

24    his intent, would there be a reason for him to be

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 2748 |
| | ) | Judge Pallmeyer |
| CITY OF EAST CHICAGO, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO
## DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Morgan, Lewis & Bockius LLP ("Plaintiff" or "Morgan Lewis"), hereby serves its Responses and Objections to Defendant the City of East Chicago's ("Defendant" or "East Chicago") First Requests for Production of Documents. Morgan Lewis reserves the right to supplement or amend its Objections and Responses to these Requests for Production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

Morgan Lewis objects generally to East Chicago's First Requests for Production of Documents to the extent that they call for information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or defense.

Morgan Lewis also objects generally to East Chicago's First Requests for Production of Documents to the extent they impose burdens, obligations, or requirements in excess of those required or permitted by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, or any other applicable rule or order issued by the Court.

more specifically.

## SPECIFIC OBJECTIONS AND/OR RESPONSES
### (in addition to all General Objections)

### REQUESTS FOR DOCUMENTS

**1.**    **All documents upon which Ms. Clare D'Agostino relied with regard to her Declaration of June 4, 2008.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds that Clare

D'Agostino ("Ms. D'Agostino") relied on documents maintained by Morgan Lewis in the

ordinary course of business, including information from various files and/or databases on

residence and the information available on the Morgan Lewis website regarding Charles

Lubar ("Mr. Lubar") and Lisa Yano ("Ms. Yano").  This information and documents

relevant to the Motion to Remand will be produced.

**2.**    **All documents utilized as the basis for the representations about Mr. Lubar's citizenship, domicile or partnership in the *Swiger* matter, Civil Action No. 05-CV-5725, United States District Court for the Eastern District of Pennsylvania.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first

page of Mr. Lubar's 2005 United Kingdom tax return (ML00128); the first page of Mr.

Lubar's 2004 United States tax return (ML00129); statements for bar dues paid by Mr.

Lubar in 2004 and 2005 to the Maryland Bar; (ML00130-131); statements for bar dues

paid by Mr. Lubar in 2004 and 2005 to the District of Columbia Bar (as an inactive

member) (ML00132-133); a November 2005 statement from the Law Society regarding

Mr. Lubar's registration as a Registered Foreign Lawyer (ML00134); Mr. Lubar's

Washington, D.C. driver's license (ML00136); a June 2006 bank statement from Mr.

Lubar's bank account with Coutts Bank, Geneva, Switzerland (ML00137); a July 2006

bank statement from Mr. Lubar's bank account with SunTrust Bank, Orlando, Florida,

1175436-2                                   3

which account is located in Washington, D.C. (ML00138-139); a 2004 interest statement

from an account with Fleet National Bank, Scranton, Pennsylvania, relating to Mr.

Lubar's payment of New York real estate tax (ML00147); a May 2006 statement from

Mr. Lubar's Citigroup Global Markets, Inc. brokerage account (ML00140); January 2006

and March 2006 Chase mortgage loan statements for Mr. Lubar's apartment in New

York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for

Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for

payment of property maintenance fees for residential property owned by Mr. Lubar in

London, United Kingdom (ML00144); a January 2006 statement for payment of property

maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a

January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment

in New York, New York (ML00146); a 2004 United States tax return mortgage interest

statement for Mr. Lubar's apartment in New York, New York (ML00148).  Each of these

documents is redacted so as not to reflect any confidential personal information.

     **3.**     **All documents which refer to Mr. Lubar's citizenship and/or domicile.**

     **OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce all of the

documents described in response to Request No. 2 (ML00128-48), as well as Mr. Lubar's

United Kingdom passport (ML00001-0037); Mr. Lubar's United States passport

(ML00038-00067); Mr. Lubar's certificate of naturalization as a British citizen

(ML00155); Mr. Lubar's business card (ML00069); Mr. Lubar's letterhead (ML00070); a

statement for bar dues paid in 2007 by Mr. Lubar to the Maryland Bar (ML00071); a

statement for bar dues paid in 2008 by Mr. Lubar to the District of Columbia Bar (as an

inactive member) (ML00075); Mr. Lubar's 2006 application for renewal as a Registered

1175436-2                4

Foreign Lawyer (ML00072); a 2008 statement from the Law Society regarding Mr. Lubar's registration as a Registered Foreign Lawyer (ML00073); a June 24, 2008 e-mail from the Solicitors Regulation Authority confirming that Mr. Lubar is a Registered Foreign Lawyer (ML00074); a June 27, 2008 statement from the Solicitors Regulation Authority regarding Mr. Lubar's registration as a Registered Foreign Lawyer (ML00156); the cover sheet of Mr. Lubar's 2006 U.S. tax return (ML00076); the first page of Mr. Lubar's 2006 United States tax return (ML00077); Form 2555 of Mr. Lubar's 2006 United States tax return (ML00078-80); Form 1042-S of Mr. Lubar's 2007 United States tax return (ML00081); the first and second pages of Mr. Lubar's 2007 United Kingdom tax return (ML00082-83); September 2007 and May 2008 account statements from SunTrust Bank, Orlando, Florida which account is located in Washington, D.C. (ML00084-85); a March 2008 account statement for Leumi Bank, Jersey (ML00086); a March 2008 account statement from Citibank, New York, New York (ML00087); a January 2007 account statement from Coutts & Co. Bank, London, United Kingdom (ML00088); a June 2008 statement regarding Mr. Lubar's payment of rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008 electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a January 2008 tax bill for residential property owned by Mr. Lubar in London, United Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for Mr. Lubar's payment of property maintenance fees for his apartment in New York, New

1175436-2                          5

York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102). Each of these documents is redacted so as not to reflect any confidential personal information.

    **4.**    **All documents which refer to Ms. Yano's citizenship and/or domicile.**

    **OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the first page of Ms. Yano's United States passport (ML00105); Ms. Yano's Japanese driver's license (ML00107); Ms. Yano's Certificate of Alien Registration (ML00106); a statement for bar dues paid in 2008 by Ms. Yano to the California Bar (ML00109); a statement for bar dues paid in 2006 by Ms. Yano to the New York Bar (ML00111); a 2007 statement acknowledging Ms. Yano's change of attorney registration information for the New York Bar (ML00112); a 2008 statement from the New York State Unified Court System regarding Ms. Yano's registration as a member of the New York Bar (ML00110); Ms. Yano's Notice for Registration as Foreign Lawyer in Japan (ML00113-115); the Governmental Gazette providing notice of Ms. Yano's registration as a Foreign Lawyer; (ML00116); Ms. Yano's business card (ML00108); the first page of Ms. Yano's 2006 United States tax return (ML00117); an April 2008 bank account statement from Citibank (ML00118); a May 2008 consolidated bank and brokerage account statement from Citibank (ML00119); a May 2008 brokerage account statement from Fidelity Investments (ML00120); a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken,

1175436-2           6

Japan (ML00125-127); a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124). Each of these documents is redacted so as not to reflect any confidential personal information.

**5.    Any document related to or showing that any individual classified as or considered to be a partner with Morgan Lewis is a citizen or domiciliary of the State of Indiana, and for each such individual, provide all partnership documents.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis responds by stating that there are no responsive documents to this request in Morgan Lewis' possession, custody, or control.

**6.    All partnership agreements which form the basis for Plaintiff's claims that Mr. Lubar and Ms. Yano are partners of Morgan Lewis.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis objects to this request on the grounds that it is beyond the discovery authorized by the Court on issues related to the Motion to Remand. It is not reasonably calculated to lead to the discovery of admissible evidence. Morgan Lewis further responds by stating that information confirming Mr. Lubar and Ms. Yano's status as Morgan Lewis partners is publicly available on Morgan Lewis' website, on the Martindale-Hubbell Law Directory, and from various other similar sources. Morgan Lewis further responds by producing the letterhead of Mr. Lubar (ML00070) and the business card of Ms. Yano (ML00108), which acknowledge the status of each as "Partner."

**7.    All documents which reflect an ownership or occupancy interest in real property held by Mr. Lubar and Ms. Yano, respectively, between January 1, 2002 and the present date.**

**OBJECTIONS AND/OR RESPONSE:** Morgan Lewis will produce the following documents regarding Mr. Lubar: January 2006 and March 2006 Chase

1175436-2                                    7

mortgage loan statements for Mr. Lubar's apartment in New York, New York (ML00142-143); a June 2006 Citibank mortgage account statement for Mr. Lubar's apartment in New York, New York (ML00141); a July 2006 statement for payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00144); a January 2006 statement for payment of property maintenance fees for Mr. Lubar's apartment in New York, New York (ML00145); a January 2005 statement regarding payment of real estate taxes for Mr. Lubar's apartment in New York, New York (ML00146); a 2004 United States tax return mortgage interest statement for Mr. Lubar's apartment in New York, New York (ML00148); a June 2008 statement regarding Mr. Lubar's payment of rent for his apartment in London, United Kingdom (ML00096-97); a January 2008 gas bill for Mr. Lubar's apartment in London, United Kingdom (ML000103); an April 2008 electric bill for Mr. Lubar's apartment in London, United Kingdom (ML00104); a January 2008 tax bill for residential property owned by Mr. Lubar in London, United Kingdom (ML00100); April 2008 and June 2008 statements for Mr. Lubar's payment of property maintenance fees for residential property owned by Mr. Lubar in London, United Kingdom (ML00089, 00092-95); July 2007 and September 2007 statements for Mr. Lubar's payment of property maintenance fees for his apartment in New York, New York (ML00090-91); April 2008 and May 2008 Citibank mortgage account statements for Mr. Lubar's apartment in New York, New York (ML00098-99); and July 2007 and October 2007 gas and electric bills for Mr. Lubar's apartment in New York, New York (ML00101-102).

Morgan Lewis will produce the following documents regarding Ms. Yano: a May 2008 Citibank mortgage loan statement for residential property owned by Ms. Yano in

1175436-2                              8

Kanagawa-Ken, Japan (ML00121-123); a 2008 property registration statement for residential property owned by Ms. Yano in Kanagawa-Ken, Japan (ML00125-127); and a 2008 tax bill for Ms. Yano's condominium in Tokyo, Japan (ML00124).

**8.    All documents the Plaintiff utilized in preparing the purported data regarding Mr. Lubar that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
    **http://www.morganlewis.com/index.cfm/personID/4c4115b6-f068-4acf-99ae-66b044 b64144/fromSearch/1/fuseaction/people.viewBio.**

**OBJECTIONS AND/OR RESPONSE:** East Chicago's request for documents encompasses numerous pieces of information and data on Morgan Lewis' website, including, *inter alia*, Mr. Lubar's photograph, practice areas, and civic involvements. Documentation regarding this information clearly is irrelevant to the issues presented by the Motion to Remand in the above-captioned action. In addition, the term "purported data" is vague and undefined, and Morgan Lewis has no basis for determining what information the term refers to. Subject to and without waiver of these objections, Morgan Lewis responds by stating that, upon information and belief, the information in Mr. Lubar's biography on the Morgan Lewis website is based on communications with Mr. Lubar, as well as documents maintained by Morgan Lewis in the ordinary course of business, including information from various files and/or databases. Morgan Lewis further responds by stating that some of the information on Mr. Lubar's biography is publicly available information accessible through the Martindale-Hubbell Law Directory and various other similar sources.

**9.    All documents the Plaintiff utilized in preparing the purported data regarding Ms. Yano that appears on the Plaintiff's website, which can be found on the World Wide Web at:**
    **http://www.morganlewis.com/index.cfm/personID/6ad4225b-629b-42b0-813e-28cc993cc35a/fromSearch/1/fuseaction/people.viewBio.**