IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, ) | |
|     Plaintiff, ) | No. 08-cv-2748 |
| v. ) | |
| CITY OF EAST CHICAGO, ) | Judge: Rebecca R. Pallmeyer |
|     Defendant. ) | Magistrate Judge: |
| ) | Sidney I. Schenkier |

**REPLY BRIEF OF THE DEFENDANT, CITY OF EAST CHICAGO, IN SUPPORT OF ITS MOTION TO STRIKE THE AFFIDAVIT OF MS. CLARE D'AGOSTINO**

The Defendant, City of East Chicago, ("East Chicago"), by its attorneys, Eichhorn & Eichhorn, LLP, states as follows for its Reply Brief filed in support of its Motion To Strike The Affidavit Of Clare D'Agostino, ("Ms. D'Agostino"), [DE25, 26]:

**I. INTRODUCTION**

The Plaintiff, Morgan, Lewis & Bockius LLP, chose not to support its Motion To Remand, [DE14, 15], with testimony from the two witnesses who it claims are the basis for this Court's lack of subject matter jurisdiction, Mr. Charles Lubar and Ms. Lisa Yano. Instead, the Plaintiff has proffered the testimony of one of its attorneys, Ms. D'Agostino. [DE14 and DE15, Exhibit A, ¶1 and generally] When she was deposed, however, Ms. D'Agostino confirmed that the averments in ¶¶3 and 4 of her Affidavit, including her assertions as to Mr. Lubar's and Ms. Yano's intent not to return to the U.S., were based upon hearsay statements made by them as a result of her preparation of her Affidavit for this litigation weeks after East Chicago's Notice Of Removal was filed. [DE25, Exhibit A, Deposition of Clare D'Agostino, pp. 68-74, 81.)[1]

The Plaintiff has chosen to cloister from the truth-seeking discovery process the two witnesses who have the actual personal knowledge which is material to its Motion To Remand and

---

[1] East Chicago incorporates in this Reply Brief by this reference its Motion To Strike and its supporting Brief in their entireties and with all exhibits. [DE25, 26]

it must live with the consequences of its decision. Because paragraph nos. 3-4 of Ms. D'Agostino's Affidavit are based upon inadmissible hearsay, they should be stricken. Without those paragraphs, the remaining portions of her Affidavit contain no material information as to Mr. Lubar's or Ms. Yano's domicile. Moreover, because Ms. D'Agostino's Affidavit is based in part upon information and documents which the Plaintiff has refused to produce or which it may have spoliated, her Affidavit should be stricken for this additional reason. [DE23-26, 39]

## II.  ARGUMENT

The Plaintiff does not dispute the fact that affidavits must be based upon personal knowledge. *America's Best Inns, Inc. v. Best Inns of Abilene*, 980 F.2d 1072, 1074 (7th Cir. 1992). [DE35, p. 2] Several of the factual allegations contained in Ms. D'Agostino's Declaration are conclusory and she has admitted that they are based upon hearsay rather than her own personal knowledge, [DE15, Exhibit A, ¶¶3-4]; [DE25, Exhibit A, pp. 68-74, 81]:

By Mr. Feldt:

Q       Now, you indicate in Paragraph 3 "Mr. Lubar has no immediate plans to leave the United Kingdom and to return to the U.S. to live on a permanent basis."

       What is that based upon?

A       That is based upon interaction with Mr. Lubar, I believe it was via e-mail, asking him about his intent.

Q       Okay. And when was the e-mail?

A       Around the end of May or the beginning of June.

Q       All right. Did you initiate the e-mail?

Ms. Solis:     I'm sorry. You cut out a little bit, Rob. Can we have that one again?

By Mr. Feldt:

Q Did you initiate the e-mail?

A I don't remember.

Q Do you recall if he sent the e-mail in response to a phone call from you?

A I do not remember.

Q Do you recall if he sent the e-mail in response to some form of question from you regardless of whether it took an electronic or a telephone form?

A It would have been definitely in relation to a question. I do not recollect whether it was via telephone, via e-mail. I specifically recollect that we were in touch with Mr. Lubar to let him know that I needed to make a declaration similar to before and that we needed to discuss issues that had already been discussed in preparation for an earlier declaration.

* * *

By Mr. Feldt:

Q Ms. D'Agostino, without talking about who else may have received the e-mail, other information that may be in the e-mail other than specifically with regard to the statement that serves as the basis for this sentence in Paragraph 3, "Mr. Lubar has no immediate plans to leave the United Kingdom and to return to the U.S. to live on a permanent basis," do you recall the text that Mr. Lubar used to convey that thought to you that resulted in this sentence in Paragraph 3 of your declaration?

A Not specifically.

Q Did he specifically use the word "permanent"?

Ms. Solis: Objection. Asked and answered.

By Mr. Feldt:

Q This is more precise, but is the word "permanent" - -

Ms. Solis: She can't recall what he said, but go ahead.

By Mr. Feldt:

Q      Is the word "permanent" your word or his?

A      I don't remember.

Q      Okay. Then I guess I want to ask you the same question about the sentence in Paragraph 4 that deals with "partner resident," and is that the same as you said about Mr. Lubar that it means she works in the Tokyo office?

A      It is, that's correct.

Q      Then there is a sentence, "Ms. Yano has resided in Japan continuously since 1992."

What is that based upon?

A      That is based upon telephone communication, e-mail communication between Ms. Yano and I when we were establishing certain facts about Ms. Yano not having had the benefit of earlier preparation as we did with Mr. Lubar and is he ready to make this statement.

Q      You mean oral information in discussing it with her specifically?

A      Yes. I specifically recollect leaving voice mail messages, receiving voice mail messages, and I do believe there was an e-mail too. The time difference between Philadelphia and Tokyo sometimes makes direct person-to-person communication sometimes difficult, so we find ourselves sometimes exchanging voice mails or e-mails, of course.

Q      I understand that. I guess I would have a similar comment about any e-mail, that it's responsive, but let me move on to the voice mail message.

Assuming that there was a voice mail message, is that something you retained?

A      It is not.

Q      In Paragraph 4 there is a sentence "Ms. Yano has no immediate plans to leave Japan and to return to the U.S. to live on a permanent basis."

Where does that information come from?

| | |
|---|---|
| A | From either the exchange of voice mails or the exchange of e-mails. The exact one of those two places I cannot answer at this point. |
| Q | Can you recall ever specifically discussing not via some voice mail recorded or e-mail but actually talking directly on the telephone or in person with Ms. Yano about whether she intends to stay in Japan or leaving Japan or return to the U.S.? |
| A | No, not person to person. |
| Q | And the word "permanent" in that sentence, do you recall if that came from her in the voice mail or e-mail, whatever form the communication took, or is that your word? |
| A | I do not recollect. |

\* \* \*

By Mr. Feldt:

| | |
|---|---|
| Q ... | Do you have any information about Mr. Lubar's intent as to where he will live or where he has considered to be his domicile other than what he has told you? |
| A. | I have not. |
| Q | Do you have any information about Ms. Yano's intent about where she intends to live or where she has intended to live in the past or what she considers to be her domicile other than what she has told you? |
| A. | I have not. |

[DE25, Exhibit A, p. 69, line 12-p. 70, line 18, p. 71, line 18-p.74, line 15, p. 81, lines 12-22]

While the Plaintiff suggests that Ms. D'Agostino relied on "business records" as to Mr. Lubar's and Ms. Yano's state of mind as to their domicile at the relevant time, [DE35, p.2], it has not identified a single "business record" which sets forth that intent as of May 12, 2008, nor did Ms. D'Agostino, and this assertion is belied by her above testimony. [DE25, Exhibit A, p. 69, line 12- p. 70, line 18, p. 71, line 18-p.74, line 15, p. 81, lines 12-22] She admits that she did not rely upon

documents 1-148 produced by the Plaintiff for her "Declaration." (See attached Exhibit A, Ms. D'Agostino's Deposition, p. 65); [DE25, Exhibit B, p. 3, Response to Request No. 1]. This means that her information is limited to the attachments to her "Declaration" or the Plaintiff failed to produce the documents. (See attached Exhibit A, p. 65; [DE25, Exhibit B, p. 3, Response to Request No. 1 and [DE15, Exhibit A].)

Certain information such as where taxes are paid or work addresses may be contained within the Plaintiff's "business records," but not her testimony as to the material issue here, Mr. Lubar's and Ms. Yano's state of mind as to their domicile at the relevant time. [DE25, Exhibit A, p. 69, line 12-p. 70, line 18, p. 71, line 18-p.74, line 15, p. 81, lines 12-22] While the Plaintiff discusses at length Ms. D'Agostino's general job duties and her knowledge as to the partnership's business responsibilities, [DE35, pp. 3-4], none of this discourse has anything to do with Mr. Lubar's or Ms. Yano's intent as to their personal places of domicile as of May 12, 2008. Obviously, that is why she had to ask them. [DE25, Exhibit A, p. 69, line 12-p. 70, line 18, p. 71, line 18-p.74, line 15, p. 81, lines 12-22] The reference in her testimony at pp. 77-78 as to her in documenting partners' citizenship, [DE35, p. 3] is a reference to U.S. v. foreign citizenship, not domicile. [DE35, Exhibit A, pp. 77-78] Likewise, the information she provides is limited to office work addresses, which would have nothing to do with a partner's place of domicile or even their home residence. [DE25, Exhibit A, pp. 31-34, 46-50]; (see attached Exhibit A, pp. 63-65)

Thus, Ms. D'Agostino clearly does not have personal knowledge herself of the intent of either Mr. Lubar or Ms. Yano regarding whether they planned to "return to the United States," [DE15, Exhibit A, ¶¶3-4]; [DE25, Exhibit A, pp. 68-74, 81], and the Plaintiff has not demonstrated otherwise. [DE35] She admitted at her deposition that the only way she supposedly acquired

knowledge of Mr. Lubar's and Ms. Yano's private intentions and beliefs was to ask them in the course of preparing her "Declaration." [DE25, Exhibit A, pp. 68-74, 81] This means that her Affidavit is inadmissible hearsay. Fed.R.Evid. 801-802; *U.S. v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *Robinson Engineering Co. Pension Plan and Trust v. George*, 223 F.3d 445, 451-52 (7th Cir. 2000). [DE25, Exhibit A, pp. 68-74, 81]

For this reason, the Plaintiff's opposition to East Chicago's Motion To Strike hinges upon the rather novel argument that Fed.R.Evid. 803(3) allows a witness to testify through his or her attorney. Seventh Circuit law is well-settled in this regard; hearsay testimony such as is contained in paragraph nos. 3 and 4 of Ms. D'Agostino's Affidavit is inadmissible. Fed.R.Evid. 802; *U.S. v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992); *U.S. v. Harvey*, 959 F.2d 1371, 1375 (7th Cir. 1992); *U.S. v. Harris*, 942 F.2d 1125, 1130 (7th Cir. 1991); *U.S. v. Carter*, 910 F.2d 1524 (7th Cir. 1990). In *Peterson*, the Seventh Circuit rejected an affidavit from a defendant's attorney which proffered the hearsay assertions of his client. 414 F.3d at 827. The defendant in *Harvey* also was not allow to elicit statements he supposedly made to a witness that he thought certain funding sources were "hustlers" even though made outside the context of litigation because the circumstances did not show that the defendant did not have time reflect on his response. *Harvey*, 959 F.2d at 1375. The court in *U. S. v. Neeley*, 980 F.2d 1074, 1082-1083 (7th Cir. 1990), (also relied upon by the Plaintiff, [DE35, p. 7]), rejected a request to admit a letter under Fed.R.Evid. 803(3) as evidence of the defendant's state of mind because the preparation of correspondence lacks the necessary spontaneity. In *Carter*, the court rejected an argument that a statement supposedly made by a defendant only an hour after he confessed to a crime was admissible under Rule 803(3). Even this time period allowed for deliberate

thought. *Id*.; *see*, *also*, *America's Best Inns,* 980 F.2d at 1074, (holding that citizenship need be established by a person with personal knowledge rather than filings apparently signed by counsel.)

The Seventh Circuit also has held repeatedly that a witness cannot opine as to another's state of mind. *U.S. v. Benson*, 941 F.2d 598, 604-605 (7th Cir. 1991); *U.S. v. Ricketts*, 146 F.3d 492, 496-497 (7th Cir. 1998); *Schultz v. Thomas*, 832 F.2d 108, 109-111 (7th Cir. 1987). *Klein v. Vanek*, 86 F.Supp.2d 812, 818-819 (N.D.Ill. 2000). This is particularly true given that Ms. D'Agostino's familiarity with personal information for Mr. Lubar and Ms. Yano also is extremely limited. [DE25, Exhibit A, pp. 31-34, 37-40, 43, 46-47, 49, 68-74, 81; Exhibit B, Response to Production No. 3; Exhibit D, Restricted And Sealed Document: documents produced by Morgan Lewis, ML 38-40, 48, 49, 50, 51, 53, 54, 58, 59, 61, 63, 68, 90-91, 101-102] (See, also, [DE26, pp. 4-6].) The only appropriate persons to address the question of Mr. Lubar's and Ms. Yano's places of domicile as of May 12, 2008 are Mr. Lubar and Ms. Yano themselves. Without such evidence, the Plaintiff's Motion To Remand is unsupported, or at best fails to overcome the presumption that Mr. Lubar and Ms. Yano are domiciled in one of the fifty (50) States. [DE28, East Chicago's Response, generally and Section II.C]

For example, in *U.S. v. Benson*, 941 F.2d 598 (7th Cir. 1991), the court examined the use of an IRS expert to controvert the purported intent of a criminal defendant in a tax case in seeking social security disability benefits. The admission of the IRS expert's opinion as to this issue was held to be erroneous. *Benson*, 941 F.2d at 604-605. In *U.S. v. Ricketts*, 146 F.3d 492 (7th Cir. 1998), Ricketts and Jones took part in a prison riot; most of the rioters wore masks; Ricketts and Jones did not. *Ricketts*, 146 F.3d at 493-494. Ricketts filed an *ex parte* motion to obtain the services of Dr. Dan Cuneo as a mental health expert to testify that the memory of an eye witness to the riot, Mr. Pat

Crowley, could be the product of "constructive/schematic distortion processes." *Ricketts*, 146 F.3d at 496. Ricketts felt that Crowley's testimony was particularly damaging because he was the only guard who remembered him from the riot without looking at photographs, and because he was the only guard who said Ricketts argued with the commander, rather than just conversed with him, about the lock down. *Id*. The Seventh Circuit Court of Appeals rejected the argument that one witness could testify as to the personal knowledge and credibility of another. *Ricketts*, 146 F.3d at 496-497. *Accord, Klein v. Vanek*, 86 F.Supp.2d 812, 818-819 (N.D.Ill. 2000)

Essentially the same result was reached in a case which involved a judge who had tried a disorderly conduct case as the actual trier of fact in a bench trial. *Schultz v. Thomas*, 832 F.2d 108 (7th Cir. 1987). The judge made several findings in the bench trial as to the honesty and state of mind of two police officers in the underlying arrest. *Schulz*, 832 F.2d at 109. The judge also made certain finding regarding the officers' supposed professional misconduct. *Id.* The plaintiff was acquitted and later filed a civil rights action pursuant to 42 U.S.C. § 1983. *Id.* Over the defendants' objections, the district court in *Schulz* permitted the judge to testify as to his findings of fact and conclusions of law and also admitted a transcript of his decision. *Id.* The Seventh Circuit found that the district court had abused its discretion in admitting this evidence because the judge's testimony was not based upon his own personal observations of the underlying events and his opinions of the officers' conduct, intent and honesty were superfluous. *Schulz*, 832 F.2d at 109-111.

None of the cases cited by the Plaintiff, [DE35, pp. 7-8], support its attempt to have Ms. D'Agostino testify as to Mr. Lubar's and Ms. Yano's state of mind. The warden in *Cooper v. Lane*, 969 F.2d 368, 372-373 & fn. no. 2 (7th Cir. 1992) testified as to his own state of mind and reasoning. The Seventh Circuit upheld the trial court's refusal to admit a letter actually written by one of the

9

parties himself to show his state of mind under Rule 803(3) in *U.S. v. McNeely*, 980 F.2d 1074, 1082-1083 (7th Cir. 1992) As in this case, the letter in *McNeely* was written weeks after the relevant incident and with an eye toward legal matters. In *U. S. v. Hughes*, 970 F.2d 227, 233-234 (7th Cir. 1992), the witness was allowed to recount Hughes' declarations that Hughes was going to buy drugs from "El Chubasco" because there was no evidence of that Hughes had time to either reflect or to misrepresent his thoughts. The same is true with regard to the derogatory comments about Mexicans at issue in *Contreras*, 920 F.Supp. 1370, 1377-1378 and fn. no. 2 (N.D.Ill. 1996) In this case, however, Ms. D'Agostino, as the Plaintiff's attorney, gathered the alleged information from Mr. Lubar and Ms. Yano specifically for litigation purposes, *i.e.*, to file a Motion To Remand weeks after and in response to East Chicago's Notice Of Removal. *Peterson*, *McNeely*, *Carter* and the other cases cited by East Chicago are dispositive in this case as to the inadmissibility of ¶¶ 3 and 4 of Ms. D'Agostino's Affidavit and the Plaintiff has not even attempted to address them, least of all distinguish them. [DE35][2]

      The Plaintiff also has failed to produce or has spoliated any evidence which Ms. D'Agostino allegedly received from Mr. Lubar and Ms. Yano in response to her inquiries as to their intended places of domicile. (Exhibit A, pp. 68-74, 81; see, also, [DE23, 24], East Chicago's Motion To Compel and its supporting Brief, generally, and [DE23, Exhibit B, Plaintiff's Responses to Request Nos. 1 and 3-4].) The Plaintiff simply cannot proffer testimony based upon documents which it has withheld and/or destroyed.

---

[2]The Plaintiff's reliance upon *Hughes* and *Contreras* is particularly misplaced in light of its refusal to produce the e-mails and voice-mail messages and to allow Mr. Lubar and Ms. Yano to be deposed.

Finally, the Plaintiff asserts that it has offered other evidence to support its Motion To Remand without Ms. D'Agostino's Affidavit. [DE35, p. 8] This contention is not really responsive to East Chicago's request that the Affidavit be stricken, [DE25, 26]. In any event, this is an improper attempt to shift the Court's analysis to work connections rather than personal domicile. Even these bits of information are equivocal; for example, the Plaintiff references bar admissions, but these include bar admissions for both Mr. Lubar and Ms. Yano in the United States. Likewise, the evidence of bank accounts, real property and taxes paid include continuing contacts to locales within the United States. All of this equivocal information does not resolve the material factual issues here, such as to whether Mr. Lubar considered New York, London or some other location his place of domicile as of May 12, 2008. As to Ms. Yano, the Plaintiff does not even identify a home address for her and she listed the Plaintiff's Tokyo office address on her tax return. [DE28, Exhibit D, ML 117.] In fact, the Plaintiff initially did not even assert Ms. Yano's domicile as a basis for remand. [DE28, Exhibit E, Mr. Horvath's May 29, 2008 correspondence]

### III.  CONCLUSION

Paragraphs 3-4 of Ms. D'Agostino's Affidavit are based upon inadmissible hearsay and they should be stricken.  Moreover, without those paragraphs, the remaining portions of her Affidavit contain no material information as to Mr. Lubar's or Ms. Yano's domicile.  Finally, her Affidavit is based in part upon information and documents which Morgan Lewis has refused to produce or which may have been spoliated.

**WHEREFORE**, the Defendant, City of East Chicago, requests that the Court enter an order which strikes the Affidavit of Ms. Clare D'Agostino.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**


By: s/Robert J. Feldt
    One of the attorneys for the Defendant,
    City of East Chicago

David C. Jensen
Robert J. Feldt
**EICHHORN & EICHHORN, LLP**
200 Russell Street
P.O. Box 6328
Hammond, IN 46325
219-931-0560

## CERTIFICATE OF SERVICE

I, Robert J. Feldt, hereby certify that on the ___29th___ day of July, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> F. Thomas Hecht
> Tina B. Solis
> UNGARETTI & HARRIS LLP
> 3500 Three First National Plaza
> Chicago, IL 60602
> fthecht@uhlaw.com
> tbsolis@uhlaw.com

        s/Robert J. Feldt
        Robert J. Feldt

# EXHIBIT A TO THE JULY 29, 2008 REPLY BRIEF IN SUPPORT OF THE MOTION TO STRIKE THE AFFIDAVIT MS. CLARE D'AGOSTINO OF THE DEFENDANT, CITY OF EAST CHICAGO

Page 63

```
1           residence?")
2      THE WITNESS:  I believe that there is.
3      MS. SOLIS:  And I'm going to interpose my same
4  objection.
5  BY MR. FELDT:
6      Q   And what is that information?
7      A   That information would be that Mr. Lubar is a
8  partner, noting our London office, London office
9  address, telephone number, contact information, and
10 describing Mr. Lubar's practice as handling inbound
11 work to the United Kingdom.
12     Q   Anything else?
13     A   That he's a registered foreign lawyer.
14     Q   Anything else?
15     A   That he opened our London office in 1981.
16     Q   Anything else?
17     A   No.  That's it.  That all suggests to me that
18 Mr. Lubar is in London.
19     Q   I apologize.  You did cut out a little bit
20 there at the end.
21     MS. SOLIS: That's okay.  We're having the same
22 issues on this end.
23 BY MR. FELDT:
24     Q   Now I'm going to have you take a look at
```

Page 64

```
 1  No. 9, which essentially is the same kind of question
 2  as to Ms. Yano.  You can read through to yourself the
 3  request and the objections and/or response.
 4      A   Okay.
 5      Q   So the same question then would be what
 6  information on Ms. Yano's bio is relevant to her
 7  place of residence or domicile?
 8      MS. SOLIS:  Same objection.  You can go ahead and
 9  answer that, Clare.
10      A   Very similar to Mr. Lubar's biography.  We
11  note that Ms. Yano's address is in Tokyo.  We give
12  her telephone number, fax number, note that Ms. Yano
13  is a Japanese speaker, that she has practiced in
14  Tokyo for more than 15 years, a description of her
15  representation of Japanese companies, noting that
16  she's a visiting professor at the Tokyo School of
17  Law, and noting that she's admitted to practice, as
18  we already discussed, in New York and California, and
19  that she is registered as a foreign lawyer in Japan.
20  BY MR. FELDT:
21      Q   And all of that information relates to where
22  she works?
23      A   It does.
24      Q   Is there any information on her bio about
```

1  where she lives?
2      A   There is not.
3      Q   All of the information you described for
4  Mr. Lubar in his bio, does that relate to where he
5  works?
6      A   With Mr. Lubar there is slightly more, I
7  think, about his involvement with the -- with his
8  clients, more details of his clients, but it doesn't
9  go to where he lives because this is a public
10 biography.
11     Q   Thank you.  There may be periods of silence
12 as I thumb through Exhibit 3, so bear with me.  We
13 are getting relatively close to the end here.
14         Sort of a general question about the
15 documents in Exhibit 3 up through 148 because 149
16 through 155 -- I'm sorry, not 155 -- 154 is a
17 reproduction of your declaration, so let me just ask
18 you first with regards to Documents 1 through 148,
19 given what you said about the database that you
20 looked at, does that mean that you did not look at
21 any of these Documents 1 through 148 in preparing
22 your declaration?
23     A   I did not rely upon them for my declaration.
24     Q   Did you look at them?