

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MORGAN, LEWIS & BOCKIUS LLP, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 2748 |
| CITY OF EAST CHICAGO, | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Morgan, Lewis Bockius LLP, a law firm, sued Defendant City of East Chicago in Illinois state court, seeking payment of unpaid fees for legal services. Defendant removed this action to federal court on May 12, 2008. Plaintiff opposed removal, arguing that the parties were not completely diverse in citizenship. On October 29, 2008, the court granted Plaintiff's motion for a remand to state court. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, No. 08 C 2748, 2008 WL 4812658 (N.D. Ill. Oct. 29, 2008). Specifically, the court concluded that because Charles Lubar, a United States citizen residing in the United Kingdom, is a Morgan, Lewis partner, the partnership is defined as stateless for the purpose of diversity jurisdiction. *Id.* at *2. Plaintiff now seeks fees pursuant to 28 U.S.C. § 1447(c), which permits a party, in the case of a remand, to seek "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." As explained below, the court concludes that Defendant had a reasonable basis for removal and therefore declines to award Plaintiff fees.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The court's sole inquiry, then, is whether Defendant had an "objectively reasonable basis for seeking removal." As this court's prior opinion made clear, the

weight of authority undeniably militated in favor of remand. That fact alone, however, does not mean Defendant had no reasonable basis for its argument in favor of removal. Plaintiff's argument, and the court's conclusion, rested on two separate principles: the stateless citizen doctrine, which holds that a United States citizen domiciled abroad is "stateless" for purposes of diversity jurisdiction, see *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); and the rule that "diversity jurisdiction in a suit by or against [an unincorporated entity] depends on the citizenship of 'all the members,'" *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (quoting *Chapman v. Barney*, 129 U.S. 677, 682 (1889)). Defendant argued that the confluence of these two legal principles led to an unreasonable result in this instance. In Defendant's view, a large firm such as Plaintiff should not be able to defeat diversity jurisdiction merely because one of its many partners happens to live in a foreign country. The court agreed that the result was in some ways unappealing, but concluded there was no basis for making an exception to established rules of diversity jurisdiction for large partnerships in which only one or two partners are stateless. *Morgan, Lewis & Bockius LLP*, 2008 WL 4812658, at *2. In another case in which Mr. Lubar's membership in Morgan, Lewis kept the firm out of federal court, a judge of the Third Circuit concurred with the judgment affirming a dismissal order, but wrote separately to emphasize that the holding made little sense. See *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 189 (3d Cir. 2008) (McKee, Cir. J., concurring) (explaining the historical bases for both the stateless citizen doctrine and the *Carden* rule, and urging Congress to amend the diversity statute to account for the fact that "business ventures and legal relationships [are becoming] more global in depth and breadth"). Judge McKee's thoughtful comments carry some weight here, and this court is reluctant to penalize a party which seeks to challenge a legal interpretation that judges themselves admit may be unsound.

Defendant presented a second reasonable argument in its opposition to Plaintiff's motion for a remand. Defendant urged that the stateless citizen doctrine should not apply in this case

2

because some Seventh Circuit precedent suggests that the doctrine may contain an exception for dual citizens. *See Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980). As Defendant notes, this court incorrectly stated in its prior opinion that Mr. Lubar was a citizen only of the United States; in fact, he is a citizen of both the United States and the United Kingdom. While Defendant has not requested that the court reconsider its prior holding on this basis, the court admits that it erred in not addressing Defendant's arguments regarding dual citizenship. For the reasons that follow, the dual citizenship argument does not affect the court's ultimate decision that remand is required here, but it does present a closer question that bolsters the conclusion that Defendant's jurisdictional argument was a reasonable one.

In *Sadat v. Mertes*, the court discussed whether a dual national may sometimes be entitled to be treated as a foreign citizen rather than a stateless citizen for diversity purposes. *Id.* at 1182 (citing 28 U.S.C. § 1332(a)(2)). In *dicta*, the court stated that, typically, "only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." *Sadat*, 615 F.2d at 1187. The court went on to note that an exception may exist to this general principle, by which a country "will be responsible for wrongful conduct against one of its [own] citizens whose dominant nationality is that of a foreign state." *Id.* at 1187 (citing RESTATEMENT (SECOND) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 171 (1965)). Defendant's argument that this principle should be extended to its situation is a reasonable one, as Plaintiff presented some evidence that suggested Mr. Lubar's predominant citizenship could be considered his British citizenship. This argument still ultimately fails, because the passage in *Sadat* concerned protecting the right of foreign nationals to vindicate their rights in the federal courts when they were harmed by official state conduct, such as the expropriation of property without compensation. *Sadat*, 615 F.2d at 1187 ("in certain cases, the respondent state's relationship to the person is so remote that the individual is entitled to protection from *its* actions under international law" (emphasis added)). Those rights, however defined, have no bearing on the present case; unlike in *Sadat*, where the

3

dual national was seeking out a federal forum, the dual national here was seeking to *stay out* of a federal forum, negating any interest that Great Britain might have had in seeing his rights vindicated in federal court. The court should have addressed the "dual national" argument in its earlier ruling, but the result would not have been different. See *Swiger*, 540 F.3d at 185 ("for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized" (citing *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008)). Still, Defendant's argument was objectively reasonable in light of the passage in *Sadat*.

Plaintiff argues that at the time Defendant filed his notice of removal, both the stateless citizen doctrine and the *Carden* rule were well-established by both Supreme Court and Seventh Circuit precedent. This is true, but Defendant presented reasonable arguments why these legal principles—developed when the concept of a multinational partnership of thousands of members would have seemed unlikely—were not applicable to this case. Furthermore, Plaintiff has not identified any case in the Seventh Circuit or United States Supreme Court that squarely addressed the issue presented here: whether a large firm with over a thousand partners around the world can defeat diversity jurisdiction by virtue of the fact that one or two partners are considered "stateless." Cf. *Swiger*, 540 F.3d at 187 (McKee, Cir. J., concurring) ("*Carden* does not definitively answer the specific question here"). The court agreed with Plaintiff that the law compelled remand of the case, but that holding should not preclude Defendant from presenting a reasonable argument on an issue that the courts have not yet squarely addressed.

The objectively reasonable standard for considering § 1447(c) claims balances competing interests, and reflects "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." *Martin*, 546 U.S. at 140. The court concludes that Defendant made reasonable, though incorrect, arguments, and is unwilling to assume that Defendant's motivation for the removal petition was to prolong litigation and impose

4

unnecessary costs on Plaintiff. "[T]here is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* Awarding Plaintiff fees in this case would err on the side of deterring all but the most obvious removals, and so the court declines to make such a ruling.

Plaintiff's Fee Petition [66] is therefore denied. This ruling is final and appealable.

ENTER:

Dated: July 21, 2009

REBECCA R. PALLMEYER
United States District Judge